No. 20-1321

# United States Court of Appeals for the Federal Circuit

---

NATIONAL ORGANIZATION OF VETERANS' ADVOCATES, INC.,

*Petitioner*,

v.

SECRETARY OF VETERANS AFFAIRS,

*Respondent*.

---

Petition for Review of Changes to Department of Veterans Affairs Manual M21-1 Pursuant to 38 U.S.C. § 502.

---

## PETITION FOR INITIAL HEARING EN BANC

---

Roman Martinez
Blake E. Stafford
Shannon Grammel
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
(202) 637-2200
roman.martinez@lw.com

January 27, 2020                    *Counsel for Petitioner*

# CERTIFICATE OF INTEREST

Counsel for Petitioner certifies the following:

1. Full Name of Party represented by me:

   National Organization of Veterans' Advocates, Inc.

2. Name of Real Party in interest (Please only include any real party in interest NOT identified in Question 3) represented by me is:

   None.

3. Parent corporations and publicly held companies that own 10 percent or more of stock in the party:

   None.

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court (and who have not or will not enter an appearance in this case) are:

   N/A.

5. The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. *See* Fed. Cir. R. 47.4(a)(5) and 47.5(b).

   *NOVA v. Secretary of Veterans Affairs*, No. 17-1839.

Dated: January 27, 2020

Respectfully submitted,

 /s/ Roman Martinez
Roman Martinez
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
(202) 637-2200

*Counsel for Petitioner National Organization of Veterans' Advocates, Inc.*

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTEREST ...............................................................i

TABLE OF AUTHORITIES ....................................................................iv

STATEMENT OF COUNSEL ..................................................................1

INTRODUCTION ....................................................................................2

BACKGROUND ......................................................................................3

ARGUMENT ...........................................................................................7

I.    *DAV*'s Limitation On This Court's Jurisdiction Under 38 U.S.C. § 502
      Should Be Overruled ......................................................................8

      A.    *DAV*'s Jurisdictional Holding Is Mistaken............................8

      B.    *DAV*'s Jurisdictional Holding Warrants En Banc Correction.............12

II.   Federal Circuit Rule 47.12(a) Is Invalid......................................15

CONCLUSION .....................................................................................18

## ADDENDUM

5 U.S.C. § 552(a)(1)–(2) ............................................................... Tab 1

5 U.S.C. § 553 ............................................................................... Tab 2

28 U.S.C. § 2401 .......................................................................... Tab 3

38 U.S.C. § 502 ............................................................................ Tab 4

Federal Circuit Rule 47.12 ........................................................... Tab 5

Brief of Petitioner, *Gray v. Wilkie*, No. 17-1679 (U.S. filed Dec. 17,
      2018) ..................................................................................... Tab 6

Brief for the Respondent, *Gray v. Wilkie*, No. 17-1679 (U.S. filed Jan.
      16, 2019) ............................................................................... Tab 7

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Azar v. Allina Health Services*,
139 S. Ct. 1804 (2019) .................................................................7, 15

*Block v. Secretary of Veterans Affairs*,
641 F.3d 1313 (Fed. Cir. 2011) .........................................................16

*Brown v. Secretary of Veterans Affairs*,
124 F.3d 227, 1997 WL 488930 (Fed. Cir. 1997) .............................17

*Disabled American Veterans v. Secretary of Veterans Affairs*,
859 F.3d 1072 (Fed. Cir. 2017) .................................................*passim*

*Gray v. Secretary of Veterans Affairs*,
875 F.3d 1102 (Fed. Cir. 2017), *cert. granted sub nom. Gray v.
Wilkie*, 139 S. Ct. 451 (2018) ...................................................*passim*

*Gray v. Secretary of Veterans Affairs*,
884 F.3d 1379 (Fed. Cir. 2018) ..............................5, 10, 13, 14

*Gray v. Wilkie*,
139 S. Ct. 2764 (2019) .........................................................................5

*Hibbs v. Winn*,
542 U.S. 88 (2004) ..............................................................................17

*Hudgens v. McDonald*,
823 F.3d 630 (Fed. Cir. 2016) .............................................................6

*Jackson v. Brown*,
55 F.3d 589 (Fed. Cir. 1995) .............................................................16

*Lawrence ex rel. Lawrence v. Chater*,
516 U.S. 163 (1996).............................................................................13

*Military Order of the Purple Heart of the USA v. Secretary of
Veterans Affairs*,
580 F.3d 1293 (Fed. Cir. 2009) .........................................................10

iv

Page(s)

*Milner v. Department of the Navy,*
562 U.S. 562 (2011)......................................................................9, 14

*Nguyen v. United States,*
824 F.2d 697 (9th Cir. 1987) ....................................................9

*O2 Micro International Ltd. v. Monolithic Power Systems, Inc.,*
467 F.3d 1355 (Fed. Cir. 2006) ........................................17

*Preminger v. Secretary of Veterans Affairs,*
517 F.3d 1299 (Fed. Cir. 2008) ...............................5, 15, 16

*Preminger v. Secretary of Veterans Affairs,*
632 F.3d 1345 (Fed. Cir. 2011) .................................12, 16

*Procopio v. Wilkie,*
913 F.3d 1371 (Fed. Cir. 2019) ....................................5

*Snyder v. Secretary of Veterans Affairs,*
858 F.3d 1410 (Fed. Cir. 2017) ...................................11

*United States v. Munsingwear, Inc.,*
340 U.S. 36 (1950)...............................................15

*Yee v. City of Escondido,*
503 U.S. 519 (1992).............................................13

## STATUTES AND REGULATIONS

5 U.S.C. § 552(a)(1)(D) ...........................................4, 7, 9

5 U.S.C. § 552(a)(2)(C) ..............................................9

5 U.S.C. § 553(b)(A) .............................................3, 7, 12

5 U.S.C. § 553(d)(1) .................................................3

5 U.S.C. § 553(d)(2)..............................................3, 12

28 U.S.C. § 2071(a) .................................................17

28 U.S.C. § 2401(a) ...............................................3, 16

**Page(s)**

38 U.S.C. § 502 .................................................................2, 3, 12

1 C.F.R. § 1.1 ...........................................................................9

38 C.F.R. § 4.71a .....................................................................6

## OTHER AUTHORITIES

Fed. Cir. R. 47.12(a) ............................................................5, 16

Fed. R. App. P. 15(a)(1) ...........................................................17

Fed. R. App. P. 47(a)(1) ...........................................................17

James T. O'Reilly, *Administrative Rulemaking* (2019 ed., Westlaw) .......................7

Sup. Ct. R. 10(c) ....................................................................13

## STATEMENT OF COUNSEL

Based on my professional judgment, I believe this case requires an answer to one or more precedent-setting questions of exceptional importance:

1. Whether this Court has jurisdiction under 38 U.S.C. § 502 to review a generally applicable interpretive rule that the Department of Veterans Affairs (VA) promulgates through its Adjudication Procedures Manual.

2. Whether Federal Circuit Rule 47.12(a) impermissibly supersedes the six-year limitations period in 28 U.S.C. § 2401(a), which applies to actions brought under 38 U.S.C. § 502.

> /s/ *Roman Martinez*
> Roman Martinez
> LATHAM & WATKINS LLP
> *Attorney of Record for Petitioner*

**INTRODUCTION**

This petition raises fundamental questions concerning this Court's ability to review interpretive rules promulgated by the Department of Veterans Affairs (VA). Congress vested this Court with jurisdiction in 38 U.S.C. § 502 to review such rules pre-enforcement. This Court, however, has devised two roadblocks to Section 502 review that warrant correction en banc.

*First*, the Court held in *Disabled American Veterans v. Secretary of Veterans Affairs* (*DAV*), 859 F.3d 1072 (Fed. Cir. 2017), that it lacks jurisdiction under Section 502 to review interpretive rules promulgated in VA's internally binding administrative staff manual. *DAV*'s holding is mistaken—which is why VA itself has refused to defend it, and why the Supreme Court granted certiorari to review its application in *Gray v. Secretary of Veterans Affairs*, 875 F.3d 1102 (Fed. Cir. 2017), *cert. granted sub nom. Gray v. Wilkie*, 139 S. Ct. 451 (2018) (No. 17-1679). Following merits briefing, however, the *Gray* case became moot, so all the Court could do was vacate the panel's decision. This Court should take this opportunity to overturn *DAV*.[1]

*Second*, this Court has promulgated Federal Circuit Rule 47.12(a), which creates a 60-day deadline for filing Section 502 challenges. That limitation lacks a

---

[1] The Supreme Court merits briefs filed in *Gray* from the petitioner (*Gray* Pet'r Br.) and the Government (*Gray* Gov't Br.) are reproduced in the addendum to this petition.

statutory basis and conflicts with the six-year limitations period in 28 U.S.C. § 2401(a), which this Court has held applies to Section 502 petitions.

Together, these threshold barriers "impose[] a substantial and unnecessary burden on individual veterans" by forcing them into years-long individual adjudications to obtain review of interpretive rules. *Gray*, 875 F.3d at 1110 (Dyk, J., dissenting in part and concurring in the judgment). The Court should grant en banc review, eliminate these barriers, and restore the full measure of judicial review granted by Congress.

## BACKGROUND

This case challenges two unlawful rules VA promulgated in its Adjudication Procedures Manual M21-1 (Manual). NOVA's challenge directly implicates two threshold procedural requirements for challenging VA actions in this Court: (1) this Court's jurisdiction under Section 502, and (2) Federal Circuit Rule 47.12(a)'s 60-day limitations period.

1. Under 38 U.S.C. § 502, "[a]n action of the [VA] Secretary to which section 552(a)(1) or 553 of title 5 (or both) refers is subject to judicial review" in this Court. Section 553 is an Administrative Procedure Act (APA) provision that governs agency rulemaking and refers to both "substantive" and "interpretative" rules. 5 U.S.C. § 553(b)(A), (d)(1)-(2). Section 552(a)(1) is a Freedom of Information Act (FOIA) provision that requires publication in the Federal Register

and refers to, among other things, "substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency." *Id.* § 552(a)(1)(D).

In *DAV*, this Court held that it lacks Section 502 jurisdiction to review interpretive rules promulgated in the Manual because "administrative staff manuals" are referenced in Section 552(a)(2)(C). 859 F.3d at 1077-78. The Court embraced VA's argument that Sections 552(a)(1) and (a)(2) are mutually exclusive, such that a promulgation that "more readily" "fall[s] within § 552(a)(2)" does not "fall within § 552(a)(1)." *Id.* at 1075, 1077-78.

In *Gray*, this Court explained that *DAV* "compels" the conclusion that Manual provisions "'fall within § 552(a)(2)—not § 552(a)(1)'"—"regardless of the extent to which [they] might be considered interpretive or a statement of policy." 875 F.3d at 1108 (quoting *DAV*, 859 F.3d at 1078). Judge Dyk dissented in part, stressing that *DAV* rests on "the notion that § 552(a)(1) and § 552(a)(2) are mutually exclusive"— a notion for which "[t]here is no support" and which is contradicted by decisions of the Supreme Court, this Court, and other courts of appeals. *Id.* at 1114-15.

Gray sought rehearing en banc, and VA abandoned the mutual-exclusivity theory it had successfully propounded to the panel. *See Gray* Pet'r Br. 16. Instead, VA baldly asserted that *DAV* and *Gray* "[i]mplicit[ly]" held that the Manual provisions in those cases "were not interpretations of 'general applicability'" for

some unstated reason. *Id.* (alterations in original) (citation omitted). The Court denied rehearing en banc, over a dissent from Judges Dyk, Newman, and Wallach. *Gray v. Sec'y of Veterans Affairs*, 884 F.3d 1379 (Fed. Cir. 2018).

Gray then petitioned for certiorari, and the Supreme Court granted review. *Gray*, 139 S. Ct. 451. In its briefing to the Court, VA further distanced itself from *DAV*'s reasoning and instead minted a new theory—that Manual provisions are not rules of "general applicability" because the Manual is not "binding" on the Board of Veterans' Appeals. *See Gray* Gov't Br. 29-38. After the parties filed their opening merits briefs, however, this Court in *Procopio v. Wilkie*, 913 F.3d 1371 (Fed. Cir. 2019) (en banc), invalidated the Manual provision at issue in *Gray*, thereby mooting the jurisdictional issue. The Supreme Court accordingly vacated the panel's decision without resolving that issue. *Gray v. Wilkie*, 139 S. Ct. 2764 (2019). But *DAV* remains on the books.

2.     This Court has correctly held that Section 502 challenges to VA actions are subject to the six-year limitations period in 28 U.S.C. § 2401(a), which governs "every civil action" against the United States. *Preminger v. Sec'y of Veterans Affairs* (*Preminger I*), 517 F.3d 1299, 1307 (Fed. Cir. 2008). But this Court has also promulgated Federal Circuit Rule 47.12(a), which states that an "action for judicial review under 38 U.S.C. § 502 of a rule and regulation of the Department of Veterans Affairs must be filed with the clerk of court within 60 days after the issuance of the

rule or regulation or denial of a request for amendment or waiver of the rule or regulation." Rule 47.12(a)'s 60-day deadline thus purports to override Section 2401(a)'s six-year limitations period.

3. In this case, NOVA challenges two interpretive rules promulgated in the Manual. First is the Knee Replacement Rule, Manual § III.iv.4.A.6.a, which was promulgated on November 21, 2016. *See* Petition for Review (Pet.) Ex. A, ECF No. 1-2.[2] This Rule defines "[k]nee replacement" for purposes of the disability ratings in Diagnostic Code (DC) 5055, 38 C.F.R. § 4.71a, and purports to limit this Court's holding in *Hudgens v. McDonald*, 823 F.3d 630 (Fed. Cir. 2016), to apply only to claims filed before a certain date. *See* Pet. 8-11. In *Hudgens*, this Court held that "[k]nee replacement" encompasses both partial and total knee replacements, thereby rejecting VA interpretive guidance limiting "[k]nee replacement" to only total knee replacements. 823 F.3d at 637-39. Second is the Knee Joint Stability Rule, Manual § III.iv.4.A.6.d, which was promulgated on April 13, 2018. *See* Pet. Ex. B. This Rule defines "[s]light," "[m]oderate," and "[s]evere" instability for purposes of the disability ratings in DC 5257, 38 C.F.R. § 4.71a, by reference to a precise measurement of joint translation. *See* Pet. 11-15.

---

[2] Section III.iv.4.A.6.a was initially added as Section III.iv.4.A.3.e. *See* Pet. Ex. A.

Both Manual provisions are best classified as "interpretive rules," as both provide VA's "'construction of the statutes and rules which it administers.'" *Azar v. Allina Health Servs.*, 139 S. Ct. 1804, 1811 (2019) (citation omitted); *see* James T. O'Reilly, *Administrative Rulemaking* § 3:26 (2019 ed., Westlaw) ("Interpretive rules" interpret "statutes, legislative rules, other interpretative rules, or judicial or administrative decisions or rulings."). Absent *DAV*, this Court would have jurisdiction to review them under Section 502's cross-references to "interpretations of general applicability," 5 U.S.C. § 552(a)(1)(D), and "interpretative rules," *id.* § 553(b)(A). And absent Rule 47.12(a), NOVA's challenges would be timely under Section 2401(a)'s six-year limitations period.

## ARGUMENT

Initial hearing en banc is warranted to address two threshold questions applicable to all petitions for this Court's review of VA rules under Section 502: *first*, whether an interpretive rule promulgated in the Manual falls within this Court's Section 502 jurisdiction; and *second*, whether a challenge to such a rule is timely if brought after 60 days (but within six years) of the rule's effective date. Because the Court's current precedent on these issues is mistaken and inconsistent, the Court should address these issues en banc, and then refer the merits of NOVA's petition for review to a three-judge panel.

## I.   *DAV*'S LIMITATION ON THIS COURT'S JURISDICTION UNDER 38 U.S.C. § 502 SHOULD BE OVERRULED

Under Section 502, this Court has jurisdiction to review VA actions "refer[red]" to in Sections 552(a)(1) and 553. Those cross-references encompass interpretive rules promulgated in the Manual. *DAV*'s exclusion of such rules from this Court's jurisdiction is mistaken, for the reasons set forth in the petitioner's merits brief in *Gray*. Moreover, the issue is important—as the Supreme Court's grant of certiorari in *Gray* confirms. The en banc Court should remove *DAV*'s erroneous jurisdictional barrier and obviate the need for the Supreme Court to grant certiorari on this issue once again.

### A.   *DAV*'s Jurisdictional Holding Is Mistaken

As Judge Dyk declared in his *Gray* dissent, "*DAV* was wrongly decided." 875 F.3d at 1110. *DAV*'s holding rests on two errors. First, *DAV* held that, because "Congress explicitly designated administrative staff manuals as agency actions falling under § 552(a)(2)," interpretive rules promulgated in the Manual "more readily" fall under Section 552(a)(2)(C) "as compared to" Section 552(a)(1)(D). 859 F.3d at 1075-78. Second, *DAV* ignored that, in addition to "substantive rules," Section 553 also refers to "interpretative rules." *See id.* at 1075-77. These errors— which foreclose pre-enforcement review of any "manual provision," "regardless of the extent to which [it] might be considered interpretive or a statement of policy,"

*Gray*, 875 F.3d at 1108—flout basic statutory interpretation principles and contravene this Court's precedent.

1. Interpretive rules promulgated in the Manual are plainly "interpretations of general applicability," 5 U.S.C. § 552(a)(1)(D). The Court thus has jurisdiction to review them under Section 502, notwithstanding that they appear in an "administrative staff manual," *id.* § 552(a)(2)(C).

a. The Court's interpretation of Section 552(a)(1)(D) "starts with its text" and ordinary meaning. *Milner v. Dep't of the Navy*, 562 U.S. 562, 569 (2011). As the petitioner detailed in *Gray*, the ordinary meaning of the phrase "interpretation[] of general applicability" is an interpretation that applies to entire class of people, *Gray* Pet'r Br. 20-24—that is, an interpretation "neither directed at specified persons nor limited to particular situations," *Nguyen v. United States*, 824 F.2d 697, 700 (9th Cir. 1987).

Section 552(a)(1)'s history confirms that Congress used the phrase "interpretations of general applicability" to mean what it meant in several pre-FOIA statutes and regulations—interpretations not limited to particular individuals or particular facts. *See Gray* Pet'r Br. 24-29. And in the five-plus decades since FOIA's enactment, Congress and myriad federal agencies have repeatedly reaffirmed that consistent understanding. *See id.* at 29-32; *see also, e.g.*, 1 C.F.R. § 1.1 (defining "[d]ocument having general applicability and legal effect" as "any

document [with legal effect] . . . relevant or applicable to the general public, members of a class, or persons in a locality, as distinguished from named individuals or organizations").

The two Manual provisions challenged here fall comfortably within Section 552(a)(1)(D)'s reference to "interpretations of general applicability." Both are interpretive rules. *See supra* at 7. And neither is limited to specific persons or specific facts; they apply in *any* case in which a veteran seeks compensation for a knee replacement or knee instability.

b. *DAV*'s contrary reasoning is untenable. *DAV*'s central holding—that Section 502 "expressly exempt[s]" agency promulgations that "more readily" "fall under" Section 552(a)(2) "as compared to" Section 552(a)(1), 859 F.3d at 1075, 1077-78—rests on the flawed premise that (a)(1) and (a)(2) are mutually exclusive. As Judges Taranto and Dyk have recognized, "neither the language of the provisions nor the [statute's] structure" supports such a dichotomy. *Gray*, 884 F.3d at 1380-81 (Taranto, J., concurring in the denial of rehearing en banc); *see Gray*, 875 F.3d at 1114-15 (Dyk, J., dissenting in part and concurring in the judgment).

Moreover, *DAV*'s reasoning conflicts with this Court's precedent. In *Military Order of the Purple Heart of the USA v. Secretary of Veterans Affairs*, 580 F.3d 1293, 1295-96 (Fed. Cir. 2009), this Court held that it has Section 502 jurisdiction to review "Fast Letters" directing VA regional offices to follow certain procedures

for large benefits awards. These "Fast Letters" were indisputably "instructions to staff that affect a member of the public," and so fell within Section 552(a)(2)(C). *DAV*'s only effort to distinguish *Purple Heart* was to suggest that letters—unlike manuals—are not "explicitly designated" in Section 552(a)(2). 859 F.3d at 1076. But that ignores that "instructions to staff" *are* explicitly designated in that provision.

Likewise, this Court has repeatedly exercised Section 502 jurisdiction to review precedential General Counsel opinions directed to the Board, *see, e.g.*, *Snyder v. Sec'y of Veterans Affairs*, 858 F.3d 1410, 1412-13 (Fed. Cir. 2017), even though such opinions are also "instructions to staff."

c.     Although the mutual-exclusivity theory was foundational to *DAV*'s holding, VA itself has now repudiated it. *See Gray* Pet'r Br. 12-16, 35-38. Instead, VA has invented a new theory:  Manual provisions do not fall within Section 552(a)(1)(D) because they are not "binding" on the Board. *See Gray* Gov't Br. 22-41. As explained below, that theory is even more disconnected from the statute. *See infra* at 14-15. More importantly, it was not the argument VA advanced and the panel adopted in *DAV*.[3] Thus, regardless of VA's new theory, *DAV*'s reasoning is unsustainable and should be overruled.

---

[3]    *DAV* observed that the Manual is not "binding" on the Board only to determine "whether a particular provision is substantive or interpretative for

2.    *DAV*'s exclusion of Manual-promulgated interpretive rules must be overruled for a second, independent reason.  Section 502 covers any VA action "to which section 552(a)(1) *or 553* of title 5 (or both) *refers*."  38 U.S.C. § 502 (emphasis added).  *DAV* suggests that "Section 553 refers to" *only* "agency rulemaking that must comply with notice-and-comment procedures"—that is, "substantive" rules.  859 F.3d at 1075, 1077.  That is plainly wrong.  Section 553 twice expressly refers to "interpretative rules."  5 U.S.C. § 553(b)(A), (d)(2); *see Preminger v. Sec'y of Veterans Affairs* (*Preminger II*), 632 F.3d 1345, 1350-52 (Fed. Cir. 2011) (rejecting notion that Section 553 refers to only substantive rules).  These references give the Court jurisdiction to review VA "interpretative rules"—such as those challenged here, *see supra* at 7—regardless of whether they fall within Section 552(a)(1).

### B.    *DAV*'s Jurisdictional Holding Warrants En Banc Correction

Although this Court in *Gray* declined (over three dissents) to correct *DAV*'s erroneous holding en banc, subsequent developments have confirmed that en banc review is warranted.

*First*, after this Court denied rehearing en banc in *Gray*, the Supreme Court granted certiorari and vacated the decision.  This suggests the Supreme Court's

---

purposes of the APA," not to determine whether an "interpretation" is "of general applicability" for purposes of FOIA.  859 F.3d at 1077-78 (citations omitted).

skepticism of this Court's precedent. *Cf. Lawrence ex rel. Lawrence v. Chater*, 516 U.S. 163, 167 (1996) (per curiam). And it demonstrates the Supreme Court's agreement that this jurisdictional question is "exceptional[ly] importan[t]" and warrants further analysis. *Gray*, 884 F.3d at 1382 (Dyk, J., dissenting from the denial of rehearing en banc); *see* Sup. Ct. R. 10(c); *Yee v. City of Escondido*, 503 U.S. 519, 536 (1992) ("[W]e . . . grant certiorari only in those cases that will enable us to resolve particularly important questions.").

The scope of Section 502 jurisdiction has enormous real-world significance to veterans. VA regularly adopts interpretive rules in its Manual, which has "real and far reaching" effects. *Gray*, 875 F.3d at 1107-08. All too often, those rules unlawfully curtail important statutes or regulations designed to protect veterans. *See Gray* Pet'r Br. 48-52; NOVA Amicus Br. 8-23, *Kisor v. Wilkie*, 139 S. Ct. 2400 (2019) (No. 18-15) (cataloguing VA's dismal regulatory track record). *DAV*'s limitation on this Court's ability to review those rules will thus continue to have a "widespread impact on the efficient adjudication of veterans' claims." *Gray*, 884 F.3d at 1382 (Dyk, J., dissenting from the denial of rehearing en banc).

*Second*, this issue has now been extensively briefed. In *Gray*, Judge Taranto voted against rehearing en banc in part because he felt the briefing's "analysis of the relevant statutory texts, contexts, and backgrounds" was lacking. 884 F.3d at 1381-82. Any briefing deficiencies have since been eliminated. Numerous briefs were

filed in the Supreme Court in *Gray*—by the petitioner (represented by NOVA's counsel here), by VA (represented by the Solicitor General), and by several amici—detailing the relevant statutory text, context, and background. That extensive briefing amply satisfies Judge Taranto's desire for a "fuller basis for assessing a petition for en banc review" of this issue. *Id.* at 1382.

*Third*, in the Supreme Court, VA repudiated the reasoning this Court adopted in *DAV* and instead reimagined a new theory to support the same result. According to VA, "interpretations of general applicability" under Section 552(a)(1)(D) are interpretations that have "a binding effect" on the agency, and because the Manual is not formally binding on the Board, interpretations in the Manual cannot be interpretations of general applicability. *Gray* Gov't Br. 29-38.[4]

This new theory is utterly disconnected from "the [statute's] text, context, or purpose," *Milner*, 562 U.S. at 580, none of which remotely suggests that "generally applicable" means "binding" on certain agency officials. *See Gray* Pet'r Br. 38-43. It also contradicts what the Government itself recently described as the "well-settled administrative-law" principle that "interpretive rules . . . by definition have no binding legal effect." Gov't Br. 35, *Allina Health*, 139 S. Ct. 1804 (No. 17-1484). It would be nonsensical to say that non-binding interpretive rules are generally

---

[4] VA nonetheless continues to rely on *DAV*'s mutual-exclusivity rationale when convenient in *this* Court. *See Gray* Pet'r Br. 16 n.9; Gov't Br. 20-22, *Procopio v. Sec'y of Veterans Affairs*, 943 F.3d 1376 (Fed. Cir. 2019) (No. 19-2184).

applicable only if binding.  The Supreme Court said as much last Term in *Allina Health*, emphasizing that "many manual instructions surely qualify as guidelines of general applicability" for purposes of a Medicare statute, 139 S. Ct. at 1814 n.1, even though the Medicare manual was "not binding in final agency review," *Allina Health* Gov't Br. 22; *see also id.* at 5-6, 38-39, 41-42 (same).  *Allina Health* confirms that whether an interpretation is "binding" does not determine whether it is "of general applicability."

*Finally*, the Supreme Court vacated the panel's decision in *Gray* to "clear[] the path for future relitigation."  *United States v. Munsingwear, Inc.*, 340 U.S. 36, 40 (1950).  *DAV*, however, remains on the books.  En banc review is therefore necessary for the Court to consider the issue afresh, as the Supreme Court's *Munsingwear* vacatur contemplated.  And correcting *DAV* en banc is far more straightforward than forcing the Supreme Court to intervene yet again.

## II.    FEDERAL CIRCUIT RULE 47.12(a) IS INVALID

This case warrants en banc consideration for a second reason—to resolve the conflict concerning the proper timing for bringing a Section 502 action.

1.    As this Court has observed, Section 502 "does not contain its own statute of limitations." *Preminger I*, 517 F.3d at 1307.  Given that silence, this Court has applied two vastly different timeliness requirements.

On one hand, this Court has found it "quite clear" that claims "brought in this [C]ourt under 38 U.S.C. § 502 must be filed 'within six years after the right of action first accrues'"—that is, six years after the challenged agency action becomes "final." *Block v. Sec'y of Veterans Affairs*, 641 F.3d 1313, 1317-19 (Fed. Cir. 2011) (quoting *Preminger I*, 517 F.3d at 1306). This six-year limitations period comes from 28 U.S.C. § 2401(a), the default statute of limitations that applies to any "'civil action against the United States,'" including "actions for judicial review under the APA" that are not governed by "'a specific statutory limitations period.'" *Preminger I*, 517 F.3d at 1307 (citation omitted). Because Section 502 "does not contain its own statute of limitations," the six-year "limitations [period] in section 2401 applies." *Id.*

On the other hand, this Court has promulgated Federal Circuit Rule 47.12(a), which dramatically reduces the window for Section 502 actions to "60 days after issuance of the rule or regulation or denial of a request for amendment or waiver of the rule or regulation." Unlike the six-year limitations period, however, this 60-day window is not established by statute; indeed, there is no basis for this window beyond Rule 47.12(a) itself. Nevertheless, the Court has held that the 60-day window reflects "one of the requirements for review under § 502," such that a Section 502 challenge brought after 60 days "is untimely." *Preminger II*, 632 F.3d at 1352-53; *see, e.g.*, *Jackson v. Brown*, 55 F.3d 589, 592 (Fed. Cir. 1995).

These two timing requirements are irreconcilable. Indeed, this Court noted but declined to resolve the conflict decades ago. *See Brown v. Sec'y of Veterans Affairs*, 124 F.3d 227, 1997 WL 488930, at *2 (Fed. Cir. 1997) (unpublished). This case presents an opportunity for the full Court—a majority of which is generally needed to "amend" local rules, *see* Fed. R. App. P. 47(a)(1)—to resolve the conflict.

2. The correct resolution of the conflict is straightforward—Rule 47.12(a)'s 60-day period must give way to Section 2401(a)'s six-year period. Under the Rules Enabling Act, this Court has authority to "prescribe rules for the conduct of [its] business," but such rules "shall be consistent with Acts of Congress and rules of practice and procedure prescribed under [28 U.S.C. § 2072]." 28 U.S.C. § 2071(a); *see* Fed. R. App. P. 47(a)(1). A local rule is accordingly "invalid" if it "directly contradict[s]" or is "inconsistent with the purposes of" a federal statute or rule. *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1365 (Fed. Cir. 2006).

Rule 47.12(a) contradicts Section 2401(a) by reducing the time for filing a Section 502 petition from six years to 60 days without any statutory authority for doing so. Needless to say, courts may not substitute their own preferred limitations period for the statute of limitations prescribed by Congress. Yet that is precisely what Rule 47.12(a) does. The "court-created rule[]" must yield to the statute. *Hibbs v. Winn*, 542 U.S. 88, 99 (2004); *see also* Fed. R. App. P. 15(a)(1) ("Review of an

agency order is commenced by filing, *within the time prescribed by law*, a petition for review . . . ." (emphasis added)).

3.     This issue is very important for veterans. Rule 47.12(a) substantially limits the window of time within which veterans may challenge VA actions under Section 502. Indeed, it shrinks that window by more than 97%, with no apparent justification.

## CONCLUSION

For the foregoing reasons, the Court should grant initial hearing en banc to overrule *DAV*'s erroneous limitation on this Court's jurisdiction under Section 502, and to invalidate Rule 47.12(a)'s erroneous limitation on the applicable six-year limitations period under Section 2401(a). If it wishes, the Court can defer the substantive merits of NOVA's claims for consideration by a three-judge panel.

Dated: January 27, 2020

                                    Respectfully submitted,

                                      */s/ Roman Martinez*
                                      Roman Martinez
                                      Blake E. Stafford
                                      Shannon Grammel
                                      LATHAM & WATKINS LLP
                                      555 Eleventh Street, NW
                                      Suite 1000
                                      Washington, DC 20004
                                      (202) 637-2200
                                      roman.martinez@lw.com

                                      *Counsel for Petitioner*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this petition complies with the type-volume limitations of Federal Rule of Appellate Procedure 35(b)(2)(A) because it contains 3,899 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 35(c)(2).

I hereby certify that this petition complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

Dated: January 27, 2020                          */s/ Roman Martinez*
                                                  Roman Martinez



# ADDENDUM

# TABLE OF CONTENTS
*NOVA v. Secretary of Veterans Affairs*, **No. 20-1321**

# ADDENDUM

5 U.S.C. § 552(a)(1)–(2) ...................................................... Tab 1

5 U.S.C. § 553 ................................................................ Tab 2

28 U.S.C. § 2401 ............................................................. Tab 3

38 U.S.C. § 502 .............................................................. Tab 4

Federal Circuit Rule 47.12 .................................................. Tab 5

Brief of Petitioner, *Gray v. Wilkie*, No. 17-1679 (U.S. filed Dec. 17, 2018) ....................................................................... Tab 6

Brief for the Respondent, *Gray v. Wilkie*, No. 17-1679 (U.S. filed Jan. 16, 2019) ................................................................... Tab 7

# TAB 1

## § 552. Public information; agency rules, opinions, orders, records, and proceedings

**(a)** Each agency shall make available to the public information as follows:

**(1)** Each agency shall separately state and currently publish in the Federal Register for the guidance of the public—

**(A)** descriptions of its central and field organization and the established places at which, the employees (and in the case of a uniformed service, the members) from whom, and the methods whereby, the public may obtain information, make submittals or requests, or obtain decisions;

**(B)** statements of the general course and method by which its functions are channeled and determined, including the nature and requirements of all formal and informal procedures available;

**(C)** rules of procedure, descriptions of forms available or the places at which forms may be obtained, and instructions as to the scope and contents of all papers, reports, or examinations;

**(D)** substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency; and

**(E)** each amendment, revision, or repeal of the foregoing.

Except to the extent that a person has actual and timely notice of the terms thereof, a person may not in any manner be required to resort to, or be adversely affected by, a matter required to be published in the Federal Register and not so published. For the purpose of this paragraph, matter reasonably available to the class of persons affected thereby is deemed published in the Federal Register when incorporated by reference therein with the approval of the Director of the Federal Register.

**(2)** Each agency, in accordance with published rules, shall make available for public inspection in an electronic format—

**(A)** final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases;

**(B)** those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register;

**(C)** administrative staff manuals and instructions to staff that affect a member of the public;

**(D)** copies of all records, regardless of form or format—

**(i)** that have been released to any person under paragraph (3); and

**(ii)(I)** that because of the nature of their subject matter, the agency determines have become or are likely to become the subject of subsequent requests for substantially the same records; or

**(II)** that have been requested 3 or more times; and

**(E)** a general index of the records referred to under subparagraph (D);

unless the materials are promptly published and copies offered for sale. For records created on or after November 1, 1996, within one year after such date, each agency shall make such records available, including by computer telecommunications or, if computer telecommunications means have not been established by the agency, by other electronic means. To the extent required to prevent a clearly unwarranted invasion of personal privacy, an agency may delete identifying details when it makes available or publishes an opinion, statement of policy, interpretation, staff manual, instruction, or copies of records referred to in subparagraph (D). However, in each case the justification for the deletion shall be explained fully in writing, and the extent of such deletion shall be indicated on the portion of the record which is made available or published, unless including that indication would harm an interest protected by the exemption in subsection (b) under which the deletion is made. If technically feasible, the extent of the deletion shall be indicated at the place in the record where the deletion was made. Each agency shall also maintain and make available for public inspection in an electronic format current indexes providing identifying information for the public as to any matter issued, adopted, or promulgated after July 4, 1967, and required by this paragraph to be made available or published. Each agency shall promptly publish, quarterly or more frequently, and distribute (by sale or otherwise) copies of each index or supplements thereto unless it determines by order published in the Federal Register that the publication would be unnecessary and impracticable, in which case the agency shall nonetheless provide copies of such index on request at a cost not to exceed the direct cost of duplication. Each agency shall make the

index referred to in subparagraph (E) available by computer telecommunications by December 31, 1999. A final order, opinion, statement of policy, interpretation, or staff manual or instruction that affects a member of the public may be relied on, used, or cited as precedent by an agency against a party other than an agency only if—

    **(i)** it has been indexed and either made available or published as provided by this paragraph; or

    **(ii)** the party has actual and timely notice of the terms thereof.

* * *

**TAB 2**

## § 553. Rule making

**(a)** This section applies, according to the provisions thereof, except to the extent that there is involved—

> **(1)** a military or foreign affairs function of the United States; or

> **(2)** a matter relating to agency management or personnel or to public property, loans, grants, benefits, or contracts.

**(b)** General notice of proposed rule making shall be published in the Federal Register, unless persons subject thereto are named and either personally served or otherwise have actual notice thereof in accordance with law. The notice shall include—

> **(1)** a statement of the time, place, and nature of public rule making proceedings;

> **(2)** reference to the legal authority under which the rule is proposed; and

> **(3)** either the terms or substance of the proposed rule or a description of the subjects and issues involved.

Except when notice or hearing is required by statute, this subsection does not apply—

> **(A)** to interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice; or

> **(B)** when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest.

**(c)** After notice required by this section, the agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation. After consideration of the relevant matter presented, the agency shall incorporate in the rules adopted a concise general statement of their basis and purpose. When rules are required by statute to be made on the record after opportunity for an agency hearing, sections 556 and 557 of this title apply instead of this subsection.

**(d)** The required publication or service of a substantive rule shall be made not less than 30 days before its effective date, except—

**(1)** a substantive rule which grants or recognizes an exemption or relieves a restriction;

**(2)** interpretative rules and statements of policy; or

**(3)** as otherwise provided by the agency for good cause found and published with the rule.

**(e)** Each agency shall give an interested person the right to petition for the issuance, amendment, or repeal of a rule.

**TAB 3**

## § 2401. Time for commencing action against United States

(a) Except as provided by chapter 71 of title 41, every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues. The action of any person under legal disability or beyond the seas at the time the claim accrues may be commenced within three years after the disability ceases.

(b) A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

**TAB 4**

## § 502. Judicial review of rules and regulations

An action of the Secretary to which section 552(a)(1) or 553 of title 5 (or both) refers is subject to judicial review. Such review shall be in accordance with chapter 7 of title 5 and may be sought only in the United States Court of Appeals for the Federal Circuit. However, if such review is sought in connection with an appeal brought under the provisions of chapter 72 of this title, the provisions of that chapter shall apply rather than the provisions of chapter 7 of title 5.

**TAB 5**

# FEDERAL CIRCUIT RULE 47.12

**Action for Judicial Review Under 38 U.S.C. § 502**

**(a)**    **Time for Filing.**

An action for judicial review under 38 U.S.C. § 502 of a rule and regulation of the Department of Veterans Affairs must be filed with the clerk of court within 60 days after issuance of the rule or regulation or denial of a request for amendment or waiver of the rule or regulation.

**(b)**    **Parties.**

Only a person or persons adversely affected by the rule or regulation or the rulemaking process may bring an action for judicial review. The Secretary of Veterans Affairs must be named the respondent.

**(c)**    **Contents.**

The action for judicial review must describe how the person or persons bringing the action are adversely affected and must specifically identify either:

(1)    the rule, regulation, opinion, or order of the Department of Veterans Affairs separately stated and published in the Federal Register pursuant to 5 U.S.C. § 552(a)(1) on which judicial review is sought; or

(2)    the notice-and-comment rulemaking process by the Department of Veterans Affairs pursuant to 5 U.S.C. § 553 on which judicial review is sought.

**(d)**    **Procedure.**

Except as provided in this rule, the procedures applicable to an action for judicial review under 38 U.S.C. § 502 are the same as those for a petition for review under Federal Rule of Appellate Procedure 15.

**TAB 6**

No. 17-1679

# In the
# Supreme Court of the United States

―――――

ROBERT H. GRAY,

*Petitioner*,

V.

ROBERT WILKIE,
SECRETARY OF VETERANS AFFAIRS,

*Respondent.*

―――――

ON WRIT OF CERTIORARI TO THE UNITED STATES
COURT OF APPEALS FOR THE FEDERAL CIRCUIT

―――――

## BRIEF OF PETITIONER

―――――

MATTHEW D. HILL
SHANNON L. BREWER
HILL & PONTON, P.A.
605 East Robinson Street
Suite 635
Orlando, FL 32801


MICHAEL E. WILDHABER
VETERANS LAW ATTORNEY
700 Twelfth Street, NW
Suite 700
Washington, DC 20005

ROMAN MARTINEZ
  *Counsel of Record*
BENJAMIN W. SNYDER
GRAHAM E. PHILLIPS
CHERISH A. DRAIN*
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
(202) 637-2200
roman.martinez@lw.com

  * Admitted in
  Pennsylvania only.  All
  work supervised by a
  member of the DC Bar.

*Counsel for Petitioner*

## QUESTION PRESENTED

Whether the Federal Circuit has jurisdiction under 38 U.S.C. § 502 to review an interpretive rule reflecting VA's definitive interpretation of its own regulation, even if VA chooses to promulgate that rule through its adjudication manual.

# TABLE OF CONTENTS

**Page**

QUESTION PRESENTED ......................................... i

TABLE OF AUTHORITIES........................................v

OPINIONS BELOW....................................................1

JURISDICTION ..........................................................1

STATUTORY PROVISIONS INVOLVED .................1

INTRODUCTION.......................................................1

STATEMENT OF THE CASE ...................................3

    A.   The Federal Circuit's Jurisdiction Over VA Rules...............................................3

    B.   VA's Restrictive Interpretation Of The Agent Orange Act ...............................6

    C.   The Proceedings In This Case ..................11

SUMMARY OF ARGUMENT...................................17

ARGUMENT ............................................................20

I.   SECTION 502'S CROSS-REFERENCE TO SECTION 552(a)(1) AUTHORIZES REVIEW OF THE WATERWAYS PROVISION .....................................................20

    A.   The Waterways Provision Is An Interpretation "Of General Applicability".........................................20

        1.   The Ordinary Meaning Of "General Applicability" Is Dispositive........................................20

        2.   Section 552(a)(1)(D)'s History Reinforces The Ordinary Meaning ...........................................24

# TABLE OF CONTENTS—Continued

3. Congress And Federal Agencies Have Subsequently Endorsed The Ordinary Meaning ...................... 29

4. At A Minimum, Section 552(a)(1)(D) Encompasses Interpretations That Change VA Policy And Have A Significant Impact On Veterans ............................................ 33

B. The Federal Circuit's View That Sections 552(a)(1) And (a)(2) Are Mutually Exclusive Is Mistaken .............. 35

C. The Government's New Focus On Whether The Manual "Binds" The Board Is Mistaken ..................................... 38

II. SECTION 502'S CROSS-REFERENCE TO SECTION 553 ALSO AUTHORIZES REVIEW ........................................................... 43

A. Section 553 Unambiguously "Refers" To Interpretive Rules ................................ 44

B. Gray Has Consistently Invoked Section 553 As A Basis For Jurisdiction ............................................... 46

III. SECTION 502 IS A VITAL CHECK ON UNLAWFUL VA ACTION AND MUST BE GIVEN ITS FULL SCOPE ......................... 48

CONCLUSION ......................................................... 52

**TABLE OF CONTENTS—Continued**

Page

**ADDENDUM**

5 U.S.C. § 551 ....................................................1a

5 U.S.C. § 552(a)(1)-(3)....................................2a

5 U.S.C. § 553 ....................................................7a

5 U.S.C. § 801 ....................................................9a

5 U.S.C. § 804 ..................................................14a

38 U.S.C. § 502 ................................................16a

Federal Register Act, Pub. L. No. 74-220,
    §§ 5-6, 49 Stat. 500 (1935) ................................17a

Act to Amend the Federal Register Act,
    Pub. L. No. 75-158, § 11(a), 50 Stat. 304
    (1937)................................................................19a

1 C.F.R. § 1.1 ..................................................20a

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Anderson v. Butz,*
550 F.2d 459 (9th Cir. 1977)................................33

*Astrue v. Ratliff,*
560 U.S. 586 (2010)............................................49

*Auer v. Robbins,*
519 U.S. 452 (1997)......................................8, 42

*Blue Water Navy Vietnam Veterans Ass'n v. McDonald,*
830 F.3d 570 (D.C. Cir. 2016)..............................7

*Brown v. Gardner,*
513 U.S. 115 (1994)......................................45, 49

*Burrage v. United States,*
134 S. Ct. 881 (2014).........................................48

*Carr v. United States,*
560 U.S. 438 (2010)............................................48

*Christopher v. SmithKline Beecham Corp.,*
567 U.S. 142 (2012)............................................22

*Coalition for Common Sense in Government Procurement v. Secretary of Veterans Affairs,*
464 F.3d 1306 (Fed. Cir. 2006).............................5

*Commissioner v. Lundy,*
516 U.S. 235 (1996)............................................48

*Connecticut National Bank v. Germain,*
503 U.S. 249 (1992)............................................17

# TABLE OF AUTHORITIES—Continued

Page(s)

*D & W Food Centers, Inc. v. Block,*
786 F.2d 751 (6th Cir. 1986)...............................33

*Disabled American Veterans v. Gober,*
234 F.3d 682 (Fed. Cir. 2000) .............................49

*Disabled American Veterans v. Secretary of Veterans Affairs,*
327 F.3d 1339 (Fed. Cir. 2003) .......................5, 49

*Disabled American Veterans v. Secretary of Veterans Affairs,*
859 F.3d 1072 (Fed. Cir. 2017) ......2, 13, 14, 35, 39

*Gray v. McDonald,*
27 Vet. App. 313 (2015) ............................9, 10, 51

*Haas v. Peake,*
525 F.3d 1168 (Fed. Cir. 2008), *cert. denied,* 555 U.S. 1149 (2009)............................8, 9

*Henderson v. Shinseki,*
562 U.S. 428 (2011).......................3, 45, 46, 49, 50

*Herron v. Heckler,*
576 F. Supp. 218 (N.D. Cal. 1983)......................36

*Johnson v. McDonald,*
762 F.3d 1362 (Fed. Cir. 2014) ...........................49

*Kahn v. United States,*
753 F.2d 1208 (3d Cir. 1985) ..............................33

*Kingdomware Technologies, Inc. v. United States,*
136 S. Ct. 1969 (2016).........................................48

TABLE OF AUTHORITIES—Continued

Page(s)

*Lewis v. Weinberger*,
    415 F. Supp. 652 (D.N.M. 1976) ........................33

*Martin v. O'Rourke*,
    891 F.3d 1338 (Fed. Cir. 2018) .......................6, 50

*Mathis v. Shulkin*,
    137 S. Ct. 1994 (2017)...........................................2

*Military Order of the Purple Heart v.
    Secretary of Veterans Affairs*,
    580 F.3d 1293 (Fed. Cir. 2009) .......................5, 49

*Milner v. Department of Navy*,
    562 U.S. 562 (2011).......................................21, 34

*Morton v. Ruiz*,
    415 U.S. 199 (1974).......................................15, 37

*National Organization of Veterans'
    Advocates, Inc. v. Secretary of Veterans
    Affairs*,
    330 F.3d 1345 (Fed. Cir. 2003) ...........................50

*National Organization of Veterans'
    Advocates, Inc. v. Secretary of Veterans
    Affairs*,
    260 F.3d 1365 (Fed. Cir. 2001) .......................5, 49

*Nguyen v. United States*,
    824 F.2d 697 (9th Cir. 1987)...............................22

*Overton v. Wilkie*,
    30 Vet. App. 257 (2018) .......................................42

viii

## TABLE OF AUTHORITIES—Continued

Page(s)

*Paralyzed Veterans of America v. Secretary of Veterans Affairs*,
345 F.3d 1334 (Fed. Cir. 2003) .........................5, 49

*Perez v. Mortgage Bankers Ass'n*,
135 S. Ct. 1199 (2015)..........................4, 39, 43, 45

*Sekhar v. United States*,
570 U.S. 729 (2013)..............................................26

*Smith v. Shinseki*,
647 F.3d 1380 (Fed. Cir. 2011) ...............10, 11, 43

*Splane v. West*,
216 F.3d 1058 (Fed. Cir. 2000) ...........................40

*Star Athletica, L.L.C. v. Varsity Brands, Inc.*,
137 S. Ct. 1002 (2017)..........................................33

*Stuart-James Co. v. SEC*,
857 F.2d 796 (D.C. Cir. 1988) .............................33

*Taniguchi v. Kan Pacific Saipan, Ltd.*,
566 U.S. 560 (2012)..............................................21

*Tax Analysts & Advocates v. IRS*,
505 F.2d 350 (D.C. Cir. 1974) .............................23

*Thun v. Shinseki*,
572 F.3d 1366 (Fed. Cir. 2009) ...........................10

[Title Redacted], No. 10-02 945, 2018 WL
2679096 (Bd. Vet. App. Apr. 11, 2018)...............42

[Title Redacted], No. 10-08 246, 2016 WL
3650559 (Bd. Vet. App. May 11, 2016)...............43

[Title Redacted], No. 10-34 322, 2013 WL
7222774 (Bd. Vet. App. Dec. 23, 2013)...............43

**TABLE OF AUTHORITIES—Continued**

Page(s)

[Title Redacted], No. 12-11 139, 2017 WL
2905538 (Bd. Vet. App. May 12, 2017)..........11, 42

*United States v. Weber Aircraft Corp.*,
465 U.S. 792 (1984)...............................................21

*Urban v. Shulkin*,
29 Vet. App. 82 (2017) ........................................43

*Vietnam Veterans of America v. Secretary of
the Navy*,
843 F.2d 528 (D.C. Cir. 1988).......................39, 40

*Walters v. National Association of Radiation
Survivors*,
473 U.S. 305 (1985)...............................................7

*Warder v. Shalala*,
149 F.3d 73 (1st Cir. 1998) ..................................40

**STATUTES AND REGULATIONS**

5 U.S.C. § 551(4)...........................................4, 30, 46

5 U.S.C. § 552(a)(1) ..................................2, 20, 22, 36

5 U.S.C. § 552(a)(1)(D) ............................4, 12, 18, 20

5 U.S.C. § 552(a)(2) ..................................................36

5 U.S.C. § 552(a)(2)(C) .............................................12

5 U.S.C. § 553 .......................................................19, 43

5 U.S.C. § 553(b)(A)..............................2, 4, 19, 40, 44

5 U.S.C. § 553(d)(2) ...................................2, 4, 19, 45

5 U.S.C. § 801 ..........................................................30

5 U.S.C. § 804(3)(A)..................................................31

TABLE OF AUTHORITIES—Continued

Page(s)

28 U.S.C. § 1254(1) .......................................................1

38 U.S.C. § 101(16) ......................................................7

38 U.S.C. § 502 ..........................................2, 4, 44, 48

38 U.S.C. § 1116(a)(1) ................................................7

38 U.S.C. § 7101(a) .....................................................5

38 U.S.C. § 7252(a) .....................................................5

38 U.S.C. § 7292 .........................................................5

Pub. L. No. 74-220, 49 Stat. 500 (1935) ..................25

Pub. L. No. 75-158, 50 Stat. 304 (1937) ..................25

Pub. L. No. 79-404, 60 Stat. 237 (1946) ............25, 27

Pub. L. No. 89-487, 80 Stat. 250 (1966) ..................28

Pub. L. No. 100-687, 102 Stat. 4105 (1988)...............2

Pub. L. No. 102-4, 105 Stat. 11 (1991) ......................7

1 C.F.R. § 1.1 .......................................................29, 31

1 C.F.R. § 40.9 (1966) ...............................................25

10 C.F.R. § 205.85 ....................................................23

17 C.F.R. § 202.2 ......................................................23

18 C.F.R. § 385.1901(b)(2) ......................................23

26 C.F.R. § 301.6110-2(d)........................................23

26 C.F.R. § 301.6110-2(f) ........................................23

29 C.F.R. § 790.17(d)................................................22

32 C.F.R. § 701.64(a)(4) (2018) ...............................30

TABLE OF AUTHORITIES—Continued

Page(s)

38 C.F.R. § 3.307(a)(6)(iii)..........................................8

**LEGISLATIVE MATERIALS**

H.R. Rep. No. 79-1980 (Comm. Amendment),
*reprinted in Legislative History of the
Administrative Procedure Act* (1946) ..................26

H.R. Rep. No. 100-963 (1988) ....................................5

S. Rep. No. 88-1219 (1964)..................................22, 28

S. Rep. No. 89-813 (1965)..........................................28

S. Rep. No. 100-439 (1988)..........................................7

142 Cong. Rec. 8201 (1996).................................23, 31

**OTHER AUTHORITIES**

2 Fed. Reg. 2450 (Nov. 12, 1937) ...............................25

11 Fed. Reg. 9833 (Sept. 7, 1946) ..............................25

24 Fed. Reg. 2343 (Mar. 26, 1959)...........................25

40 Fed. Reg. 36,325 (Aug. 20, 1975) .........................30

66 Fed. Reg. 23,166 (May 8, 2001) .............................8

72 Fed. Reg. 3432 (Jan. 25, 2007).....................32, 40

83 Fed. Reg. 62,249 (Dec. 3, 2018)...........................30

*Attorney General's Manual on the
Administrative Procedure Act* (1947) ......26, 27, 29

*Attorney General's Memorandum on the
Public Information Section of the
Administrative Procedure Act* (June 1967) ...22, 28

*Black's Law Dictionary* (5th ed. 1979) ....................21

TABLE OF AUTHORITIES—Continued

Page(s)

Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum. L. Rev. 527 (1947)..............................................................26

GAO, *Opinion on Whether Trinity River Record of Decision is a Rule*, B-287557 (May 14, 2001), https://www.gao.gov/ assets/210/201768.pd.....................................31, 32

Ronald M. Levin, *Rulemaking and the Guidance Exception*, 70 Admin. L. Rev. 263 (2018)..............................................................41

*New Oxford American Dictionary* (3d ed. 2010)............................................................21, 44

Office of Audits and Evaluations, VA Office of Inspector General, *Veterans Benefits Administration: Review of Timeliness of the Appeals Process* (2018), https://www.oversight.gov/sites/default/ files/oig-reports/VAOIG-16-01750-79.pdf .............6

6 *Oxford English Dictionary* (2d ed. 1989)...............21

1 Richard J. Pierce, *Administrative Law Treatise* (5th ed. 2010) .........................................39

Victor H. Polk, Jr., *Publication Under the Freedom of Information Act of Statements of General Policy and Interpretations of General Applicability*, 47 U. Chi. L. Rev. 351 (1980)..............................................................33

**TABLE OF AUTHORITIES—Continued**

**Page(s)**

Peter L. Strauss, *Publication Rules in the
Rulemaking Spectrum: Assuring Proper
Respect for an Essential Element*, 53
Admin. L. Rev. 803 (2001) ...................................40

U.S. Court of Appeals for Veterans Claims,
*Annual Report: Fiscal Year 2017* (2017),
https://www.uscourts.cavc.gov/documents/
FY2017AnnualReport.pdf .....................................6

VA Op. Gen. Counsel Prec. 27-97 (1997)....................8

*Webster's Third New International
Dictionary* (1961) ...........................................21, 44

## OPINIONS BELOW

The opinion of the Federal Circuit (Pet. App. 1a-28a) is reported at 875 F.3d 1102. The opinion of the Federal Circuit denying rehearing (Pet. App. 29a-37a) is reported at 884 F.3d 1379.

## JURISDICTION

The Federal Circuit entered its judgment on November 16, 2017, and it denied Petitioner Robert Gray's rehearing petition on March 21, 2018. Pet. App. 1a, 29a-31a. This Court has jurisdiction under 28 U.S.C. § 1254(1).

## STATUTORY PROVISIONS INVOLVED

Relevant statutory and regulatory provisions are reproduced in the addendum to this brief.

## INTRODUCTION

The Department of Veterans Affairs (VA) has a single, overriding mission: to care for the men and women who have risked their lives serving our Nation. The sad reality, though, is that VA often falls short of that noble goal. This case is about the circumstances in which veterans can invoke Article III jurisdiction to enforce their rights and hold VA accountable when the agency loses its way.

It is no secret that VA has had its share of problems in recent years. Front-page scandals have revealed malfeasance, corruption, and mistreatment of veterans at VA hospitals. The VA's disability claims system is notoriously backlogged and inefficient, with hundreds of thousands of veterans waiting for their claims to be adjudicated in an agency process that averages nearly six years to run its course. And VA regularly promulgates regulations that misinterpret federal statutes and violate the core

requirements of the Administrative Procedure Act (APA)—usually in ways that do "nothing to assist, and much to impair, the interests of those the law says [VA] is supposed to serve." *Mathis v. Shulkin*, 137 S. Ct. 1994, 1995 (2017) (Gorsuch, J., dissenting from the denial of certiorari).

This case involves Congress's effort to mitigate the last of these failings. The Veterans' Judicial Review Act (VJRA), Pub. L. No. 100-687, 102 Stat. 4105 (1988), imposes an Article III judicial check on unlawful VA rulemaking. It does so by granting the Federal Circuit jurisdiction to adjudicate preenforcement challenges to any VA action "to which section 552(a)(1) or 553 of title 5 (or both) refers." 38 U.S.C. § 502. By design, the scope of that jurisdiction is expansive: Section 502's cross-references encompass any substantive rule, interpretive rule, and general statement of policy. *See* 5 U.S.C. §§ 552(a)(1), 553(b)(A), (d)(2).

By providing this specialized review mechanism in the Federal Circuit, Congress protected veterans and allowed them to challenge unlawful VA rules directly in court, without having to slog through the painfully slow disability claims process. But the Federal Circuit's decisions in this case and *Disabled American Veterans v. Secretary of Veterans Affairs*, 859 F.3d 1072 (Fed. Cir. 2017) (*DAV*), have now sharply curtailed the rights of veterans to bring such challenges. Contrary to the unambiguous language of the relevant statutes, the Federal Circuit held that it *lacks* jurisdiction to review VA interpretive rules that VA promulgates through publication in its adjudication manual.

The Federal Circuit's jurisdictional holding is wrong and should be overturned. That holding

misreads the unambiguous statutory text and undermines its clear purpose. Not even the Government defends the Federal Circuit's rationale. And although the Government has now concocted a brand-new theory to justify the result below—and thus to deprive veterans of judicial review—that theory is equally unmoored from the text, purpose, and history of the relevant statutes. However the Federal Circuit's decision is rationalized, its result is contrary to law and imposes "significant hardship" on our Nation's veterans. Pet. App. 25a (Dyk, J., dissenting) (citation omitted).

This Court should restore the VJRA's important check on VA rulemaking and hold that the Federal Circuit has jurisdiction to hear petitioner's challenge. The decision below should be reversed.

## STATEMENT OF THE CASE

### A. The Federal Circuit's Jurisdiction Over VA Rules

1. In the VJRA, Congress for the first time authorized judicial review of "the adjudication of veterans' benefits claims," and it did so in a way that is "decidedly favorable to veterans." *Henderson v. Shinseki*, 562 U.S. 428, 440-41 (2011). Most importantly, the VJRA authorized veterans to bring preenforcement challenges to the validity of any VA substantive rule, interpretive rule, or general policy statement directly in the Federal Circuit.

That authorization is embodied in 38 U.S.C. § 502, the jurisdictional provision at the heart of this case. As relevant here, Section 502 states that:

> An action of the [VA] Secretary to which section 552(a)(1) or 553 of title 5 (or both) refers is subject to judicial review. Such

review shall be in accordance with [the judicial review provisions of the Administrative Procedure Act (APA), 5 U.S.C. §§ 701-706] and may be sought only in the United States Court of Appeals for the Federal Circuit.

38 U.S.C. § 502.

The scope of Section 502's jurisdictional grant is undeniably broad—it encompasses *any* VA action "to which section 552(a)(1) or 553 of title 5 (or both) refers." *Id.* Section 552(a)(1) is a provision of the Freedom of Information Act (FOIA) that requires publication in the Federal Register of various types of agency pronouncements, including "substantive rules" and "statements of general policy or interpretations of general applicability formulated and adopted by the agency." 5 U.S.C. § 552(a)(1)(D).

Section 553 is the APA provision governing agency rulemaking. Like Section 552(a)(1)(D), Section 553 refers to both "substantive rule[s]" (which the provision says can be promulgated only following notice and comment), and "interpretative rules" and "statements of policy" (which are exempted from those notice-and-comment requirements). *Id.* § 553(b)(A), (d)(2).[1]

---

[1] The terms "interpretative" and "interpretive" are interchangeable. *See Perez v. Mortgage Bankers Ass'n*, 135 S. Ct. 1199, 1204 & n.1 (2015). The APA defines "rule" as "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency." 5 U.S.C. § 551(4).

By cross-referencing Sections 552(a)(1) and 553, Congress intended to give the Federal Circuit jurisdiction to adjudicate direct APA challenges to the validity of significant rules and policies. The purpose of Section 502 was to ensure that VA follows its APA "responsibilities . . . with respect to agency rules and interpretations of agency authority." H.R. Rep. No. 100-963, at 27 (1988). And at least until *DAV* and the decision below, Section 502 had fulfilled that purpose, providing the jurisdictional basis for a long list of cases in which VA rules and policies were found to violate the APA.[2]

2. Apart from Section 502, the Federal Circuit also has jurisdiction to review the denial of individual benefits claims. Such claims are originally adjudicated at one of 56 VA regional offices, *see* Pet. App. 8a, and they are first subject to review by the Board of Veterans' Appeals (Board) and the U.S. Court of Appeals for Veterans Claims (Veterans Court), *see* 38 U.S.C. §§ 7101(a), 7252(a). In the course of reviewing individual claims decisions, the Federal Circuit has authority to adjudicate the validity of particular VA rules and policies to the extent they are implicated in each case. *See id.* § 7292 (authorizing review of legal questions).

---

2 *See, e.g.*, *Military Order of the Purple Heart v. Sec'y of Veterans Affairs*, 580 F.3d 1293, 1296-98 (Fed. Cir. 2009); *Coal. for Common Sense in Gov't Procurement v. Sec'y of Veterans Affairs*, 464 F.3d 1306, 1318-19 (Fed. Cir. 2006); *Paralyzed Veterans of Am. v. Sec'y of Veterans Affairs*, 345 F.3d 1334, 1347 (Fed. Cir. 2003); *Disabled Am. Veterans v. Sec'y of Veterans Affairs*, 327 F.3d 1339, 1348-49 (Fed. Cir. 2003); *Nat'l Org. of Veterans' Advocates, Inc. v. Sec'y of Veterans Affairs*, 260 F.3d 1365, 1368 (Fed. Cir. 2001).

Needless to say, this mechanism for seeking judicial review of unlawful VA rules and policies is far slower and less efficient than direct judicial review under Section 502. It "takes over *five and a half years* on average" for an individual benefits case to be resolved by the Board, and then nearly an *additional* year for it to be fully adjudicated by the Veterans Court. *Martin v. O'Rourke*, 891 F.3d 1338, 1350-51 (Fed. Cir. 2018) (Moore, J., concurring); U.S. Court of Appeals for Veterans Claims, *Annual Report: Fiscal Year 2017*, at 3 (2017), https://www.uscourts.cavc.gov/documents/FY2017AnnualReport.pdf. Indeed, the process takes so long that veterans often die while awaiting final resolution of their claims, which in many cases threatens to extinguish their rights even to fully deserved benefits. *See Martin*, 891 F.3d at 1350 (Moore, J., concurring) (noting that only "a spouse, minor children, or dependent parents" can receive a veteran's posthumous benefits); Office of Audits and Evaluations, VA Office of Inspector General, *Veterans Benefits Administration: Review of Timeliness of the Appeals Process* 12 (2018), https://www.oversight.gov/sites/default/files/oig-reports/VAOIG-16-01750-79.pdf (*Review of Timeliness*) (noting that 1,600 veterans participating in VA appeals died in the first quarter of 2016 alone).

To its credit, VA has itself admitted that the appeals process for benefits claims is "broken" and deeply "frustrating" to veterans. *Review of Timeliness* 15.

## B. VA's Restrictive Interpretation Of The Agent Orange Act

1. In the 1960s and early 1970s, the United States used various herbicides to clear heavily forested areas

in Vietnam during the Vietnam War. *See* S. Rep. No. 100-439, at 64 (1988). Countless U.S. service members were exposed to those herbicides, which have been linked to various adverse health effects. In 1991, Congress made it easier for such veterans to obtain disability compensation by promulgating the Agent Orange Act of 1991, Pub. L. No. 102-4, 105 Stat. 11.

In general, veterans seeking disability benefits based on military service must establish "service connection"—*i.e.*, that "the disability is causally related to an injury sustained in the service." *Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305, 307 (1985); *see* 38 U.S.C. § 101(16). But it was traditionally "extremely difficult" for Vietnam veterans who had been exposed to herbicides to satisfy that requirement, given the passage of time and the lack of information about precisely where and when the United States deployed the herbicides. *Blue Water Navy Vietnam Veterans Ass'n v. McDonald*, 830 F.3d 570, 572-73 (D.C. Cir. 2016); *see* Pet. App. 3a.

The Agent Orange Act helps solve that problem. It creates an automatic presumption of service connection for any veteran who (1) "during active military, naval, or air service, served in the Republic of Vietnam" between January 9, 1962, and May 7, 1975; and (2) develops one of several diseases medically linked to herbicides. 38 U.S.C. § 1116(a)(1) (requiring VA to presume that the veteran was exposed to herbicides and that the disease was "incurred in or aggravated by such service").

2. Over the past 20 years, VA has repeatedly narrowed its understanding of which Vietnam War veterans "served in the Republic of Vietnam" and thus qualify for the Agent Orange Act's automatic

presumption. In 1993, VA issued a regulation interpreting the phrase "'[s]ervice in the Republic of Vietnam'" to include "service in the waters offshore and service in other locations if the conditions of service involved duty or visitation in the Republic of Vietnam." 38 C.F.R. § 3.307(a)(6)(iii). Through a VA General Counsel opinion and statements in the Federal Register, VA later interpreted this regulation to exclude from the service-connection presumption veterans who served on ships offshore without entering "inland waterways" or setting foot on Vietnamese soil. *See* 66 Fed. Reg. 23,166, 23,166 (May 8, 2001); VA Op. Gen. Counsel Prec. 27-97, at 3-5 (1997). In other words, VA interpreted the Act and regulation to encompass so-called "brown water" veterans, who served on rivers and other inland waterways, but to exclude "blue water" veterans, who served only in offshore waters.

This narrow interpretation was challenged by a blue-water veteran in *Haas v. Peake*, 525 F.3d 1168 (Fed. Cir. 2008), *cert. denied*, 555 U.S. 1149 (2009). A divided panel of the Federal Circuit upheld VA's interpretation. The court first held that the meaning of "service in the Republic of Vietnam" under the Act was ambiguous and that VA's implementing regulation was a permissible interpretation of that phrase. *Id.* at 1183-86. The court then held that VA had reasonably interpreted its regulation to exclude blue-water veterans who never set foot on Vietnamese soil. *Id.* at 1186-95. That interpretation, the court concluded, was entitled to *Auer* deference. *Id.* at 1190 (citing *Auer v. Robbins*, 519 U.S. 452, 462 (1997)).

Although *Haas* affirmed VA's decision to apply the presumption to service on inland waterways but not offshore waters, it did not address how to draw the

line between "inland" and "offshore." In 2009, VA addressed that issue in a guidance letter, which narrowly defined "inland waterways" to include "rivers, estuaries, canals, and delta areas," but not "open deep-water coastal ports and harbors where there is no evidence of herbicide use." Pet. App. 6a (citation omitted).

Petitioner Robert Gray, a Navy veteran, successfully challenged this interpretation in the course of appealing the Board's denial of his individual benefits claim. *See Gray v. McDonald*, 27 Vet. App. 313 (2015). Gray served aboard a destroyer that anchored several times in Da Nang Harbor. *Id.* at 316. Even though Da Nang Harbor is "nearly totally surrounded by land" and is located entirely "within the territorial boundaries of Vietnam," the Board concluded that, under VA's interpretive guidance, it was not an inland waterway and that therefore Gray was not entitled to the service-connection presumption. *Id.* at 317 (citation omitted).

The Veterans Court vacated the Board's decision, concluding that "the manner in which VA defines inland waterways is both inconsistent with the regulatory purpose and irrational." *Id.* at 322. VA's decision to exclude Da Nang Harbor, the court found, was not based on any analysis of "the likelihood of exposure to herbicides." *Id.* Moreover, VA inexplicably *did* treat other bays and harbors as inland waterways, leading to "inconsistent" and "arbitrary outcomes." *Id.* at 324-25. Because the Veterans Court could not "discern any rhyme or reason" in VA's "aimless" and "adrift" interpretation, it remanded Gray's case to the Board and instructed VA to reconsider its position. *Id.* at 324, 327-28.

3. In February 2016, VA announced a retooled and further-narrowed interpretation of the Agent Orange Act and its implementing regulation. Although this new interpretation was approved by the VA Secretary himself—who assured Senator Richard Blumenthal that he "did not reach this decision lightly," JA83—it was not published in the Federal Register.

Instead, VA incorporated the new interpretation into its *Adjudication Procedures Manual, M21-1* (M21-1 Manual). The M21-1 Manual contains "all of [VA's] policies and procedures for adjudicating claims for VA benefits." Pet. App. 37a (Dyk, J., dissenting from the denial of rehearing en banc) (citation omitted). VA regularly uses the M21-1 Manual to set forth its formal interpretations of key statutes and regulations.[3] VA's new interpretation of the Agent Orange Act appeared in revisions to a provision of the M21-1 Manual that this brief will hereafter refer to as the "Waterways Provision." *See* JA58-79.[4]

As revised, the Waterways Provision continues to limit the Agent Orange Act's statutory presumption to those Vietnam veterans who set foot on Vietnamese soil or served in Vietnam's "inland waterways." JA66-76. But the Manual now defines "inland waterways" to "end at their mouth or junction to other offshore water features." JA60-61. This narrower definition thus excludes "all Navy personnel" who served in *any* of Vietnam's "ports, harbors, and bays from

---

[3] *See, e.g.*, Pet. App. 4a-5a; *Smith v. Shinseki*, 647 F.3d 1380, 1384 (Fed. Cir. 2011); *Thun v. Shinseki*, 572 F.3d 1366, 1369 (Fed. Cir. 2009).

[4] The Waterways Provision is found at Part IV, Subpart ii, Chapter 1, Section H, Topic 2 of the M21-1 Manual.

presumptive service connection." Pet. App. 8a. As the Manual itself makes clear, this changed definition excludes several bays and harbors that VA had previously treated as inland waterways. JA63-64 (excluding Qui Nhon Bay Harbor and Ganh Rai Bay).

By incorporating its new definition of "inland waterways" into the M21-1 Manual, VA ensured that the effect of this definition would be "both real and far reaching." Pet. App. 10a. The M21-1 Manual formally binds all front-line VA benefits adjudicators working in VA's 56 regional offices throughout the country. *Id.* at 5a, 8a. Those adjudicators issue the final decisions in 96% of all claims for veterans' benefits, *id.* at 24a-25a (Dyk, J., dissenting), and they "are not authorized to independently determine that any particular coastal feature, such as bay, harbor, or inlet, is an inland waterway," JA63. Moreover, VA regularly demands—and receives—*Auer* deference to its interpretive rules set forth in agency manuals, both in Article III courts and before the Board.[5]

## C.   The Proceedings In This Case

1. In March 2016, while his individual benefits claim was still pending, Gray filed a petition for review of the new Waterways Provision in the Federal Circuit pursuant to 38 U.S.C. § 502. JA8-16. As noted, that statute provides that "[a]n action of the [VA] Secretary to which section 552(a)(1) or 553 of title 5 (or both) refers is subject to judicial review." The "Statement of Subject Matter Jurisdiction" in Gray's opening brief asserted that the new Manual

---

[5]   *See, e.g.*, *Smith*, 647 F.3d at 1385; [Title Redacted], No. 12-11 139, 2017 WL 2905538, at *8 (Bd. Vet. App. May 12, 2017); *see also* Gov't Br. 31, *Gazelle v. McDonald*, 868 F.3d 1006 (Fed. Cir. 2017) (No. 16-1932), 2016 WL 6883024.

provision constituted a "statement[] of general policy" or an "interpretation[] of general applicability" under Section 552(a)(1)(D), as well as a rule "refer[red]" to by Section 553. Pet'r C.A. Br. 1-2; *see also* JA9.

In response, VA repeatedly acknowledged that the Waterways Provision contained "interpretive statements" that apply to all "regional office adjudicat[ions]." Pet. App. 51a-57a, 60a; *see id.* at 9a-10a.[6] And it did not deny that the Waterways Provision was an interpretation of general applicability—and thus within the plain language of Section 552(a)(1)(D).

Nonetheless, VA asserted that the petition should still be dismissed for lack of jurisdiction because agency manuals are more clearly referenced in 5 U.S.C. § 552(a)(2)(C). *See* Pet. App. 57a-59a. That provision describes materials that agencies must make available for public inspection, including "administrative staff manuals" and "instructions to staff that affect a member of the public." 5 U.S.C. § 552(a)(2)(C). VA argued that Sections 552(a)(1) and (a)(2) are mutually exclusive, and that the new rule at issue here is covered by Section 552(a)(2)(C)—and thus not by Section 552(a)(1)(D)—because the former provision "more specifically" refers to agency manuals. Pet. App. 58a ("Although the M21-1 also contains interpretive rules arguably referred to by subsection (a)(1), the manual is more specifically referenced in subsection (a)(2)."). VA went on to assert that, "[p]ursuant to the 'commonplace' canon of statutory construction 'that the specific governs the general,' the M21-1 is governed by subsection (a)(2),

---

6  For ease of reference, relevant excerpts of the Government's Federal Circuit merits brief are reproduced at Pet. App. 51a-61a.

not (a)(1)." *Id.* (citation omitted).[7] VA reiterated its mutual-exclusivity interpretation at oral argument. *See Gray* Oral Arg. 32:40-32:55, 36:45-36:57; *see also* BIO 14 (acknowledging that VA advanced a mutual-exclusivity argument below).[8]

2. After oral argument, a different panel of the Federal Circuit decided *DAV*. There, a veterans organization had sought Federal Circuit review of a different revision to the M21-1 Manual, in which VA made it harder for Gulf War veterans to establish that certain disabilities were service-connected. *See DAV*, 859 F.3d at 1074. As in this case, VA argued that even though the Manual provision at issue "is an interpretive rule," it was exempt from judicial review under Section 502 because—and only because—it appeared in the Manual. Gov't Br. 16-17, 29-33, *DAV*, 859 F.3d 1072 (No. 16-1493), 2016 WL 5845985 (*DAV* Gov't Br.).

---

[7] *See also* Pet. App. 58a-59a ("By specifically including section 552(a)(1), [38 U.S.C. § 502] . . . excludes actions referred to in the immediately following subsection, (a)(2)."); *id.* at 52a ("[T]he M21-1 revisions at issue in Mr. Gray's petition are referred to in 5 U.S.C. § 552(a)(2), which is beyond the scope of this Court's section 502 jurisdiction."); *id.* at 53a ("Although section 552(a)(1) refers to interpretive rules, the February 2016 revisions appear in an administrative staff manual that is specifically referenced in subsection 552(a)(2), which is omitted from this Court's jurisdictional statute in 38 U.S.C. § 502.").

[8] In addition to its mutual-exclusivity argument, VA's brief also argued—confusingly and incorrectly—that Section 502's cross-reference to Section 552(a)(1) only encompasses "substantive rules." Pet. App. 57a ("Because the M21-1 revisions are not substantive rules under section 553, the Court must conclude that they are nevertheless 'substantive rules' under section 552(a)(1) to exercise its section 502 jurisdiction.").

The Federal Circuit's decision in *DAV* embraced VA's mutual-exclusivity argument and dismissed the petition for lack of jurisdiction. 859 F.3d at 1075-78. The court framed the jurisdictional question as turning on whether the manual provision at issue "more readily" fell under Section 552(a)(1) *or* (a)(2), and it declared that "Congress expressly exempted from § 502 challenges to agency actions which fall under § 552(a)(2)." *Id.* at 1075, 1077-78. The court then held that interpretive rules in the Manual "fall within § 552(a)(2)—not § 552(a)(1)," because VA had chosen to promulgate them "within an administrative staff manual" instead of publishing them in the Federal Register. *Id.* at 1077-78.

3. In November 2016, a divided panel in this case applied *DAV* and held that it lacked jurisdiction to adjudicate Gray's petition. Pet. App. 1a-28a.

The panel majority began its discussion by asserting that "[t]he parties agree that § 553 is not at issue in this proceeding." Pet. App. 8a. The majority cited nothing in the record to support this conclusion, and it overlooked the parties' substantial briefing on Section 553. *See supra* at 11-12; Pet App. 54a-57a.

Turning to Section 552, the majority started by reiterating *DAV*'s mutual-exclusivity holding and rejecting the notion that an agency action can fall within both Section 552(a)(1) *and* (a)(2). Pet. App. 8a-9a (stating that jurisdiction turned on "whether the manual provisions challenged in this action fall under § 552(a)(1), giving us authority to consider them in the context of this action, *or* § 552(a)(2), prohibiting our review" (emphasis added)). The panel agreed that the Waterways Provision is properly classified as an "interpretive rule," and it acknowledged the persuasive "force" of Gray's argument "that a manual

provision can fall under § 552(a)(1) where, regardless of its designation, it constitutes an interpretive rule of general applicability that adversely affects the rights of an entire class of Vietnam veterans." *Id.* at 9a-10a, 13a-14a.

Nevertheless, the majority reiterated *DAV*'s categorical holding that the Federal Circuit "*do[es] not* have jurisdiction to review actions that fall under § 552(a)(2)." Pet. App. 8a. This is true, the court said, "regardless of the extent to which the manual provision might be considered interpretive or a statement of policy" under § 552(a)(1). *Id.* at 11a.

Judge Dyk dissented in part. He agreed that *DAV* controlled, but said that *DAV* "was wrongly decided." Pet. App. 15a. Judge Dyk emphasized that *DAV* rests on "the notion that § 552(a)(1) and § 552(a)(2) are mutually exclusive"—a notion for which "[t]here is no support" and that contradicts this Court's decision in *Morton v. Ruiz*, 415 U.S. 199 (1974), and decisions of the Federal Circuit and other courts of appeals. Pet. App. 25a-26a.

Judge Dyk also highlighted the significant harm that the Federal Circuit's rule would inflict on veterans. He noted that *DAV*'s rule "imposes a substantial and unnecessary burden on individual veterans, requiring that they undergo protracted agency adjudication in order to obtain preenforcement judicial review of a purely legal question that is already ripe for our review." *Id.* at 15a-16a. And he also emphasized that "[r]eview of the Manual revisions is essential given the significant 'hardship that would be incurred if [the Federal Circuit] were to forego judicial review.'" *Id.* at 25a (internal alterations and citation omitted).

4. Gray petitioned for rehearing en banc, again arguing that because the Waterways Provision is "refer[red]" to by both Sections 552(a)(1) and 553, the Federal Circuit had jurisdiction to review it under Section 502. He explained in detail why VA's argument that Sections 552(a)(1) and (a)(2) are mutually exclusive is wrong, and why *DAV* and the panel in this case erred in embracing it. He also explained that the panel had no basis for asserting that "§ 553 is not at issue in this proceeding." Pet. App. 8a.

VA's response to the rehearing petition was remarkable. Having successfully persuaded the court in both *DAV* and this case to adopt its mutual-exclusivity interpretation of Section 552, VA suddenly refused to defend that interpretation. But VA nonetheless urged the court to deny rehearing. It argued that *DAV* and the panel in this case had not actually adopted the mutual-exclusivity interpretation that VA had advanced in its merits brief. Gov't C.A. Reh'g Opp. 1, 5-14. Instead, VA asserted that *DAV* and the panel had "[i]mplicit[ly]" concluded that the M21-1 Manual "provisions were not interpretations of 'general applicability' subject to section 552(a)(1)(D)" for some other, *completely unstated* reason. *Id.* at 6.[9]

_____

[9] Despite abandoning the mutual-exclusivity theory for purposes of opposing Gray's rehearing petition, the Government subsequently reasserted that theory in an effort to deny a different veteran judicial review in a later case. *See* Gov't Br. 24-26, *Krause v. Sec'y of Veterans Affairs*, No. 17-1303 (Fed. Cir. Mar. 19, 2018), 2018 WL 1905196; Pet. 28 (discussing Government's *Krause* brief). The Government's opposition to certiorari in this case later expressly disavowed the mutual-

With respect to Section 553, VA claimed that Gray had "not presented [it] as a basis for the Court's jurisdiction," *id.* at 14—an assertion contradicted both by Gray's express invocation of Section 553 in his brief's "Statement of Subject Matter Jurisdiction," and by VA's own brief, which had spent several pages explaining why Section 553 did not provide a jurisdictional hook. *See* Pet. App. 54a-57a. VA did not respond to the substance of Gray's argument that Section 553 "refers" to interpretive rules.

5. The Federal Circuit denied rehearing en banc, over dissents from Judges Dyk, Newman, and Wallach. Pet. App. 29a-37a. The dissenting judges explained that because the M21-1 Manual contains "'all of [VA's] policies and procedures for adjudicating claims for VA benefits,'" the reviewability of those provisions under § 502 is an issue "of exceptional importance" that will have a "widespread impact on the efficient adjudication of veterans' claims." *Id.* at 37a (Dyk, J., dissenting from the denial of rehearing en banc) (citation omitted).

## SUMMARY OF ARGUMENT

"[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992). Led astray by the mutual-exclusivity argument the Government has now abandoned, the Federal Circuit failed to give "this first canon" of statutory interpretation due weight. *Id.* at 254. A straightforward reading of Section 502's cross-references to Sections 552(a)(1) and 553 shows that each independently authorizes

---

exclusivity theory, once and for all (we think). BIO 22-23; *see infra* at 37-38.

the Federal Circuit's review of the Waterways Provision.

I. Section 502 gives the Federal Circuit jurisdiction to review any VA action referred to in Section 552(a)(1), which includes "interpretations of general applicability." 5 U.S.C. § 552(a)(1)(D). As a matter of ordinary meaning, an interpretation of a legal provision is "of general applicability" if it applies broadly to an entire class of people affected by the provision, and is not limited to specific individuals or circumstances. That understanding of the term is consistent with Section 552(a)(1)'s history and purpose, and it tracks the settled administrative-law definition of "general applicability" repeatedly applied by Congress and federal agencies since at least the 1930s.

Under this straightforward reading of the statutory text, the M21-1 Manual's Waterways Provision is clearly an interpretation of general applicability: That interpretation broadly sets forth VA's considered view of the Agent Orange Act and its implementing regulation. The interpretation governs all veterans who claim to have served "in the Republic of Vietnam" and to all waters in and around Vietnam, and it is not limited to specific individuals. The Federal Circuit thus has jurisdiction to adjudicate Gray's challenge.

Below, the Government successfully persuaded the Federal Circuit that because the M21-1 Manual is an "administrative staff manual" referenced in Section 552(a)(2), the Waterways Provision cannot be an interpretation of general applicability under Section 552(a)(1). But the key premise of this argument—the notion that Sections 552(a)(1) and (a)(2) are mutually exclusive—is flat wrong. Even the

Government now admits it. This Court should easily reject the rationale of the decision below.

The Government's new theory is that the Waterways Provision is not "of general applicability" because it is not binding on the Board. That argument misfires. Whether or not an interpretive rule is generally applicable turns on who or what the substance of that interpretation governs, not on the extent to which that interpretation binds particular agency officials. Indeed, *no* interpretive rule is legally binding on the agency as a whole. And to the extent that *practical* considerations are what matter, the M21-1 Manual does essentially bind the Board. The fact that the Board must consider it in every case, and frequently defers to it, only further confirms that the interpretations it contains are generally applicable.

II. Section 502 also gives the Federal Circuit jurisdiction to review any VA action to which 5 U.S.C. § 553 "refers." Section 553 unambiguously—and repeatedly—refers to interpretive rules. It specifies that interpretive rules need not go through notice-and-comment or be published 30 days before their effective date. *Id.* § 553(b)(A), (d)(2). The Government has itself described Section 553 as "expressly" and "categorically" excluding "interpretive rules" from the APA's notice-and-comment requirements. Section 502's cross-reference to Section 553 thus provides an alternative and independent basis for the Federal Circuit's jurisdiction in this case.

III. Although the ordinary meaning of the text of Sections 502, 552(a)(1), and 553 suffices to resolve this case, policy considerations strongly reinforce that meaning. VA has an unfortunate history of adopting legally dubious rules and policies. Giving Section 502

its full breadth serves as a vital check on the agency. It is critical that veterans be able to bring preenforcement challenges to unlawful rules and policies without having to endure years of slow-motion adjudication before the agency and Veterans Court. Gray's own Sisyphean effort to obtain benefits, which is now entering its second decade, amply illustrates the importance of giving Section 502 its full scope. For all of these reasons, the Federal Circuit's restrictive interpretation cannot stand.

## ARGUMENT

## I. SECTION 502'S CROSS-REFERENCE TO SECTION 552(a)(1) AUTHORIZES REVIEW OF THE WATERWAYS PROVISION

### A. The Waterways Provision Is An Interpretation "Of General Applicability"

Section 502 gives the Federal Circuit jurisdiction to review any VA action to which 5 U.S.C. § 552(a)(1) "refers." Among other things, Section 552(a)(1) refers to "interpretations of general applicability formulated and adopted by the agency." 5 U.S.C. § 552(a)(1)(D). The Waterways Provision readily fits within this statutory language. The Government has never disputed the Federal Circuit's conclusion that this provision sets forth "an interpretation adopted by the agency." Pet. App. 11a. The only question, then, is whether the interpretation is "of general applicability." It is.

#### 1. The Ordinary Meaning Of "General Applicability" Is Dispositive

a. Section 552(a)(1)'s key phrase—"interpretations of general applicability"—is not defined elsewhere in FOIA. "When a term goes

undefined in a statute, we give the term its ordinary meaning." *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 566 (2012). This Court has repeatedly embraced this ordinary-meaning approach to interpreting provisions of FOIA. *See, e.g.*, *Milner v. Dep't of Navy*, 562 U.S. 562, 569-73 (2011); *United States v. Weber Aircraft Corp.*, 465 U.S. 792, 798-804 (1984).

An "interpretation" is simply an explanation of the meaning of something. *Webster's Third New International Dictionary* 1182 (1961) (*Webster's Third*). In context, Section 552(a)(1)'s reference to "interpretations" plainly refers to interpretations of *legal provisions*, such as statutes or regulations.

The ordinary meaning of "general" is "[n]ot specifically limited or determined in application; relating or applicable to a whole class of objects, cases, or occasions." 6 *Oxford English Dictionary* 430 (2d ed. 1989); *see also id.* (of a rule or law: "[a]pplicable to a variety of cases"); *Black's Law Dictionary* 614 (5th ed. 1979) ("Pertaining to . . . the genus or class, as distinguished from that which characterizes the species or individual").

Finally, "applicable" means "capable of being applied" or "having relevance." *Webster's Third* 105; *see also New Oxford American Dictionary* 76 (3d ed. 2010) (*New Oxford*) ("relevant or appropriate").

Accordingly, an "interpretation[] of general applicability" is an interpretation of a legal provision that governs an entire category or class of people to which that provision is relevant, and not just specific individuals or particular fact patterns. Or as the Ninth Circuit has put it, the "rather obvious definition" of "interpretation of 'general' applicability"

in Section 552(a)(1)(D) is an interpretation "neither directed at specified persons nor limited to particular situations." *Nguyen v. United States*, 824 F.2d 697, 700 (9th Cir. 1987).

b. Giving "interpretations of general applicability" its ordinary meaning faithfully serves Congress's goal of "the guidance of the public." 5 U.S.C. § 552(a)(1). By requiring formal publication of interpretations that will apply to entire classes of parties, Section 552(a)(1) ensures that the public has notice of how the agency understands—and will apply—potentially ambiguous statutory and regulatory provisions. It thereby "enable[s] the public 'readily to gain access to the information necessary to deal effectively and upon equal footing with the Federal agencies.'" *Attorney General's Memorandum on the Public Information Section of the Administrative Procedure Act* 4 (June 1967) (*Attorney General's FOIA Memorandum*) (quoting S. Rep. No. 88-1219, at 3 (1964)).

At the same time, Section 552(a)(1)(D) does not require publication of the countless party- and fact-specific interpretations that agencies adopt every day—and the publication of which would bloat the Federal Register to the point of bursting. Section 552(a)(1) excludes, for example, the numerous opinion letters issued by the Department of Labor. Although such letters often contain agency "interpretation[s]," they are in the form of "opinions as to the application of the law to particular facts presented by specific inquiries." 29 C.F.R. § 790.17(d). Such case-specific interpretations are quintessentially of particular applicability. *See, e.g.*, *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 168 (2012) (describing

and distinguishing opinion letters based on their specific facts).

Likewise excluded are Internal Revenue Service (IRS) letter rulings and technical advice memoranda, which contain interpretations based on specific sets of facts. *See* 26 C.F.R. § 301.6110-2(d), (f). As the IRS has conceded, these guidance documents contain interpretations adopted by the agency and therefore fit within Section 552(a)(2)(B). *Tax Analysts & Advocates v. IRS*, 505 F.2d 350, 352-53 (D.C. Cir. 1974). But because they are limited to specific facts and individuals, they are not "of general applicability" and so are outside the scope of Section 552(a)(1)(D). *See* 142 Cong. Rec. 8201 (1996) (describing "IRS private letter rulings" as "classic examples of rules of particular applicability").

Countless other examples of case-specific agency interpretations also exist. *See, e.g.*, 10 C.F.R. § 205.85 (authorizing case-specific "interpretation[s]" by Department of Energy); 17 C.F.R. § 202.2 (Securities and Exchange Commission); 18 C.F.R. § 385.1901(b)(2) (Federal Energy Regulatory Commission). The ordinary meaning of "general applicability" appropriately excludes these myriad fact- and party-specific interpretations from Section 552(a)(1)(D)'s publication requirement.

c. Applying Section 552(a)(1)(D)'s ordinary meaning, the Waterways Provision easily qualifies as an interpretation of general applicability. As the Government has conceded, that provision is undeniably "interpretive": It sets forth VA's definitive understanding of both the Agent Orange Act and its implementing regulations by providing general definitions of "inland waterways" and "offshore waters," thereby giving meaning to the key

statutory phrase "in the Republic of Vietnam." JA60-66; *see also* Pet. App. 11a, 14a; *id.* at 51a-57a (VA's Federal Circuit brief repeatedly describing Waterways Provision as "interpretive").

Moreover, the interpretation set forth in the Waterways Provision is also of "general applicability": It is not limited to specific individuals, but rather applies equally to *all* veterans claiming to have served "in the Republic of Vietnam." Nor is the interpretation limited to a specific fact pattern; its definitions equally govern *all* service by U.S. military personnel in waters in and around Vietnam.

Because the Waterways Provision is an interpretation of general applicability, it is subject to judicial review in the Federal Circuit under Section 502. The Federal Circuit's decision otherwise should be reversed.

### 2. Section 552(a)(1)(D)'s History Reinforces The Ordinary Meaning

The ordinary meaning of "general applicability" is sufficient to resolve this case. But any doubt about that meaning is easily dispelled by the historical context in which Congress enacted FOIA in 1966. When Congress employed the "general applicability" formulation in Section 552(a)(1)(D), it did not write on a clean slate: That phrase had already repeatedly been used, in multiple statutes and regulations, to cover any interpretation not limited to named individuals or particular facts. Congress embraced that settled understanding of "general applicability" in Section 552(a)(1)(D).

a. The relevant history begins with Congress's 1935 enactment of the Federal Register Act (FRA), which created the Federal Register. The FRA

required the publication there of "such documents or classes of documents as the President shall determine from time to time have *general applicability* and legal effect." Pub. L. No. 74-220, § 5(a)(2), 49 Stat. 500, 501 (1935) (emphasis added). In 1937, Congress amended the FRA to require the regular codification of all agency documents "hav[ing] *general applicability* and legal effect" in what would become the Code of Federal Regulations. Pub. L. No. 75-158, § 11(a), 50 Stat. 304, 304 (1937) (emphasis added).

That same year, the Administrative Committee on the Federal Register issued regulations implementing the FRA's new codification requirement. Those regulations explained that agency documents "of general applicability" were those "relevant or applicable to the general public, the members of a class, or the persons of a locality, *as distinguished from named individuals or organizations*." 2 Fed. Reg. 2450, 2451-52 (Nov. 12, 1937) (emphasis added). The Committee later issued additional regulations making clear that the exact same definition of "general applicability" also governed the FRA's publication requirement. *See* 11 Fed. Reg. 9833, 9836 (Sept. 7, 1946); 24 Fed. Reg. 2343, 2346, 2354 (Mar. 26, 1959); *see also* 1 C.F.R. § 40.9 (1966).

Just like the FRA and its implementing regulations, the original 1946 APA also made clear that an agency statement "of general applicability" is one that addresses a class rather than specific named persons. Section 2(c) of the APA defined the term "rule" as "any agency statement of *general or particular* applicability" designed to implement, interpret, or prescribe law or policy. Pub. L. No. 79-404, § 2(c), 60 Stat. 237, 237 (1946) (emphasis added). Congress made clear that it included the phrase "or

particular" in that definition "in order to . . . assure coverage of rule making addressed to named persons." H.R. Rep. No. 79-1980 (Comm. Amendment), *reprinted in Legislative History of the Administrative Procedure Act* 283 & n.1 (1946); *see also Attorney General's Manual on the Administrative Procedure Act* 22-23 (1947) (*APA Manual*). In doing so, it thereby implicitly recognized that rules of "general applicability" are those *not* directed to "named persons." The APA's distinction between rules of general and particular applicability thus tracked the distinction as understood under the FRA.

When Congress enacted Section 552(a)(1)(D) in 1966, it acted against the statutory and regulatory backdrop established by the FRA and APA. For nearly 30 years, the settled understanding was that agency statements "of general applicability" were those directed generally to classes or categories of individuals or conduct—and not addressed to named individuals or specific fact patterns. Congress endorsed that settled understanding when it incorporated the same language in Section 552(a)(1)(D)'s publication requirement for interpretive rules. *See, e.g.*, *Sekhar v. United States*, 570 U.S. 729, 733 (2013) ("[I]f a word is obviously transplanted from another legal source, whether the common law or other legislation, it brings the old soil with it." (quoting Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum. L. Rev. 527, 537 (1947))).

b. The textual evolution of the publication requirement from the APA to FOIA further confirms that an "interpretation of general applicability" encompasses any interpretation not directed to specific individuals or targeted to a particular set of

facts. Indeed, FOIA's legislative history could hardly be clearer on that point.

The roots of FOIA's publication requirement trace back to Section 3 of the original APA, which Congress enacted in 1946. Section 3(a)(3) required agencies to publish in the Federal Register, *inter alia*, "substantive rules adopted as authorized by law and statements of general policy or *interpretations* formulated and adopted by the agency for the guidance of the public, *but not rules addressed to and served upon named persons in accordance with law*." 60 Stat. at 238 (emphasis added). That provision thus required publication of interpretations that would apply *generally*, but not those governing only specific individuals.

The Attorney General's 1947 *APA Manual* confirms that understanding. It explained that in light of the exemption for "rules addressed to and served upon named persons," Section 3(a)(3) did not require publication of "[a]n advisory interpretation relating to a specific set of facts." *APA Manual* 22-23. "For example," the Manual said, an agency's response "to an inquiry from a member of the public as to the applicability of a statute to a specific set of facts need not be published." *Id.* at 23. By contrast, general interpretations of a provision that would apply to an entire class of people potentially affected by that provision *would* have to be published.

When Congress enacted FOIA in 1966, it amended the APA's publication requirement and introduced the "of general applicability" language now at issue in this case. As relevant here, FOIA modified Section 3(a)(3) to require publication of:

> substantive rules *of general applicability* adopted as authorized by law, and statements of general policy or interpretations *of general applicability* formulated and adopted by the agency ~~for the guidance of the public, but not rules addressed to and served upon named persons in accordance with law~~.

Pub. L. No. 89-487, § 3, 80 Stat. 250, 250 (1966) (FOIA additions in italics and deletions in strikethrough). That language was subsequently codified and appears in the current version of Section 552(a)(1)(D).

Notably, FOIA's legislative history makes clear that Congress's addition of the phrase "of general applicability"—and its deletion of the exception for "rules addressed to and served upon named persons in accordance with law"—made no substantive change in the law. Indeed, the 1965 Senate Judiciary Committee report described FOIA's amendment as a "technical change" and explained that "[Section 3(a)'s] phrase '* * * but not rules addressed to and served upon named persons in accordance with law. * * *' was stricken" as unnecessary, "because section 3(a) as amended only requires the publication of rules of general applicability." S. Rep. No. 89-813, at 6 (1965); *see also* S. Rep. No. 88-1219, at 4 (1964) ("It is believed that only rules, statements of policy, and interpretations of general applicability should be published in the Federal Register; those of particular applicability are legion in number and have no place in the Federal Register and are presently excepted but by more cumbersome language."); *Attorney General's FOIA Memorandum* 10 (noting that FOIA's

change to the APA publication requirement was "formal only," and emphasizing that the "of general applicability" limitation "exclude[s] rules addressed to and served upon named persons").

FOIA's history thus shows that Congress viewed the "general applicability" language as expressing the same idea as the original APA requirement, but in a more straightforward way. Just like the APA language that it replaced, Section 552(a)(1)'s "of general applicability" formulation served to exclude interpretations addressed to "named persons" or "relating to a specific set of facts." *APA Manual* 22-23.

### 3. Congress And Federal Agencies Have Subsequently Endorsed The Ordinary Meaning

In the five-plus decades since FOIA became law, the settled administrative-law understanding of "general applicability" discussed above has endured. Congress and the Executive Branch have repeatedly recognized that this formulation encompasses interpretations applicable to a class of people, but not to named individuals or specific facts. A handful of important examples prove the point.

*First*, and most notably, the opening provision of the Code of Federal Regulations—1 C.F.R. § 1.1—reaffirms the longstanding FRA definition and states that the phrase "[d]ocument having general applicability and legal effect" means

> any document [with legal effect] relevant or applicable to the general public, members of a class, or persons in a locality, as distinguished from named individuals or organizations.

Although originally adopted for purposes of the FRA's publication and codification requirements, that definition is equally well-suited to defining the identical "general applicability" language in Section 552(a)(1)(D).

The Court need not take petitioner's word for it. For more than 40 years, the United States Navy has expressly applied 1 C.F.R. § 1.1's definition of "general applicability" when determining what interpretive statements must be published in the Federal Register under Section 552(a). 40 Fed. Reg. 36,325, 36,325 (Aug. 20, 1975) (codified at 32 C.F.R. § 701.64(a)(4) (2018)). The Navy's approach is straightforward and correct: There is no plausible reason "general applicability" would mean anything different under FOIA than what it means in the FRA.[10]

*Second*, Congress has also reaffirmed the longstanding view of what counts as a rule of "general applicability" in subsequent legislation, The Congressional Review Act of 1996 (CRA) requires agencies to submit any "rule" to Congress for consideration (and possible veto) before it takes effect. 5 U.S.C. § 801. Although the CRA generally adopts the APA's broad definition of "rule" (which includes rules of both "general and particular applicability*," id.* § 551(4)), the CRA expressly exempts "rule[s] of

---

[10] Two weeks before this brief was filed, the Navy repealed 32 C.F.R. Part 701, Subpart E on the ground that it concerned only internal Navy procedures. 83 Fed. Reg. 62,249, 62,249 (Dec. 3, 2018). The Navy did not suggest that it has abandoned its longstanding view that 1 C.F.R. § 1.1's definition of "general applicability" applies to Section 552(a)(1)(D)'s publication requirement.

particular applicability" from its submission-to-Congress requirement, *id.* § 804(3)(A).

The CRA's sponsors explained that the carve-out for rules of particular applicability has the effect of exempting "letter rulings or other opinion letters to individuals who request a specific ruling on the facts of their situation." 142 Cong. Rec. at 8201. "IRS private letter rulings and Customs Service letter rulings," they noted, "are classic examples of rules of particular applicability." *Id.* These and other rules directed "to a particular person or particular entities" fall outside the CRA's ambit. *Id.*

The Government Accountability Office (GAO), which plays an important role in implementing the CRA, has adhered to the settled understanding of the distinction between rules of general and particular applicability. Importantly, GAO has recognized that an interpretation of general applicability need not "apply to the population as a whole. Rather, all that is required is a finding that it has general applicability within its intended range, regardless of the magnitude of that range." GAO, *Opinion on Whether Trinity River Record of Decision is a Rule*, B-287557, at 9 (May 14, 2001), https://www.gao.gov/assets/210/201768.pdf. For example, GAO noted, a workplace safety regulation limiting exposure to a given chemical compound is a rule of general applicability "even though it applies to a very small percentage of the working public." *Id.* It suffices that the rule "is intended to protect all workers in the covered range." *Id.* Such a rule is relevant to "members of a class, or persons in a locality, as distinguished from named individuals or organizations." 1 C.F.R. § 1.1.

*Third*, the Executive Branch has also recently reaffirmed the settled understanding of what counts as a "generally applicable" rule. Since 2007, the President has required federal agencies to follow the Office of Management and Budget (OMB) "Final Bulletin for Agency Good Guidance Practices," which establishes "policies and procedures" concerning "significant guidance documents." 72 Fed. Reg. 3432, 3432 (Jan. 25, 2007). Because OMB limited the definition of "significant guidance documents" to those having "general applicability," OMB has explained that the Final Bulletin's policies and procedures do not apply to "correspondence such as opinion letters or letters of interpretation prepared for or in response to an inquiry from an individual person or entity." *Id.* at 3435. Accordingly, OMB explained, the Bulletin's requirements "should not inhibit the beneficial practice of agencies providing informal guidance to help specific parties." *Id.*

As the discussion above makes clear, Congress and federal agencies have spent decades developing and enforcing a consistent understanding of what "general applicability" means in the context of administrative law. Just as its plain text indicates, an "interpretation of general applicability" is an interpretation that is not directed toward a specific individual or set of facts but that instead applies to the public at large or members of a class. That settled understanding should strongly inform this Court's interpretation of the identical phrase in Section 552(a)(1)(D).

### 4. At A Minimum, Section 552(a)(1)(D) Encompasses Interpretations That Change VA Policy And Have A Significant Impact On Veterans

For the reasons discussed above, the Court should give the phrase "interpretations of general applicability" in Section 552(a)(1)(D) its ordinary meaning, which readily encompasses the Waterways Provision. That straightforward statutory analysis is enough to resolve this case. *See, e.g.*, *Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 137 S. Ct. 1002, 1010 (2017) ("We thus begin and end our inquiry with the [statutory] text, giving each word its 'ordinary, contemporary, common meaning.'" (citation omitted)).

Several courts of appeals, however, have taken a different approach to determining whether an interpretation is "of general applicability." These courts have adopted a two-prong test under which an interpretation is generally applicable unless it both (1) expresses "only a clarification or explanation of existing laws or regulations," and (2) results in "no significant impact upon any segment of the public." *Anderson v. Butz,* 550 F.2d 459, 463 (9th Cir. 1977) (quoting *Lewis v. Weinberger*, 415 F. Supp. 652, 659 (D.N.M. 1976)); *accord Stuart-James Co. v. SEC*, 857 F.2d 796, 801 (D.C. Cir. 1988); *D & W Food Ctrs., Inc. v. Block*, 786 F.2d 751, 757 (6th Cir. 1986); *Kahn v. United States*, 753 F.2d 1208, 1222 n.8 (3d Cir. 1985); *see also* BIO 19.

This test has been criticized as lacking a firm grounding in the statutory text (which says nothing about "impact") and too vague to be applied consistently (what makes an impact "significant"?). *See, e.g.*, Victor H. Polk, Jr., *Publication Under the*

*Freedom of Information Act of Statements of General Policy and Interpretations of General Applicability*, 47 U. Chi. L. Rev. 351, 356-64 (1980). Those critiques are persuasive, and we see no good reason for the Court to depart from the ordinary meaning of the statutory text. *See Milner*, 562 U.S. at 573 (rejecting judicially developed test because "[i]t is disconnected from [FOIA] Exemption 2's text"). But even under this two-part test, the Waterways Provision undoubtedly qualifies as an interpretation of general applicability.

*First*, the provision adopts an interpretation of "inland waterways" (and hence of "in the Republic of Vietnam") that is indisputably new and different from VA's prior interpretation. Below, VA itself described the Waterways Provision as "provid[ing] a new policy for the determination of 'inland waterways.'" Resp. C.A. Br. 2. The Federal Circuit likewise recognized that the revision was "a change in policy." Pet. App. 7a. And the Manual itself makes explicit that VA was changing its view of the legal status of certain waters. JA64 (noting that VA "will no longer" treat certain bays and harbors as inland waterways).

*Second*, by any rational measure, VA's new interpretation has a significant impact on a segment of the public. Below, VA *itself* "concede[d] that the impact of its manual changes is both real and far reaching." Pet. App. 10a. Rightly so. Benefits for tens of thousands of veterans are on the line. The new interpretation expressly excludes waters that VA had previously considered "inland waterways." And this new interpretation is binding on the frontline adjudicators who conclusively resolve the 96% of cases that are not appealed to the Board. *Id.* at 24a-25a (Dyk, J., dissenting).

Accordingly, even if this Court were to adopt the atextual view of "interpretation of general applicability" embraced by the decisions cited above, VA's interpretation here still qualifies and is subject to review under Section 502.

## B. The Federal Circuit's View That Sections 552(a)(1) And (a)(2) Are Mutually Exclusive Is Mistaken

In its brief below, the Government did not deny that the Waterways Provision fits within the ordinary meaning of Section 552(a)(1)(D)'s term "interpretations of general applicability." Instead, the Government's *only* argument was that because this interpretation appeared in the M21-1 Manual, it was referred to "more specifically" by Section 552(a)(2)(C)—which requires agencies to make "administrative staff manuals" available for public inspection, without also requiring publication in the Federal Register. Pet. App. 58a. That supposedly "more specific[]" reference mattered, the Government claimed, because "section 502 jurisdiction only extends to actions to which [Section 552](a)(1) refers, and does not extend to actions referred to in (a)(2)." *Id.* In other words, the Government argued that Sections 552(a)(1) and (a)(2) are mutually exclusive: Anything clearly *in*cluded in (a)(2) is necessarily *ex*cluded from (a)(1). *See id.* at 58a-59a; *accord DAV* Gov't Br. 29-33; *see also supra* at 12-13.

In both *DAV* and the decision below, the Federal Circuit bought into the Government's mutual-exclusivity theory of Section 552. *See DAV*, 859 F.3d at 1075, 1077-78; Pet. App. 8a; *id.* at 25a (Dyk, J., dissenting) (noting that *DAV* rested on "the notion that § 552(a)(1) and § 552(a)(2) are mutually

exclusive"). But that theory is plainly wrong. Nothing in the text, structure, or purpose of Section 552(a) indicates that an agency action must fall into *either* (a)(1) *or* (a)(2), but not both.

As a textual matter, it is obvious that certain types of agency statements fit within *both* (a)(1) and (a)(2). For example, (a)(1) expressly covers "descriptions of [an agency's] central and field organization" and "rules of procedure," but such information is also regularly addressed in agency manuals and staff instructions encompassed by (a)(2). *See* Pet. App. 25a-26a (Dyk, J., dissenting); *Herron v. Heckler*, 576 F. Supp. 218, 232-33 (N.D. Cal. 1983) (holding that provisions of agency manual "clearly fall within *both*" Section 552(a)(1)(D) and (a)(2)(C)).

The possibility of overlap between (a)(1) and (a)(2) is also perfectly consistent with Section 552's structure and purpose. Agency pronouncements can be governed by the requirements of both (a)(1) and (a)(2) without conflict or absurdity. Suppose, for instance, that an agency writes a staff manual that contains, among other things, statements of general policy. The manual as a whole must be "ma[d]e available for public inspection" under (a)(2); the statements of general policy must also be "publish[ed] in the Federal Register" under (a)(1). 5 U.S.C. § 552(a)(1), (2).

By contrast, the Federal Circuit's mutual-exclusivity theory undermines the statute's structure and purpose. Section 552(a)(1) is designed to force agencies to formally publish, in the Federal Register, rules and policies of general applicability. If, as *DAV* presumes, anything described in Section 552(a)(2) is necessarily *not* subject to (a)(1), then agencies can evade the publication requirement simply by

embedding materials that would otherwise fall under (a)(1) in staff manuals and staff directives. That obviously cannot be correct.[11]

On top of everything else, the Federal Circuit's mutual-exclusivity theory of Section 552(a) is also inconsistent with this Court's decision in *Morton v. Ruiz*, 415 U.S. 199 (1974). *See* Pet. App. 26a (Dyk, J., dissenting). There, the Court addressed whether a provision of a Bureau of Indian Affairs manual was subject to Section 552(a)(1)'s publication requirement. *Ruiz*, 415 U.S. at 231-33. Although the agency described the manual as "solely an internal-operations brochure," the Court found that it actually contained "important" agency policies concerning benefits eligibility that fell within Section 552(a)(1) and therefore should have been published in the Federal Register. *Id.* at 232-35. *Ruiz* thus confirms what the statutory text makes plain: Section 552(a)(2)'s reference to administrative manuals does *not* categorically exempt such manuals from Section 552(a)(1).

Notably, even the Government has now admitted in its Brief in Opposition that Sections 552(a)(1) and

---

[11] Below, VA embraced the notion that it can unilaterally thwart judicial review simply by embedding important rules in its M21-1 Manual. *See Gray* Oral Arg. 32:39-32:55 (arguing that "publish[ing] [the challenged provision] in the administrative staff manual is a choice the agency is entitled to make," that VA's choice "has certain effects," and that one of those effects "is that it divests [the Federal Circuit] from direct review under [Section] 502"); *id.* at 36:44-36:57 ("The [Section 502] question is where do they publish it. If they choose to publish it in the Federal Register, then it is reviewable, because it would be under [Section] 552(a)(1), so it would be within this court's [Section] 502 jurisdiction. But where they choose to put it in an administrative staff manual, it is not.").

(a)(2) are not mutually exclusive. *See* BIO 22-23 (conceding that "certain documents covered by Section 552(a)(1) . . . can also fall within Section 552(a)(2)"). The Government has thus abandoned the *only* argument it made before the Federal Circuit to support the idea that the Waterways Provision is not covered by Section 552(a)(1)(D). This Court should accept the Government's concession and repudiate the Federal Circuit's analysis in *DAV* and the decision below.

### C. The Government's New Focus On Whether The Manual "Binds" The Board Is Mistaken

Despite abandoning the mutual-exclusivity theory it successfully pressed in the Federal Circuit, the Government nonetheless still insists that the Waterways Provision falls outside Section 552(a)(1)(D). *See* BIO 19-21. But the only argument the Government now offers to explain why the provision's interpretation is *not* "of general applicability" is that "the M21-1 Manual's provisions do not bind the Board in rendering its ultimate decision in any individual case." *Id.* at 20.

The Government's focus on whether the Manual "binds" the Board is misplaced many times over. First, it has zero foundation in Section 552's text. Second, as a theoretical matter, the idea that only "binding" interpretations are generally applicable makes no sense. *No* interpretive rules are formally binding on the final agency decisionmaker, so this characteristic cannot determine whether or not an interpretation is generally applicable. And third, as a practical matter, since the Board must consider M21-1 Manual in every case, and since the Manual

currently receives *Auer* deference, its provisions are as close to binding as interpretations can be.

1. The Government provides no authority for its atextual proposition that whether an interpretation is "of general applicability" turns on whether it is binding on a particular agency decisionmaker. Nor does either the decision below or *DAV*.[12] And Gray is not aware of any such authority. Indeed, the Government's novel interpretation flies in the face of both the statutory text and more than 80 years of consistent legislative and regulatory usage of the phrase "general applicability." *See supra* at 20-32.

2. More fundamentally, the Government's argument is inconsistent with basic principles of administrative law. *No* interpretive rule—whether generally applicable or not—truly binds all final agency decisionmakers. *See, e.g.*, *Vietnam Veterans of Am. v. Sec'y of the Navy*, 843 F.2d 528, 537 (D.C. Cir. 1988) (rejecting "suggesti[on] that an interpretive rule or policy statement might bind [an] agency"); 1 Richard J. Pierce, *Administrative Law Treatise* § 6.6, at 474 (5th ed. 2010) ("Ordinarily, interpretative rules do not bind an agency.").

Among the chief defining characteristics of an interpretive rule are that it lacks "the force and effect of law" and that it can be adopted, amended, or repealed "freely," without notice-and-comment procedures. *Perez v. Mortgage Bankers Ass'n*, 135 S.

---

[12] *DAV* did cite authority for the proposition that because M21-1 Manual provisions are not conclusively binding on the Board, they are not *substantive* (*i.e.*, legislative) rules. *See* 859 F.3d at 1077. But whether or not a rule is *legislative* is a different inquiry from whether or not an interpretive rule is *generally applicable*.

Ct. 1199, 1204, 1207 (2015) (citation omitted); *see* 5 U.S.C. § 553(b)(A). Because an agency is thus free to revise its interpretive rules at any time, it is not bound by them in the same way that it is bound by its legislative rules. Instead, "the agency remains free in any particular case to diverge from whatever outcome [a] policy statement or interpretive rule might suggest." *Vietnam Veterans of Am.*, 843 F.2d at 537.

To be sure, interpretive rules *can* be made binding on lower-level agency employees, like those in VA's regional offices. As OMB explained in its 2007 Final Bulletin, "agencies can appropriately bind their employees to abide by agency policy"—as expressed in interpretive rules and statements of policy—"as a matter of their supervisory powers over such employees." 72 Fed. Reg. at 3437; *see Splane v. West*, 216 F.3d 1058, 1064 (Fed. Cir. 2000) ("[T]he interpretive rule . . . was certainly binding on agency officials insofar as any directive by an agency head must be followed by agency employees.").

But even where "[a]n interpretative rule binds an agency's employees . . . it does not bind the agency itself." *Warder v. Shalala*, 149 F.3d 73, 82 (1st Cir. 1998) (alteration in original) (citation omitted). Senior agency decisionmakers are always free to deviate from an interpretive rule and must consider arguments in favor of doing so. *See* 72 Fed. Reg. at 3436 (guidance documents must "not foreclose consideration by the agency of positions advanced by affected private parties"); Peter L. Strauss, *Publication Rules in the Rulemaking Spectrum: Assuring Proper Respect for an Essential Element*, 53 Admin. L. Rev. 803, 818 (2001) ("[An interpretive rule] can be freely altered at any point before it has been concretely applied—and, indeed, the agency

issuing it must be prepared to treat it as provisional, in the sense that it must permit arguments for its alteration to be made in any proceeding to apply it."); Ronald M. Levin, *Rulemaking and the Guidance Exception*, 70 Admin. L. Rev. 263, 346-51 (2018).

Because *no* interpretive rules are formally binding on final agency decisionmakers, that characteristic cannot serve to distinguish interpretive rules that are of general applicability from those that are not. *Contra* BIO 21. The Government's reliance on this characteristic—which instead distinguishes those rules that are interpretive from those that are *legislative*—is thus fundamentally misplaced. Whether an interpretation is generally applicable does not depend on whether it formally binds particular agency decisionmakers. Rather, as the statutory language indicates, it depends on whether the interpretation is limited to specific individuals or facts.

3. To the extent the Court looks beyond Section 552(a)(1)(D)'s text—and past the formal rules of administrative law—and considers the extent to which the M21-1 Manual is binding as a *practical* matter, that simply confirms the Waterways Provision's status as an interpretation of "general applicability." In the real world, interpretations in the Manual are virtually always followed by VA and its various components, including the Board.

To start, such interpretations are formally binding on VA's frontline Regional Office employees who initially determine a veteran's eligibility for benefits. Fewer than 5% of the benefits decisions by these frontline adjudicators are appealed to the Board. Pet. App. 24a-25a (Dyk, J., dissenting). That means that the M21-1 Manual's "provisions constitute the last

word for the vast majority of veterans." *Id.* at 25a. The Federal Circuit agrees that the Manual's provisions are binding on VA Regional Offices, *see id.* at 5a, 12a, and the Government has not disputed that point.

Those interpretations also often dictate the Board's analysis. The Veterans Court has made clear that the Board must consider any relevant M21-1 Manual provisions when adjudicating a benefits appeal. *Overton v. Wilkie*, 30 Vet. App. 257, 264 (2018). Those provisions will be inherently influential, but they will be even more important when they set forth a legal interpretation that the VA Secretary has *personally* approved and "did not reach . . . lightly." JA83.

Moreover, the Board has also repeatedly stated that it must give Manual provisions the equivalent of *Auer* deference—that is, that it must adhere to an interpretation of a VA regulation in the Manual unless that interpretation is "plainly erroneous or inconsistent with the regulation." *Auer v. Robbins*, 519 U.S. 452, 461 (1997) (citation omitted). In one recent decision, for instance, the Board stated that because it was "unable to conclude that the VA [M21-1] Adjudication Manual's interpretation of the regulations is plainly erroneous or inconsistent with the regulation," the Manual was "controlling." [Title Redacted], No. 12-11 139, 2017 WL 2905538, at *8 (Bd. Vet. App. May 12, 2017).[13]

---

[13] *See also, e.g.*, [Title Redacted], No. 10-02 945, 2018 WL 2679096, at *4 (Bd. Vet. App. Apr. 11, 2018) (looking "to the M21-1 for the Secretary's position on the meaning" of a term and noting that the "agency's interpretation of its own regulation in the M21 is controlling unless that interpretation is plainly

Such deference by the Board is only natural, given that courts sitting above the Board currently give the M21-1 Manual *Auer* deference. *See, e.g.*, *Smith v. Shinseki*, 647 F.3d 1380, 1385 (Fed. Cir. 2011); *Urban v. Shulkin*, 29 Vet. App. 82, 88-90 (2017). And as Justice Scalia explained, granting *Auer* deference to an interpretive rule makes it in practice "every bit as binding as a substantive rule." *Perez*, 135 S. Ct. at 1212 (concurring in part and concurring in the judgment).

In sum, the interpretation in the Waterways Provision (1) formally binds the frontline adjudicators who conclusively resolve the vast majority of benefits claims, and (2) must be considered by, and will likely receive deference from, the Board in any appeal. The important role that this interpretation will thus play in *every* relevant case only bolsters the conclusion that it is "of general applicability." The Government offers no good reasons to depart from the ordinary and long-settled meaning of that term.

## II. SECTION 502'S CROSS-REFERENCE TO SECTION 553 ALSO AUTHORIZES REVIEW

The Federal Circuit has jurisdiction for a second reason as well: Section 502 also makes reviewable any action to which 5 U.S.C. § 553 "refers." And Section 553 repeatedly refers to "interpretative" rules, without Section 552(a)(1)(D)'s qualifier that

---

erroneous or inconsistent with the regulation"); [Title Redacted], No. 10-08 246, 2016 WL 3650559, at *10 (Bd. Vet. App. May 11, 2016) (citing M21-1 Manual and observing that "[t]he Board defers to VA's reasonable interpretation of its own laws and regulations"); [Title Redacted], No. 10-34 322, 2013 WL 7222774, at *3 (Bd. Vet. App. Dec. 23, 2013) (treating M21-1 Manual as "controlling authority").

such rules be "of general applicability." The Government has conceded that the Waterways Provision qualifies as an "interpretive" rule. And although the Government has asserted that Gray did not invoke the cross-reference to Section 553 as a basis for jurisdiction, that is demonstrably incorrect.

## A. Section 553 Unambiguously "Refers" To Interpretive Rules

Section 502 makes reviewable any action "to which section 552(a)(1) *or 553* of title 5 (or both) *refers*." 38 U.S.C. § 502 (emphasis added). In this case and others, the Government has acted as if Section 502's cross-reference to Section 553 encompasses only legislative rules subject to notice-and-comment procedures. *See*, *e.g.*, Pet. App. 54a ("Section 553 refers to substantive rules that must comply with notice-and-comment procedures."); BIO 17 ("Section 553 governs notice-and-comment rulemaking . . . ."). That is incorrect. While Section 553 does indeed discuss legislative rules, it also plainly "refers" to interpretive rules.

1. To "refer to" something is simply to "mention or allude to" it. *New Oxford* 1466; *see also Webster's Third* 1907 (to "point" or "allude" to). In addition to legislative rules, Section 553 also twice directly mentions *interpretive* rules.

*First*, Section 553(b) sets forth a general requirement that agencies must publish a notice of any proposed rulemaking in the Federal Register. But Section 553(b) goes on to say that, "[e]xcept when notice or hearing is required by statute," this requirement "does not apply . . . to *interpretative rules*." 5 U.S.C. § 553(b)(A) (emphasis added).

*Second*, Section 553(d) states that rules must generally be published 30 days before their effective date. But it expressly exempts from this requirement, *inter alia*, "*interpretative rules* and statements of policy." 5 U.S.C. § 553(d)(2) (emphasis added).

Notably, the Government has itself repeatedly acknowledged that Section 553 directly refers to interpretive rules. In *Perez*, for example, the Solicitor General explained that Section 553 "*expressly* and *categorically* exempts the 'formulat[ion],' 'amend[ment],' and 'repeal[]' of *interpretive rules* from the [APA's] notice-and-comment rulemaking procedures." Gov't Reply Br. 1-2, *Perez v. Mortgage Bankers Ass'n*, 135 S. Ct. 1199 (2015) (Nos. 13-1041, 13-1052) (emphasis added) (alteration in original); *see also id.* at 4 (same point); *Perez* Gov't Br. 3, 31 (same). There is no world in which Section 553 could "expressly exempt" interpretive rules from those procedures without "refer[ring]" to those rules, which is all that Section 502 requires.

2. For the reasons noted, applying the ordinary meaning of Section 502's text, Section 553 clearly "refers" to interpretive rules. But any doubt on that score would be resolved by "the canon that provisions for benefits to members of the Armed Services are to be construed in the beneficiaries' favor." *Henderson v. Shinseki*, 562 U.S. 428, 441 (2011) (citation omitted) (applying canon to statutory deadline for appealing Board decisions); *see also, e.g.*, *Brown v. Gardner*, 513 U.S. 115, 118 (1994) ("[I]nterpretive doubt is to be resolved in the veteran's favor.").

Section 502 is undeniably a statute enacted for the benefit of veterans. It allows them to bring speedy preenforcement challenges to VA rules and policies that unlawfully prevent them from obtaining

benefits, without having to spend years slogging through the individual claims process. *See generally Henderson*, 562 U.S. at 440-41 (noting that VJRA's authorization of judicial review is "decidedly favorable to veterans"). Accordingly, under the pro-veteran canon of interpretation, any question about the reach of Section 502's key term ("refers") should be resolved in veterans' favor, by allowing them to challenge a broader range of VA actions—including interpretive rules.

3. There is no question that the Waterways Provision is an interpretive rule. Although the Government has disputed whether that provision is "of general applicability" (and therefore whether it must be published in the Federal Register), it has repeatedly acknowledged that the provision is an "interpretive statement[]," which is just another way of saying interpretive rule. *E.g.*, Pet. App. 51a-57a; *see* 5 U.S.C. § 551(4) (defining "rule" as a class of agency "statement[s]"). That is sufficient for purposes of Section 502. As an interpretive rule, the Waterways Provision is a VA action "refer[red]" to by Section 553. It is therefore subject to judicial review under Section 502.

## B. Gray Has Consistently Invoked Section 553 As A Basis For Jurisdiction

The Government has never identified any flaw in Gray's argument that Section 553 "refers" to interpretive rules such as the Waterways Provision. Instead, it has dodged the merits of this argument by latching onto the Federal Circuit's assertion that Section 553 is not at issue in this case. Pet. App. 8a; *see* BIO 13, 17; Gov't C.A. Reh'g Opp. 14. That assertion was wrong when the Federal Circuit first

made it and remains wrong no matter how many times the Government repeats it. Gray has consistently invoked Section 502's cross-reference to Section 553 as a basis for jurisdiction, and there is no reason for the Court not to consider his argument on its merits.

Below, the Federal Circuit asserted—without citation—that "[t]he parties agree that § 553 is not at issue in this proceeding." Pet. App. 8a. That statement is baffling. Gray has *never* agreed that Section 553 is not at issue here—quite the contrary. The jurisdictional statement in Gray's initial petition for review in the Federal Circuit expressly invoked Section 502's cross-references to *both* Section 552(a)(1) *and* Section 553. JA9. Likewise, the "Statement of Subject Matter Jurisdiction" in his opening brief asserted that the Waterways Provision was a rule "refer[red]" to by Section 553. Pet'r C.A. Br. 1-2. The *Government* certainly thought Section 553 was at issue: It spent several pages of its brief arguing that Section 502's cross-reference to Section 553 did *not* support jurisdiction. *See* Pet. App. 53a-57a. And Gray's counsel did not disavow his position at oral argument, where Section 553 was discussed at some length. How the Federal Circuit concluded that Section 553 was not at issue is a mystery.

Gray attempted to correct the Federal Circuit's misunderstanding below. His rehearing petition argued that the panel was simply wrong in thinking that Gray had conceded the irrelevance of Section 553, and it explained that the Waterways Provision was an interpretive rule "refer[red]" to by that section. Gray C.A. Reh'g Pet. 15-16. The Federal Circuit denied rehearing without explaining its error or addressing Gray's argument. *See* Pet. App. 29a-

page number

30a. Gray then reiterated his Section 553 argument in his petition for certiorari, Pet. 10, 14, 16-17; Pet. Reply 5 n.1. Moreover, the Section 553 issue is squarely encompassed within the scope of Gray's question presented. Gray has thus properly preserved this issue for the Court's review.

## III. SECTION 502 IS A VITAL CHECK ON UNLAWFUL VA ACTION AND MUST BE GIVEN ITS FULL SCOPE

1. As explained above, ordinary principles of statutory interpretation establish that the Waterways Provision embodies both an "interpretation[] of general applicability" and also an "interpretative rule." It is therefore an action "to which section 552(a)(1) or 553 of title 5 (or both) refers." 38 U.S.C. § 502. And it is accordingly "subject to judicial review" in the Federal Circuit. *Id.* Because that result is not remotely absurd, this Court's "sole function" is to "enforce [the statutory scheme] according to its terms." *Carr v. United States*, 560 U.S. 438, 458 (2010) (citation omitted). As the Court has itself explained, its role "is to apply the statute as it is written—even if we think some other approach might 'accor[d] with good policy.'" *Burrage v. United States*, 134 S. Ct. 881, 892 (2014) (alteration in original) (quoting *Commissioner v. Lundy*, 516 U.S. 235, 252 (1996)).

In point of fact, though, giving Section 502's cross-references their full breadth *does* accord with good policy. As this Court well knows, VA regularly adopts rules and interpretations that violate important statutes or regulations designed to protect veterans. *See*, *e.g.*, *Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1977 (2016) (finding VA

"disregard[ed]" statutory text in refusing to award contract to veteran-owned small businesses); *Henderson*, 562 U.S. at 438-41 (rejecting VA's view that deadline for appealing to Veterans Court is jurisdictional); *Brown*, 513 U.S. at 122 (denying deference to VA regulation that "flies against the plain language of the statutory text").[14] Shockingly, the Government is ordered to pay veterans' attorneys' fees in somewhere between 50% and 70% of cases filed in the Veterans Court, because it has taken a "position [that] is not 'substantially justified'" by law. *Astrue v. Ratliff*, 560 U.S. 586, 601 & n.2 (2010) (Sotomayor, J., concurring) (citation omitted). And close to 80% of VA decisions appealed to the Veterans

---

[14] *See also, e.g.*, *Johnson v. McDonald*, 762 F.3d 1362, 1365-66 (Fed. Cir. 2014) (VA tried to "redefine the plain language of a regulation"); *Military Order of the Purple Heart v. Sec'y of Veterans Affairs*, 580 F.3d 1293, 1297-98 (Fed. Cir. 2009) (VA rule "was not implemented in compliance with the requirements of the [APA]" and failed to "comport with the governing [r]egulations"); *Paralyzed Veterans of Am. v. Sec'y of Veterans Affairs*, 345 F.3d 1334, 1338, 1346 (Fed. Cir. 2003) (VA promulgated "unreasonable" regulation that was "contrary to the statutory mandate" by "impos[ing] on claimants an arbitrary new deadline" that narrowed veterans' ability to submit evidence); *Disabled Am. Veterans v. Sec'y of Veterans Affairs*, 327 F.3d 1339, 1349 (Fed. Cir. 2003) (VA regulation wrongly "impose[d] a misleading hurdle" by failing to "notify[] unsuspecting claimant[s] that [they have] a full year to submit" mitigating evidence); *Nat'l Org. of Veterans' Advocates, Inc. v. Sec'y of Veterans Affairs*, 260 F.3d 1365, 1368 (Fed. Cir. 2001) (VA "failed to explain its rationale for interpreting . . . virtually identical statutes in conflicting ways"); *Disabled Am. Veterans v. Gober*, 234 F.3d 682, 699 (Fed. Cir. 2000) (VA imposed heightened pleading requirements on veterans that were "contrary to the [statute]").

Court are either overturned or remanded. *Henderson*, 562 U.S. at 432.

Precisely because VA gets it wrong so often, Congress has authorized direct challenges to VA rules and policies—to ensure that the Federal Circuit will step in to protect veterans when the agency wanders off track. As that court has explained, Section 502 reflects Congress's "preference for preenforcement review of [VA] rules." *Nat'l Org. of Veterans' Advocates, Inc. v. Sec'y of Veterans Affairs*, 330 F.3d 1345, 1347 (Fed. Cir. 2003). That preference is eminently reasonable. When a VA rule or policy is arguably unlawful on its face and ripe for review, there is no reason to impose on veterans the "substantial and unnecessary burden" of enduring "protracted agency adjudication" before getting into an Article III court. Pet. App. 15a-16a (Dyk, J., dissenting).

And "substantial burden" is putting it mildly. The VA's individual claims process has been fairly characterized as a "bureaucratic labyrinth, plagued by delays and inaction," where "many veterans find themselves trapped for years." *Martin v. O'Rourke*, 891 F.3d 1338, 1349 (Fed. Cir. 2018) (Moore, J., concurring). As noted above, it can take ages for an individual benefits case to wind its way through the VA, the Board, the Veterans Court, the Federal Circuit, and (perhaps) ultimately here. Indeed, on average it takes a total of approximately *six years* for a veteran's claim to proceed through the Regional Office, the Board, and the Veterans Court. *See supra* at 6. Each year, thousands of veterans die before their claims and appeals are finally resolved. *See supra* at 6.

2. Gray's case illustrates the importance of allowing veterans to bring the full range of preenforcement challenges that Section 502 authorizes—including challenges to interpretive rules in the M21-1 Manual. Gray served our country for more than three years, with honor and distinction, in the Vietnam War. During that time, he served aboard the U.S.S. *Roark*, a destroyer escort that anchored multiple times in Vietnam's Da Nang Harbor. *Gray v. McDonald*, 27 Vet. App. 313, 316-17 (2015). He was exposed to potentially harmful herbicides, and he now suffers from related disabilities, including diabetes, neuropathy, and heart disease. *Id.*

For over 11 years—*since 2007*—Gray has been diligently pursuing his administrative and legal remedies, thus far to no avail. Pet. App. 6a. Although he briefly succeeded in overturning VA's "arbitrary" and "irrational" prior interpretation of "inland waterways," *Gray*, 27 Vet. App. at 324-26, VA simply responded by issuing the even *more* restrictive 2016 interpretation. *See supra* at 9-11.

Gray's challenge to the new interpretation has merit: VA still wrongly rejects the presumption of service connection for Navy veterans who served in Vietnam's bays and harbors, even though (1) they undeniably served within the international-law boundaries of the Republic of Vietnam (which is what the statute requires), and (2) the best evidence shows that such veterans *were* exposed to the herbicides deemed harmful by the Agent Orange Act. VA's prior interpretation of the statute and regulations arbitrarily ignored that evidence, *Gray*, 27 Vet. App. at 322-24, and its 2016 interpretation commits essentially the same mistake, *see* Pet'r C.A. Br. 18-26.

Under Section 502, Gray has every right to have his challenge to the Waterways Provision heard by the Federal Circuit *now*. Gray is 65 years old, and his diabetes and other ailments have left him in increasingly poor health. There is no reason he should be forced to endure years more wandering in the VA "labyrinth" when Congress has plainly authorized his challenge to go forward. This Court should restore Congress's important check on VA rulemaking and allow Gray's case to proceed.

## CONCLUSION

The judgment of the court of appeals should be reversed.

Respectfully submitted,

MATTHEW D. HILL
SHANNON L. BREWER
HILL & PONTON, P.A.
605 East Robinson Street
Suite 635
Orlando, FL 32801

MICHAEL E. WILDHABER
VETERANS LAW ATTORNEY
700 Twelfth Street, NW
Suite 700
Washington, DC 20005

ROMAN MARTINEZ
    *Counsel of Record*
BENJAMIN W. SNYDER
GRAHAM E. PHILLIPS
CHERISH A. DRAIN*
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
(202) 637-2200
roman.martinez@lw.com

* Admitted in Pennsylvania only. All work supervised by a member of the DC Bar.

*Counsel for Petitioner*

December 17, 2018

**TAB 7**

# In the Supreme Court of the United States

---

ROBERT H. GRAY, PETITIONER

*v.*

ROBERT WILKIE, SECRETARY OF VETERANS AFFAIRS

---

*ON WRIT OF CERTIORARI*
*TO THE UNITED STATES COURT OF APPEALS*
*FOR THE FEDERAL CIRCUIT*

---

**BRIEF FOR THE RESPONDENT**

---

NOEL J. FRANCISCO
  *Solicitor General*
    *Counsel of Record*
JOSEPH H. HUNT
  *Assistant Attorney General*
MALCOLM L. STEWART
  *Deputy Solicitor General*
CHRISTOPHER G. MICHEL
  *Assistant to the Solicitor*
  *General*
ROBERT E. KIRSCHMAN, JR.
MARTIN F. HOCKEY, JR.
ERIC P. BRUSKIN
  *Attorneys*

  *Department of Justice*
  *Washington, D.C. 20530-0001*
  *SupremeCtBriefs@usdoj.gov*
  *(202) 514-2217*

JAMES M. BYRNE
  *General Counsel*
BRIAN D. GRIFFIN
BRANDON A. JONAS
  *Attorneys*
  *Department of Veterans*
  *Affairs*
  *Washington, D.C. 20520*

## QUESTION PRESENTED

Whether the pre-enforcement review provision of the Veterans' Judicial Review Act, 38 U.S.C. 502, authorizes direct review in the Federal Circuit of particular revisions to Part IV, Subpart ii, Chapter 1, Section H, Topic 2 of the Department of Veterans Affairs' Adjudication Manual—an interpretive provision that does not bind the agency's adjudication of any veteran's claim for disability compensation benefits.

## TABLE OF CONTENTS

Page

Opinion below.............................................................................. 1
Jurisdiction................................................................................... 1
Statutory and regulatory provisions involved ........................... 1
Statement ..................................................................................... 2
Summary of argument ................................................................ 18
Argument...................................................................................... 21
    A.   The Waterways Provision is not reviewable under
        the VJRA's cross-reference to 5 U.S.C. 552(a)(1) .... 22
        1.   Section 552(a)(1)(D) does not encompass the
             Waterways Provision ........................................... 24
        2.   The broader structure of FOIA reinforces the
             conclusion that the Waterways Provision does
             not fall within Section 552(a)(1)(D)...................... 38
    B.   The Waterways Provision is not reviewable as a
        VA action to which 5 U.S.C. 553 "refers" ................. 41
    C.   The Waterways Provision is not reviewable under
        Section 502 because it is not final agency action ...... 44
Conclusion ................................................................................... 51
Appendix — Statutory and regulatory provisions ................ 1a

## TABLE OF AUTHORITIES

Cases:

    *Abbott Labs.* v. *Gardner*, 387 U.S. 136 (1967)..................... 46
    *Airport Comm'n of Forsyth Cnty.* v. *Civil Aero-
        nautics Bd.*, 300 F.2d 185 (4th Cir. 1962)......................... 31
    *American Mining Cong.* v. *Mine Safety & Health
        Admin.*, 995 F.2d 1106 (D.C. Cir. 1993) ........................... 40
    *Anderson* v. *Butz*, 550 F.2d 459 (9th Cir. 1977)................. 25
    *Association of Flight Attendants-CWA* v. *Huerta*,
        785 F.3d 710 (D.C. Cir. 2015)...................................... 46, 48
    *Bennett* v. *Spear*, 520 U.S. 154 (1997)...................... 44, 45, 46

Cases—Continued:                                    Page

*Blue Water Navy Viet. Veterans Ass'n* v. *McDonald*,
   830 F.3d 570 (D.C. Cir. 2016)........................................ 17, 49

*Brock* v. *Cathedral Bluffs Shale Oil Co.*, 796 F.2d 533
   (D.C. Cir. 1986) ................................................................. 40

*Capuano* v. *National Transp. Safety Bd.*,
   843 F.2d 56 (1st Cir. 1988) .......................................... 25, 28

*Cathedral Candle Co.* v. *United States Int'l Trade
   Comm'n*, 400 F.3d 1352 (Fed. Cir. 2005)......................... 32

*Chandris, Inc.* v. *Latsis*, 515 U.S. 347 (1995) ..................... 41

*Chevron U.S.A. Inc.* v. *Natural Res. Def. Council,
   Inc.*, 467 U.S. 837 (1984).................................................... 38

*Christensen* v. *Harris Cnty.*, 529 U.S. 576 (2000) .............. 38

*Cyan, Inc.* v. *Beaver Cnty. Emps. Ret. Fund*,
   138 S. Ct. 1061 (2018) ....................................................... 26

*Disabled Am. Veterans* v. *Secretary of Veterans
   Affairs*, 859 F.3d 1072 (Fed. Cir. 2017) .....4, 5, 6, 16, 17, 26

*Freeman* v. *Quicken Loans, Inc.*, 566 U.S. 624 (2012) ...... 38

*Gray* v. *McDonald*, 27 Vet. App. 313 (2015) ..... 10, 11, 12, 18

*Gray, In re*, Bd. Vet. App. No. 1642510,
   2016 WL 7656674 (Nov. 3, 2016) ....................................... 14

*Haas* v. *Peake*, 525 F.3d 1168 (Fed. Cir. 2008),
   cert. denied, 555 U.S. 1149 (2009) .................... 2, 11, 33, 50

*Hall* v. *United States*, 566 U.S. 506 (2012).......................... 27

*Hansen* v. *Harris*, 619 F.2d 942 (2d Cir. 1980), rev'd,
   450 U.S. 785 (1981)............................................................. 28

*Hayburn's Case*, 2 U.S. (2 Dall.) 409 (1792).......................... 6

*Henderson ex rel. Henderson* v. *Shinseki*,
   562 U.S. 428 (2011)................................................... *passim*

*Hogg* v. *United States*, 428 F.2d 274 (6th Cir. 1970),
   cert. denied, 401 U.S. 910 (1971) ....................................... 32

*Johnson* v. *Robison*, 415 U.S. 361 (1974) .............................. 6

Cases—Continued:                                    Page

*Lujan* v. *National Wildlife Fed'n*, 497 U.S. 871
  (1990) ............................................................................ 45

*Monk* v. *Shulkin*, 855 F.3d 1312 (Fed. Cir. 2017) .............. 49

*Morton* v. *Ruiz*, 415 U.S. 199 (1974) ........................ 29, 31, 32

*NLRB* v. *Sears, Roebuck & Co.*, 421 U.S. 132 (1975) ......... 40

*National Archives & Records Admin.* v. *Favish*,
  541 U.S. 157 (2004) ............................................................ 31

*National Mining Ass'n* v. *McCarthy*, 758 F.3d 243
  (D.C. Cir. 2014) ................................................................ 36

*New York* v. *Lyng*, 829 F.2d 346 (2d Cir. 1987) .................. 32

*Nielson* v. *Shinseki*, 607 F.3d 802 (Fed. Cir. 2010)............ 44

*Norton* v. *Southern Utah Wilderness All.*, 542 U.S.
  55 (2004) ........................................................................... 30

*Notaro* v. *Luther*, 800 F.2d 290 (2d Cir. 1986).................... 28

*Overton* v. *Wilkie*, 30 Vet. App. 257 (2018) ......... 6, 23, 33, 45

*Perez* v. *Mortgage Bankers Ass'n*, 135 S. Ct. 1199
  (2015)............................................................ 36, 37, 39, 41

*Preminger* v. *Secretary of Veterans Affairs*,
  632 F.3d 1345 (Fed. Cir. 2011)............................................ 48

*Procopio* v. *McDonald*, No. 15-4082,
  2016 WL 6816244 (Vet. App. Nov. 18, 2016) ................... 18

*Reno* v. *Catholic Soc. Servs., Inc.*, 509 U.S. 43 (1993)........ 45

*Schweiker* v. *Hansen*, 450 U.S. 785 (1981)........................ 28

*Sears* v. *Principi*, 349 F.3d 1326 (Fed. Cir. 2003),
  cert. denied, 541 U.S. 960 (2004) ...................................... 44

*Service Women's Action Network* v. *Secretary of
  Veterans Affairs*, 815 F.3d 1369 (Fed. Cir. 2016)............ 50

*Shalala* v. *Guernsey Mem'l Hosp.*, 514 U.S. 87 (1995)...... 38

*Shinseki* v. *Sanders*, 556 U.S. 396 (2009) ....................... 4, 50

*Snyder* v. *Secretary of Veterans Affairs*,
  858 F.3d 1410 (Fed. Cir. 2017)..................................... 36, 46

*Splane* v. *West*, 216 F.3d 1058 (Fed. Cir. 2000) ............ 37, 47

Cases—Continued:                                              Page

*Title Redacted*, Bd. Vet. App. No. 1427401,
    2014 WL 3959707 (June 17, 2014) ..................................... 35

*Title Redacted*, Bd. Vet. App. No. 1633157,
    2016 WL 5850298 (Aug. 22, 2016) ................................... 34

*Title Redacted*, Bd. Vet. App. No. 1639810,
    2016 BVA Lexis 46159, (Sept. 30, 2016) .......................... 35

*Title Redacted*, Bd. Vet. App. No. 1800365,
    2018 WL 1195436 (Jan. 4, 2018) ....................................... 35

*Title Redacted*, Bd. Vet. App. No. 18102879,
    2018 Lexis 83337 (May 16, 2018) ..................................... 35

*Title Redacted*, Bd. Vet. App. No. 18122784,
    2018 WL ___ (July 31, 2018) ............................................ 34

*United States* v. *449 Cases, Containing Tomato
    Paste*, 212 F.2d 567 (2d Cir. 1954) ..................................... 31

*United States* v. *Levy*, 379 F.3d 1241 (11th Cir. 2004),
    vacated and remanded on other grounds, 545 U.S.
    1101 (2005) ...................................................................... 43

*United States* v. *Santos*, 553 U.S. 507 (2008) ..................... 27

*United States* v. *Williams*, 553 U.S. 285 (2008) ................. 38

*United States Army Corps of Eng'rs* v. *Hawkes Co.*,
    136 S. Ct. 1807 (2016) ........................................................ 44

*Veterans Justice Grp., LLC* v. *Secretary of Veterans
    Affairs*, 818 F.3d 1336 (Fed. Cir. 2016) ............................ 50

*Walters* v. *National Ass'n of Radiation Survivors*,
    473 U.S. 305 (1985) ............................................................. 3

*Washington State Dep't of Soc. & Health Servs.* v.
    *Guardianship Estate of Keffeler*, 537 U.S. 371
    (2003) ................................................................................ 28

*Whitman* v. *American Trucking Ass'ns*, 531 U.S. 457
    (2001) ................................................................................ 47

Statutes and regulations:

Act of July 4, 1966, Pub. L. No. 89-487, 80 Stat. 250 .......... 31

Statutes and regulations—Continued:                                    Page

Act of June 5, 1967, Pub. L. No. 90-23, 81 Stat. 54............. 31
Administrative Procedure Act, Pub. L. No. 79-404,
  § 3(a), 60 Stat. 238.................................................... 29, 30
Administrative Procedure Act, 5 U.S.C. 551 *et seq.*,
  701 *et seq.* ..................................................................... 9
    5 U.S.C. 553.......................................................... *passim*
    5 U.S.C. 553(a) ............................................................ 43
    5 U.S.C. 553(b) ............................................................ 41
    5 U.S.C. 553(b)(A) ....................................................... 41
    5 U.S.C. 553(b)(3)(A) ..................................................... 9
    5 U.S.C. 553(b)-(d) ......................................................... 9
    5 U.S.C. 553(e) ......................................................... 9, 48
    5 U.S.C. 701-706........................................................ 9, 44
    5 U.S.C. 704....................................................9, 20, 22, 44, 4a
    5 U.S.C. 706(1) .............................................................. 9
    5 U.S.C. 706(2)(A)......................................................... 9
Agent Orange Act of 1991, Pub. L. No. 102-4,
  105 Stat. 11 ................................................................... 2
Federal Register Act, ch. 417, § 5(a)(2), 49 Stat. 500......... 30
Freedom of Information Act, 5 U.S.C. 552 .......................... 8
    5 U.S.C. 552(a)(1)..................................................*passim*, 1a
    5 U.S.C. 552(a)(1)(A) ............................................ 8, 46, 1a
    5 U.S.C. 552(a)(1)(A)-(C) ............................ 23, 24, 39, 1a
    5 U.S.C. 552(a)(1)(A)-(E) ......................................... 38, 1a
    5 U.S.C. 552(a)(1)(B) ............................................ 8, 46, 1a
    5 U.S.C. 552(a)(1)(C) ................................................ 8, 1a
    5 U.S.C. 552(a)(1)(D)........................................*passim*, 1a
    5 U.S.C. 552(a)(1)(D)-(E).............................. 8, 16, 23, 1a
    5 U.S.C. 552(a)(1)(E)................................................ 8, 1a
    5 U.S.C. 552(a)(2) (2012 & Supp. V 2017).... 20, 24, 26, 2a
    5 U.S.C. 552(a)(2)(A) ............................................... 39, 2a

VIII

Statutes and regulations—Continued:                      Page

    5 U.S.C. 552(a)(2) (2012 & Supp. V
      2017) ...............................................16, 19, 38, 39, 40, 2a

    5 U.S.C. 552(a)(2)(B) (2012 & Supp. V
      2017) ..............................................................*passim*, 2a

    5 U.S.C. 552(a)(2)(B)-(C) (2012 & Supp. V 2017) ......16, 2a

    5 U.S.C. 552(a)(2)(C) (2012 & Supp. V
      2017) .............................................. 25, 39, 40, 41, 2a

Veterans Appeals Improvement and Modernization
  Act of 2017, Pub. L. No. 115-55, 131 Stat. 1105 ................. 3

    § 2(g)(1), 131 Stat. 1107 ................................................. 3

Veterans' Judicial Review Act, Pub. L. No. 100-687,
  Div. A, 102 Stat. 4105 ........................................................ 6

    § 301(a), 102 Stat. 4113 ................................................. 7

38 U.S.C. 101(16) ............................................................. 2

38 U.S.C. 301(b) .............................................................. 3

38 U.S.C. 301(c)(3) .......................................................... 3

38 U.S.C. 502 ...........................................................*passim*, 5a

38 U.S.C. 511(a) ...................................................... 10, 5a

38 U.S.C. 1110 ................................................................. 2

38 U.S.C. 1112 ................................................................. 2

38 U.S.C. 1116 (a)(1)(A) ..................................2, 10, 18, 48, 1a

38 U.S.C. 1116-1118 (2012 & Supp. V 2017) ....................... 2

38 U.S.C. 1131 ................................................................. 2

38 U.S.C. 5101 (2012 & Supp. V 2017) ............................... 3

38 U.S.C. 5104B ............................................................... 3

38 U.S.C. 5107(a) ............................................................. 2

38 U.S.C. 5107(b) ............................................................. 4

38 U.S.C. 5108 ................................................................. 4

38 U.S.C. 5109A ............................................................... 4

38 U.S.C. 5902-5904 (2012 & Supp. V 2017) ........................ 3

Statutes and regulations—Continued:                        Page

  38 U.S.C. 7104 (2012 & Supp. V 2017) ................ 5, 21, 35, 8a

  38 U.S.C. 7104(a) ........................................................... 33, 8a

  38 U.S.C. 7104(c) ............................................6, 33, 36, 46, 9a

  38 U.S.C. 7105 (Supp. V 2017) ............................................ 21

  38 U.S.C. 7105(b)(1)(A) (Supp. V 2017) ................................ 5

  38 U.S.C. 7107 (Supp. V 2017) .............................................. 5

  38 U.S.C. 7113 (Supp. V 2017) .............................................. 5

  38 U.S.C. 7251 ........................................................................ 7

  38 U.S.C. 7252(a) ............................................................ 7, 10a

  38 U.S.C. 7261(a)(1) ........................................................ 7, 11a

  38 U.S.C. 7261(a)(2) ...................................................... 49, 11a

  38 U.S.C. 7261(a)(2)-(4) .................................................. 7, 11a

  38 U.S.C. 7292(b) ........................................................... 49, 13a

  38 U.S.C. 7292(b)(1) ....................................................... 7, 13a

  38 U.S.C. 7292(d) ........................................................... 7, 14a

  38 U.S.C. 7292(d)(1) ....................................................... 7, 14a

  38 C.F.R.:

      Section 3.307(a)(6)(iii) ..................................... 11, 14, 16a

      Section 14.626-14.637 ................................................... 3

      Section 19.5 ................................................... 6, 23, 33, 17a

      Section 20.1303 ............................................................ 39

Miscellaneous:

  Central Intelligence Agency, *The World Factbook:
    Vietnam*, https://www.cia.gov/library/publications/
    the-world-factbook/geos/vm.html (last updated
    Jan. 8, 2019).......................................................................... 10

  Colleen R. Courtade, Annotation, *What Rules, State-
    ments, and Interpretations Adopted by Federal
    Agencies Must be Published*, 77 A.L.R. Fed. 572
    (1986 & Supp. 2018-2019)................................................... 32

Miscellaneous—Continued:                              Page

Kenneth Culp Davis, *Administrative Law Treatise*
(Supp. 1970) ................................................................ 25, 26

15 *Federal Procedure* (2011) ......................................... 25, 32

H.R. Rep. No. 1980, 79th Cong., 2d Sess. (1946) ............... 30

H.R. Rep. No. 963, 100th Cong., 2d Sess. Pt. 1
(1988) ............................................................... 37, 47, 48, 50

*Merriam Webster's Collegiate Dictionary* (1996) ............ 27

1 James T. O'Reilly, *Federal Information Disclosure*
(2017) ................................................................................ 25

S. Rep. No. 418, 100th Cong., 2d Sess. (1988) .................... 37

S. Rep. No. 752, 79th Cong., 1st Sess. (1945) ..................... 39

S. Rep. No. 813, 89th Cong., 1st Sess. (1965) ..................... 31

Randy S. Springer, *Gatekeeping and the* Federal
Register: *An Analysis of the Publication Require-
ment of Section 552(a)(1)(D) of the Administrative
Procedure Act*, 41 Admin. L. Rev. 533 (1989) ................. 30

U.S. Dep't of Justice:

*Attorney General's Manual on the Administra-
tive Procedure Act* (1947) ......................................... 30

*Attorney General's Memorandum on the Public
Information Section of the Administrative
Procedure Act* (1967) ................................................ 31

U.S. Dep't of Veterans Affairs:

*Adjudication Procedures Manual M21-1* ...... 4, 5, 13, 14

https://www.knowva.ebenefits.va.gov/system/
templates/selfservice/va_ssnew/help/
customer/locale/en-US/portal/
554400000001018/content/
554400000075494/M21-1%20
Changes%20By%20Date
(last visited Jan. 16, 2019) .................................... 5

Miscellaneous—Continued:                    Page

    https://www.knowva.ebenefits.va.gov/system/
        templates/selfservice/va_ssnew/help/
        customer/locale/en-US/portal/
        554400000001018/content/
        554400000073398/M21-1,%20
        Adjudication%20Procedures%20
        Manual,%20Table%20of%20Contents
        (last visited Jan. 16, 2019) ..................................... 4

*How to File a VA Disability Claim,*
    https://www.va.gov/disability/how-to-file-
    claim/ (last visited Jan. 16, 2019)................................ 3

Office of Budget, https://www.va.gov/budget/
    products.asp (last updated Apr. 11, 2018):

    *FY2016 Budget Submission* ................................ 5

    *FY2019 Budget Submission* ................................ 5

# In the Supreme Court of the United States

---

No. 17-1679

ROBERT H. GRAY, PETITIONER

*v.*

ROBERT WILKIE, SECRETARY OF VETERANS AFFAIRS

---

*ON WRIT OF CERTIORARI*
*TO THE UNITED STATES COURT OF APPEALS*
*FOR THE FEDERAL CIRCUIT*

---

**BRIEF FOR THE RESPONDENT**

---

## OPINION BELOW

The opinion of the court of appeals (Pet. App. 1a-28a) is reported at 875 F.3d 1102.

## JURISDICTION

The judgment of the court of appeals was entered on November 16, 2017. A petition for rehearing was denied on March 21, 2018 (Pet. App. 29a-37a). The petition for a writ of certiorari was filed on June 19, 2018, and was granted on November 2, 2018. The jurisdiction of this Court rests on 28 U.S.C. 1254(1).

## STATUTORY AND REGULATORY PROVISIONS INVOLVED

Pertinent statutory and regulatory provisions are reproduced in the appendix to this brief. App., *infra*, 1a-17a.[1]

---

[1] Unless otherwise noted, all statutory citations in this brief are to the current version of the United States Code.

## STATEMENT

1. Veterans who served our Nation are entitled to compensation for disabilities arising from their service. 38 U.S.C. 1110, 1131; see *Henderson ex rel. Henderson* v. *Shinseki*, 562 U.S. 428, 431 (2011). A veteran applying for disability benefits usually must establish that his disability is "'service-connected,'" meaning that it was "incurred or aggravated" in the "line of duty." 38 U.S.C. 101(16); see 38 U.S.C. 5107(a). With respect to certain disabilities, however, Congress has determined that demonstrating a connection to service in individual cases is overly burdensome. In those circumstances, Congress has obviated the need for individualized proof of service-connection by providing that veterans who served in particular places at particular times and develop particular disabilities are presumptively entitled to benefits. See 38 U.S.C. 1112, 1116-1118.

As relevant here, veterans who "served in the Republic of Vietnam" during the period when the United States used the herbicide Agent Orange (January 9, 1962 to May 7, 1975), and who develop specified diseases associated with exposure to Agent Orange, are presumptively entitled to disability benefits. 38 U.S.C. 1116(a)(1)(A); see Agent Orange Act of 1991 (Agent Orange Act), Pub. L. No. 102-4, 105 Stat. 11; see also *Haas* v. *Peake*, 525 F.3d 1168, 1171-1172 (Fed. Cir. 2008), cert. denied, 555 U.S. 1149 (2009) (elaborating the history and health effects of Agent Orange). A veteran who does not qualify for the presumption of service-connection based on his time and place of service may demonstrate an entitlement to benefits by showing that he was actually exposed to herbicides during service and that the exposure caused his disability. 38 U.S.C. 101(16).

2. A veteran may assert his entitlement to disability benefits by filing a claim with the United States Department of Veterans Affairs (VA), which administers the benefits system through the Veterans Benefits Administration (VBA). 38 U.S.C. 5101; see 38 U.S.C. 301(b) and (c)(3). The veteran may file a disability claim in person, by mail, or online. See VA, *How to File a VA Disability Claim*, https://www.va.gov/disability/how-to-file-claim/. Veterans may be represented *pro bono* or at limited cost by counsel or by representatives of a recognized veterans service organization. See 38 U.S.C. 5902-5904; 38 C.F.R. 14.626-14.637.

VA adjudicates disability benefits claims through "a two-step process." *Henderson*, 562 U.S. at 431. First, VBA employees in one of the agency's 56 regional offices make "an initial decision on whether to grant or deny benefits." *Ibid.* Second, "if a veteran is dissatisfied with the regional office's decision, the veteran may obtain *de novo* review by the Board of Veterans' Appeals [(Board)], a body within the VA that makes the agency's final decision in cases appealed to it." *Ibid.*[2]

a. In adjudicating benefits claims at the first stage of the process, the relationship between a veteran and VA is intended to be "as informal and nonadversarial as possible." *Walters* v. *National Ass'n of Radiation Survivors*, 473 U.S. 305, 323-324 (1985). A veteran thus "faces no time limit for filing a claim." *Henderson*, 562 U.S.

---

[2] Once the Veterans Appeals Improvement and Modernization Act of 2017, Pub. L. No. 115-55, 131 Stat. 1105, takes effect, claimants will be able to request review of an initial VBA decision by a higher-level VBA adjudicator before appealing to the Board. § 2(g)(1), 131 Stat. 1107; see 38 U.S.C. 5104B. That option did not exist at the time of the administrative proceedings concerning petitioner's claim for benefits.

at 431. Once a claim is filed, VBA employees in VA's regional offices—known as Veterans Service Representatives—have "a statutory duty to assist veterans in developing the evidence necessary to substantiate their claims." *Id.* at 431-432. In evaluating claims, "VA must give veterans the 'benefit of the doubt' whenever positive and negative evidence on a material issue is roughly equal." *Id.* at 432 (quoting 38 U.S.C. 5107(b)). The denial of a claim is subject to challenge at any time based on "clear and unmistakable error," 38 U.S.C. 5109A, and a veteran may reopen a claim at any time by presenting "new and material evidence," 38 U.S.C. 5108; see, *e.g.*, *Shinseki* v. *Sanders*, 556 U.S. 396, 402 (2009) (describing VA's reopening of a World War II veteran's claim 42 years after its initial denial).

When processing claims in the field, VBA employees rely on VA's *Adjudication Procedures Manual M21-1* (Manual), an online "resource" into which VA "consolidates its policy and procedures" regarding claims adjudication. *Disabled Am. Veterans* v. *Secretary of Veterans Affairs*, 859 F.3d 1072, 1074 (Fed. Cir. 2017) (*DAV*).[3] The Manual currently contains nine parts, each of which includes multiple subparts, chapters, sections, topics, and blocks that prescribe in detail the steps that VBA personnel may undertake to process and decide claims for disability compensation and other benefits. For example, Part III, Subpart ii, Chapter 1, Section C, Topic 1, Block a explains how to perform the first step in the claims screening process—recording the date the claim

---

[3] All provisions of the Manual can be accessed through the Table of Contents on VA's website. See https://www.knowva.ebenefits. va.gov/system/templates/selfservice/va_ssnew/help/customer/locale/ en-US/portal/554400000001018/content/554400000073398/M21-1,%20 Adjudication%20Procedures%20Manual,%20Table%20of%20Contents.

was received. Manual III.ii.1.C.1.a. The Manual's provisions are not "binding on anyone other than the VBA employees," Pet. App. 5a, and they evolve frequently. "Any VBA employee can request changes to the Manual through submission of an online form," *DAV*, 859 F.3d at 1074, and the revision will be reflected in the Manual if a team at VA headquarters approves. In 2018, the Manual was revised approximately 300 times.[4]

The informal and evolving Manual helps VA frontline adjudicators "process claims benefits quicker and with higher accuracy." *DAV*, 859 F.3d at 1074 (citation omitted). By any measure, the agency's task is immense. In the past three years, the number of disability compensation claims received by the VBA has increased nearly 24%, from approximately 960,000 in 2014 to nearly 1.2 million in 2017. See Office of Budget, VA, *FY2016 Budget Submission*, Vol. III, at 165; Office of Budget, VA, *FY2019 Budget Submission*, Vol. III, at 163-164. With older veterans living longer and new veterans returning from the battlefield every day, VA adjudicators now receive and process more claims for veterans' benefits than at any previous time in our Nation's history.

b. A veteran who disagrees with the regional office's resolution of her claim may appeal to the Board at any time within one year of the decision. 38 U.S.C. 7105(b)(1)(A). The Board conducts "*de novo* review" and renders the "agency's final decision" on the claim. *Henderson*, 562 U.S. at 431; see 38 U.S.C. 7104. A veteran may request a hearing and submit new evidence in support of his claim while it is pending before the Board. 38 U.S.C. 7107, 7113. In deciding claims, the Board is

---

[4] https://www.knowva.ebenefits.va.gov/system/templates/selfservice/va_ssnew/help/customer/locale/en-US/portal/554400000001018/content/554400000075494/M21-1%20Changes%20By%20Date.

bound by "the regulations of the Department, instructions of the Secretary, and the precedent opinions of the chief legal officer of the Department"—the agency's General Counsel. 38 U.S.C. 7104(c).

Under VA regulations, the Board is "not bound by [VA] manuals, circulars, or similar administrative issues." 38 C.F.R. 19.5; see Pet. App. 5a ("[T]he Board * * * is not bound by any directives in the [Manual] and need not defer to any administrator's adherence to those guidelines."); *DAV*, 859 F.3d at 1077 ("The [Manual] is binding on neither the agency nor tribunals."). The "Board must independently review" any matter in the Manual that informs its decision. *Overton* v. *Wilkie*, 30 Vet. App. 257, 259 (2018). If "the Board chooses to rely on the [Manual] as a factor in its analysis or as the rule of decision, it must provide adequate reasons or bases for doing so" apart from the Manual itself. *Ibid.* Failure to do so constitutes reversible error. *Ibid.* ("The Board may not simply rely on the nonbinding [Manual] position without analysis.").

3. For most of our Nation's history, administrative decisions regarding veterans' benefits were subject to virtually no judicial review. See *Henderson*, 562 U.S. at 432 & n.1; see also *Johnson* v. *Robison*, 415 U.S. 361, 366-374 (1974); *Hayburn's Case*, 2 U.S. (2 Dall.) 409, 409-410 (1792). In 1988, Congress enacted the Veterans' Judicial Review Act (VJRA), Pub. L. No. 100-687, Div. A, 102 Stat. 4105, which authorized limited judicial review of VA final decisions on veterans' benefits claims and certain other agency actions.

a. The VJRA created a new Article I court, now called the United States Court of Appeals for Veterans Claims (Veterans Court), and authorized it to hear appeals from Board decisions on benefits claims. See

§ 301(a), 102 Stat. 4113; 38 U.S.C. 7251. The Veterans Court has jurisdiction to hear appeals by a veteran (but not by VA), 38 U.S.C. 7252(a), and to "decide all relevant questions of law, interpret constitutional, statutory, and regulatory provisions, and determine the meaning or applicability of the terms of an action," 38 U.S.C. 7261(a)(1). The Veterans Court may also "compel action of the Secretary unlawfully withheld or unreasonably delayed"; "hold unlawful and set aside" VA decisions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"; and set aside factual findings that are "clearly erroneous." 38 U.S.C. 7261(a)(2)-(4).

Either a veteran or VA may appeal an adverse decision of the Veterans Court to the Federal Circuit. 38 U.S.C. 7292(d). In such appeals, the Federal Circuit has jurisdiction to decide, *inter alia*, "all relevant questions of law," including the lawfulness of "any regulation or any interpretation thereof (other than a determination as to a factual matter) that was relied upon in the decision of the" Veterans Court. 38 U.S.C. 7292(d)(1). The Federal Circuit also has jurisdiction to accept certification by a judge or panel of the Veterans Court of "a controlling question of law" as "to which there is a substantial ground for difference of opinion" and the resolution of which would "materially advance[]" the "ultimate termination of the case." 38 U.S.C. 7292(b)(1).

b. The VJRA also authorizes direct Federal Circuit review of certain VA actions outside the context of an individual benefits adjudication. 38 U.S.C. 502. Such pre-enforcement review is available for "[a]n action of the Secretary to which section 552(a)(1) or 553 of title 5 (or both) refers." *Ibid.* The first of those cross-referenced provisions, Section 552(a)(1) of Title 5, is

part of the Freedom of Information Act (FOIA), 5 U.S.C. 552. Section 552(a)(1) provides:

Each agency shall separately state and currently publish in the Federal Register for the guidance of the public—

(A) descriptions of its central and field organization and the established places at which, the employees (and in the case of a uniformed service, the members) from whom, and the methods whereby, the public may obtain information, make submittals or requests, or obtain decisions;

(B) statements of the general course and method by which its functions are channeled and determined, including the nature and requirements of all formal and informal procedures available;

(C) rules of procedure, descriptions of forms available or the places at which forms may be obtained, and instructions as to the scope and contents of all papers, reports, or examinations;

(D) substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency; and

(E) each amendment, revision, or repeal of the foregoing.

Except to the extent that a person has actual and timely notice of the terms thereof, a person may not in any manner be required to resort to, or be adversely affected by, a matter required to be published in the Federal Register and not so published.

5 U.S.C. 552(a)(1).

The second of the cross-referenced provisions, 5 U.S.C. 553, is part of the Administrative Procedure Act (APA), 5 U.S.C. 551 *et seq.*, 701 *et seq.* Section 553 outlines requirements for notice-and-comment rule-making, 5 U.S.C. 553(b)-(d), but states that those requirements do "not apply" to "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice," 5 U.S.C. 553(b)(3)(A). Section 553 also provides that each "agency shall give an interested person the right to petition for the issuance, amendment, or repeal of a rule." 5 U.S.C. 553(e).

Pre-enforcement review of a VA action under the VJRA "shall be in accordance with chapter 7 of title 5." 38 U.S.C. 502. Chapter 7 of Title 5 contains the APA's judicial-review provisions. See 5 U.S.C. 701-706. Those provisions authorize a reviewing court to, among other things, "compel agency action unlawfully withheld or unreasonably delayed" and "hold unlawful and set aside agency action, findings, and conclusions found to be * * * arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. 706(1) and (2)(A). Those provisions also state that "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review," and that a "preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action." 5 U.S.C. 704.

c. Aside from the limited judicial review provided by the VJRA and by other narrow review provisions not at issue in this case, VA's decisions "under a law that affects the provision of benefits" are "final and conclusive and may not be reviewed by any other official or by any

court, whether by an action in the nature of mandamus or otherwise." 38 U.S.C. 511(a).

4. Petitioner Robert Gray served honorably in the United States Navy during the Vietnam War. *Gray* v. *McDonald*, 27 Vet. App. 313, 316 (2015). Of particular relevance here, petitioner served aboard the U.S.S. *Roark*, a *Knox*-class frigate that anchored in Da Nang Harbor along the coast of the former Republic of Vietnam in 1972. *Ibid.*[5]

a. In 2007, petitioner filed a claim for disability benefits based on several medical conditions associated with potential exposure to Agent Orange. Pet. App. 6a; see *Gray*, 27 Vet. App. at 316. As noted above (see p. 2, *supra*), although most veterans who apply for disability benefits must show that their disabilities are connected to their military service, the Agent Orange Act establishes a presumption of service-connection for veterans who "served in the Republic of Vietnam" between January 9, 1962 and May 7, 1975 and later develop one of the specified health conditions. 38 U.S.C. 1116(a)(1)(A). Under that framework, the central question in petitioner's case was whether his naval service, which included entering Da Nang Harbor in 1972, constituted service "in the Republic of Vietnam" within the meaning of the Agent Orange Act. See *Gray*, 27 Vet. App. at 318.

Under VA regulations issued in 1993 to implement the Agent Orange Act, service "in the Republic of Vietnam," 38 U.S.C. 1116(a)(1)(A), "includes service in the

---

[5] The former Republic of Vietnam, also known as South Vietnam, was overtaken by North Vietnam in 1975 and is now part of the Socialist Republic of Vietnam. See Central Intelligence Agency, *The World Factbook: Vietnam*, https://www.cia.gov/library/publications/the-world-factbook/geos/vm.html.

waters offshore and service in other locations if the conditions of service involved duty or visitation in the Republic of Vietnam," 38 C.F.R. 3.307(a)(6)(iii).  In a General Counsel opinion and subsequent Federal Register notice, VA interpreted that regulation to require service either on the Republic of Vietnam's "landmass" or on its "inland waterways," on the rationale that "Agent Orange was sprayed only on land, and therefore the best proxy for exposure is whether a veteran was present within the land borders of the Republic of Vietnam." *Haas*, 525 F.3d at 1181, 1189, 1192.  For Navy veterans like petitioner, VA's interpretation essentially distinguished between "brown water" veterans who served on Vietnam's internal waterways and "blue water" veterans who served at sea.  See *Gray*, 27 Vet. App. at 320.  The Federal Circuit upheld that interpretation in 2008.  *Haas*, 525 F.3d at 1197; see *id.* at 1193 ("Drawing a line between service on land, where herbicides were used, and service at sea, where they were not, is prima facie reasonable.").

The regional office denied petitioner's claim because petitioner concededly had not served "on the ground" in Vietnam.  *Gray*, 27 Vet. App. at 316 (citation omitted).  Petitioner supplemented his claim several times, arguing that his service on a ship that entered Da Nang Harbor constituted service on an "inland waterway."  *Id.* at 317 (citation omitted).  While the regional office was considering those claims, VA issued a letter and a bulletin that clarified its understanding of the term "inland waterways" as that term was used in the General Counsel opinion and Federal Register notice described above.  Pet. App. 6a (citation omitted).  The letter defined "inland waterways" to include "rivers, estuaries, canals, and delta areas inside the country," but to exclude

"open deep-water coastal ports and harbors where there is no evidence of herbicide use," including Da Nang Harbor. *Ibid.* (citation omitted). Relying on that interpretation, the regional office concluded that petitioner was not eligible for the presumption of service-connection in the Agent Orange Act, and it further concluded that petitioner had not presented evidence of actual exposure to Agent Orange. *Gray*, 27 Vet. App. at 318. On de novo review, the Board affirmed. *Ibid.*

b. Petitioner appealed to the Veterans Court, which vacated the Board's decision and remanded in relevant part. Pet. App. 6a; see *Gray*, 27 Vet. App. at 319-327. The court concluded that the Board's interpretation of "inland waterways" was "inconsistent with the regulatory purpose and irrational," because it defined "inland waterways" within "the Republic of Vietnam" for purposes of the Agent Orange Act based on water depth rather than on the likelihood of exposure to Agent Orange. *Gray*, 27 Vet. App. at 322-324. Specifically, the court held that the Board had not adequately explained why "inland waterways" included shallow coastal waters like Quy Nhon Bay Harbor and Ganh Rai Bay, but not the deeper coastal waters of Da Nang Harbor. *Id.* at 324; see *id.* at 325 (describing the "struggle to classify the gray area where brown inland waterways meet blue offshore waters"). The court remanded for the Board to reevaluate the meaning of "inland waterway"— "particularly as it applies to Da Nang Harbor"— consistent with the emphasis on the likelihood of exposure to Agent Orange that underlies VA's regulation. *Id.* at 326-327.

c. Following the Veterans Court's decision, VA reviewed the available scientific evidence and concluded that it did not support a presumption of exposure to

Agent Orange for "service on the offshore open waters" —that is, "the high seas and any coastal or other water feature, such as a bay, inlet, or harbor, containing salty or brackish water and subject to regular tidal influence." Pet. App. 7a (citation omitted). In February 2016, VA accordingly amended the Manual to provide new guidance to the regional offices on how to determine whether particular waterways constitute "inland waterways" under VA's interpretation of its regulations implementing the Agent Orange Act. *Ibid.* (citation omitted). The new provision, which petitioner calls the Waterways Provision (Pet. Br. 10), is contained in Part IV, Subpart ii, Chapter 1, Section H, Topic 2 of the Manual.

The Waterways Provision first states that "[i]nland waterways" are "fresh water rivers, streams, and canals, and similar waterways," which are "distinct from ocean waters and related coastal features * * * such as a bay or inlet." Pet. App. 46a-47a (emphasis omitted); see Manual IV.ii.1.H.2.a. It then states that "[o]ffshore waters are the high seas and any coastal or other water feature, such as a bay, inlet, or harbor, containing salty or brackish water and subject to regular tidal influence." Pet. App. 47a-48a (emphasis omitted); see Manual IV.ii.1.H.2.b. The provision accordingly instructs that the two shallow bays referenced by the Veterans Court (Qui Nhon Bay Harbor and Ganh Rai Bay), as well as the deeper coastal waters of Da Nang Harbor, are all "offshore waters" as the Waterways Provision uses that term. Pet. App. 48a; see Manual IV.ii.1.H.2.c.[6]

---

[6] The Manual states that, "[i]n the interest of maintaining equitable claim outcomes among shipmates, VA will continue to extend the presumption of exposure to Veterans who served aboard vessels

d. In November 2016, the Board issued its decision on remand in petitioner's case. *In re Gray*, Bd. Vet. App. No. 1642510, 2016 WL 7656674 (Nov. 3, 2016). The Board stated that the question before it was "whether [petitioner] served on inland waterways during service, or more specifically whether anchoring in Da Nang Harbor is appropriately characterized as service on an inland waterway rather than service in waters offshore of the Republic of Vietnam for purposes of" VA's binding regulation, 38 C.F.R. 3.307(a)(6)(iii). 2016 WL 7656674, at \*4. The Board explained that the Waterways Provision of the Manual is "not binding" on that question, but that it is "instructive on the definition of inland waterways and offshore waters for the purposes of entitlement to presumptive service connection." *Ibid.* The Board concluded that treating Da Nang Harbor as an offshore waterway was consistent with the binding VA regulation, governing Federal Circuit and Veterans Court precedent, available scientific evidence, and "previous VA guidance." *Id.* at \*4-\*6. The Board accordingly denied petitioner's claim. *Id.* at \*6.

e. Petitioner appealed the Board's decision to the Veterans Court. *Gray* v. *Wilkie*, No. 16-4042 (filed Dec. 12, 2016). At the joint request of petitioner and VA, however, that appeal has been stayed since April 2017 pending developments in other litigation. See 16-4042 Docket entry (Apr. 13, 2017).

---

that entered Qui Nhon Bay Harbor or Ganh Rai Bay during specified periods that are already on VA's 'ships list.'" Pet. App. 49a; see Manual IV.ii.1.H.2.c. The Manual further explains, however, that "VA will no longer add new vessels to the ships list, or new dates for vessels currently on the list, based on entering Qui Nhon Bay Harbor or Ganh Rai Bay or any other offshore waters." *Ibid.*; see also J.A. 90-92.

5. While the Board was considering petitioner's claim on remand, petitioner filed a petition in the Federal Circuit seeking pre-enforcement review of the Waterways Provision of the Manual. Pet. App. 2a; see J.A. 8-16. The court of appeals dismissed the petition for lack of jurisdiction. Pet. App. 1a-28a.[7]

a. The court of appeals explained that the pre-enforcement review provision of the VJRA, 38 U.S.C. 502, confers jurisdiction to review only VA "actions that are subject to 5 U.S.C. §§ 552(a)(1) and 553," not "actions that fall under § 552(a)(2)." Pet. App. 8a. The court stated that the "parties agree that § 553," which sets requirements for notice-and-comment rulemaking, "is not at issue in this proceeding." *Ibid.* The court described the "debate" among the parties as "whether the manual provisions challenged in this action fall under § 552(a)(1), giving [the court] authority to consider them in the context of this action, or § 552(a)(2), prohibiting [the court's] review here." *Id.* at 8a-9a.

The court of appeals observed that the "relevant part" of Section 552(a)(1), which the VJRA cross references, requires Federal Register publication of "substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency," as well as "each amendment,

---

[7] The Blue Water Navy Vietnam Veterans Association (BWNVVA), a veterans' advocacy group, filed a similar petition. See Pet. App. 2a. The court of appeals consolidated the petitions and dismissed both in the decision below. *Ibid.* BWNVVA subsequently filed a petition for a writ of certiorari, see *Blue Water Navy Viet. Veterans Ass'n* v. *Wilkie*, No. 17-1693 (filed June 18, 2018), which remains pending before this Court.

revision, or repeal of the foregoing." Pet. App. 9a (quoting 5 U.S.C. 552(a)(1)(D)-(E)). The court then compared that provision to Section 552(a)(2), which the VJRA does not cross reference, and which requires an agency to make available in an electronic format "statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register," and "administrative staff manuals and instructions to staff that affect a member of the public." *Ibid.* (quoting 5 U.S.C. 552(a)(2)(B)-(C)). The court described its then-recent holding in *DAV*, *supra*, that when "manual provisions are interpretations adopted by the agency, not published in the Federal Register, not binding on the Board itself, and contained within an administrative staff manual, they fall within § 552(a)(2) —not § 552(a)(1).'" *Id.* at 11a (quoting *DAV*, 859 F.3d at 1078). The court concluded that its reasoning in *DAV* "compel[led] the same result here"—"where the action is not binding on private parties or the agency itself," the court of appeals has "no jurisdiction to review it." *Id.* at 12a.

The court of appeals added that its decision "does not leave" veterans in petitioner's position "without recourse," because "'a veteran adversely affected by a M21-1 Manual provision can contest the validity of that provision'" in direct review of an individual benefits determination. Pet. App. 12a (brackets and citation omitted). The court observed that this was the procedural route by which a veteran had obtained judicial review in *Haas*, thus generating the Federal Circuit's leading decision on VA's interpretation of the Agent Orange Act. *Ibid.* The court of appeals further explained that "[petitioner] and several other veterans" already had pend-

ing Veterans Court appeals that presented such chal-
lenges. *Id.* at 13a n.1. The court also noted that indi-
vidual veterans or advocacy groups "may petition the
VA for rulemaking" with respect to the criteria to be
used in determining whether the Agent Orange Act ap-
plies. *Id.* at 12a-13a; see *Blue Water Navy Viet. Veter-
ans Ass'n* v. *McDonald*, 830 F.3d 570, 577 (D.C. Cir.
2016) (explaining alternative mechanisms for review).

b. Judge Dyk concurred in the judgment and dis-
sented in part. Pet. App. 15a-28a. He agreed that the
panel was bound by the court of appeals' decision in
*DAV*, *supra*. Pet. App. 15a. He further agreed "with
*DAV* that the Manual is not the type of document that
is reviewable because it is subject to the notice-and-com-
ment rulemaking provisions of § 553." *Id.* at 19a. He
disagreed, however, with the *DAV* court's conclusion
that the Waterways Provision is not "an interpretation
of general applicability under § 552(a)(1)." *Ibid.*

c. Petitioner sought rehearing en banc, which the
court of appeals denied by a vote of 7-3. Pet. App. 29a-
30a. Judge Taranto concurred in the denial of rehear-
ing. *Id.* at 32a-36a. He observed that petitioner's argu-
ments for rehearing "rest[ed] almost entirely on the as-
serted need  * * *  to repudiate the premise" that Sec-
tions 552(a)(1)(D) and 552(a)(2)(C) are "mutual[ly] ex-
clusive." *Id.* at 32a-33a. He explained that no such re-
pudiation was needed because the panel decision does
not "stand[] for the proposition that, if an agency pro-
nouncement is within § 552(a)(2)(C)  * * * , the pro-
nouncement cannot also be within § 552(a)(1)(D)." *Id.*
at 32a. Judge Taranto added that, because the validity
of the "particular [VA] pronouncement at issue here
* * * is currently under consideration in cases involving
individual benefits claims," the Federal Circuit could

"consider th[at] particular Manual pronouncement through an individual benefits case at roughly the same time as it would consider the pronouncement" through a Section 502 proceeding. *Id.* at 33a.

Judge Dyk, joined by Judges Newman and Wallach, dissented from the denial of rehearing "[f]or the reasons set forth in the panel dissent." Pet. App. 37a.

6. On December 7, 2018, the en banc Federal Circuit heard argument in *Procopio* v. *Wilkie*, No. 17-1821, which presents the question whether service "in the Republic of Vietnam" for purposes of the Agent Orange Act, 38 U.S.C. 1116(a)(1)(A), includes service in the "territorial sea" off the coast of Vietnam, *Procopio* v. *McDonald*, No. 15-4082, 2016 WL 6816244, at *6 (Vet. App. Nov. 18, 2016) (citation omitted). If the Federal Circuit ultimately resolves that question in favor of the veteran, its decision would necessarily mean that petitioner qualifies for the presumption of service-connection under the Agent Orange Act, see *Gray*, 27 Vet. App. at 318, 326.

## SUMMARY OF ARGUMENT

A. For purposes of the VJRA provision that authorizes pre-enforcement review of certain VA actions, 38 U.S.C. 502, the Waterways Provision is not an action to which 5 U.S.C. 552(a)(1) "refers." Petitioner contends that the Waterways Provision is a VA "interpretation[] of general applicability formulated and adopted by the agency" within the meaning of 5 U.S.C. 552(a)(1)(D). That argument lacks merit.

Petitioner argues that any agency interpretation that extends beyond a particular case or fact pattern is necessarily one "of general applicability." 5 U.S.C. 552(a)(1)(D). But Section 552(a)(1)(D) also refers to "statements of general policy," and the word "general"

in that context would be superfluous under petitioner's reading, since a "policy" necessarily extends to more than one person or case. Petitioner's theory would suggest, moreover, that a vast array of nonbinding interpretations set forth in staff manuals or similar documents must be published in the Federal Register.

Section 552(a)(1) further provides that, if an agency fails to publish in the Federal Register a document that the provision requires to be so published, a person who lacks actual notice of the terms of the document "may not * * * be required to resort to, or be adversely affected by," the matter that the agency unlawfully failed to publish. 5 U.S.C. 552(a)(1). That language suggests a focus on materials that have binding effect either on persons who deal with the agency or on the agency itself. Under that approach, the Waterways Provision falls outside Section 552(a)(1)(D) because it does not bind VA or any benefits claimant. Although the Manual is binding on frontline adjudicators, any veteran who receives an adverse benefits determination from the VBA may appeal to the Board, which conducts de novo review and is not bound by the Manual in conducting its own independent analysis. By contrast, interpretations set forth in published VA regulations or precedential General Counsel opinions are binding on the Board and are covered by Section 552(a)(1)(D).

FOIA's broader structure reinforces the conclusion that Section 552(a)(1)(D) does not encompass the Waterways Provision. The various categories of agency materials that Section 552(a)(1) requires to be published in the Federal Register are characterized by their broad sweep and applicability to the agency as a whole. The materials described in Section 552(a)(2), by

contrast, which must be made publicly available in electronic format but need not be published in the Federal Register, are characterized by their narrow applicability, and they have at most a limited binding effect. By cross-referencing Section 552(a)(1) but not Section 552(a)(2), the VJRA makes clear that only the former type of VA materials are subject to pre-enforcement review. The Waterways Provision is far more similar to the agency materials that Section 552(a)(2) designates for electronic access than to those that Section 552(a)(1) designates for Federal Register publication.

B. The VJRA also authorizes pre-enforcement review of VA actions to which 5 U.S.C. 553 "refers." Section 553 requires agencies to utilize notice-and-comment procedures before engaging in certain types of actions. Although petitioner asserted in his opening brief below that VA was required to use notice-and-comment procedures before including the Waterways Provision in the Manual, petitioner does not press that argument in this Court. Rather, petitioner argues that Section 553 "refers" to the Waterways Provision and agency interpretations like it by explicitly *excluding* "interpretative rules" from Section 553's notice-and-comment requirements.

Because petitioner did not raise that argument in his certiorari petition, and advanced it in the Federal Circuit only in his petition for rehearing en banc, this Court should not consider it. In any event, the argument lacks merit. A VA action to which Section 553 "refers" is one that is *encompassed* by Section 553, *i.e.*, an action to which Section 553's notice-and-comment requirements apply. As petitioner now acknowledges, VA's adoption of the Waterways Provision was not subject to those requirements.

C. Even if the Waterways Provision constituted an "action of the Secretary to which section 552(a)(1) or section 553 of title 5 (or both) refers," and was therefore "subject to judicial review" under the VJRA, 38 U.S.C. 502, petitioner's current challenge would be barred. The VJRA requires that any pre-enforcement review of the specified categories of VA actions must be conducted in accordance with the judicial-review provisions of the APA. Because the Waterways Provision is not binding on the Board, it is not "final agency action" subject to immediate review under the APA, 5 U.S.C. 704. The VJRA therefore does not authorize petitioner's current challenge.

By contrast, binding VA actions like regulations and precedential General Counsel opinions are "final agency action[s]" for APA purposes and are subject to pre-enforcement review under the VJRA. 5 U.S.C. 704. And while the Waterways Provision is not subject to direct pre-enforcement review in the Federal Circuit, petitioner has alternative means available to obtain judicial review of the interpretation that Provision reflects. Most significantly, in petitioner's pending appeal from VA's denial of his individual benefits claim, petitioner can argue that he served "in the Republic of Vietnam" for purposes of the Agent Orange Act, and he can obtain judicial review of the legal standard that the Board applied in reaching a contrary conclusion.

## ARGUMENT

VA decisions regarding veterans' benefits are typically reviewable, if at all, through appeals from denials of individual claims. See 38 U.S.C. 511(a), 7104, 7105. The VJRA's authorization of pre-enforcement review under specified circumstances, 38 U.S.C. 502, consti-

tutes an important but limited exception to that principle. Pre-enforcement review is available only for a VA action to which 5 U.S.C. 552(a)(1) or 553 refers, and it may be conducted only in accordance with the judicial-review provisions of the APA.

The VA action challenged here—an interpretation of an interpretation of a regulation, contained in a subprovision of a manual that does not bind the agency—is not among the narrow class of actions that are subject to pre-enforcement review under 38 U.S.C. 502. The Waterways Provision is neither an "interpretation[] of general applicability formulated and adopted by the agency," 5 U.S.C. 552(a)(1)(D), nor a substantive rule promulgated through the notice-and-comment procedures of 5 U.S.C. 553. And even if it satisfied one or both of those criteria, pre-enforcement review still would be unavailable, because the VJRA authorizes such review only in accordance with the APA's judicial-review provisions, and the Waterways Provision is not "final agency action" reviewable under 5 U.S.C. 704. Petitioner may challenge the VA interpretation embodied in the Waterways Provision, but only in the course of appealing an adverse VA benefits decision that relies on that interpretation.

### A. The Waterways Provision Is Not Reviewable Under The VJRA's Cross-Reference To 5 U.S.C. 552(a)(1)

The VJRA authorizes pre-enforcement review of a VA action "to which section 552(a)(1) * * * of title 5 * * * refers." 38 U.S.C. 502. Section 552(a)(1), which is part of FOIA, requires federal agencies to "publish in the Federal Register for the guidance of the public" several categories of documents, including "descriptions of its central and field organization," "statements of the general course and method by which its functions

are channeled and determined," and "rules of proce-dure." 5 U.S.C. 552(a)(1)(A)-(C). Section 552(a)(1)(D) requires agencies to publish "substantive rules of gen-eral applicability adopted as authorized by law, and statements of general policy or interpretations of gen-eral applicability formulated and adopted by the agency." 5 U.S.C. 552(a)(1)(D). Section 552(a)(1)(E) requires each agency to publish "each amendment, revision, or repeal of" documents within the enumerated catego-ries. 5 U.S.C. 552(a)(1)(E). Finally, Section 552(a)(1) states that, "[e]xcept to the extent that a person has ac-tual and timely notice of the terms thereof, a person may not in any manner be required to resort to, or be adversely affected by, a matter required to be published in the Federal Register and not so published." 5 U.S.C. 552(a)(1).

The Waterways Provision, contained in Part IV, Subpart ii, Chapter 1, Section H, Topic 2 of the VA Ad-judication Manual, "conveys guidance to VA adjudica-tors" on how to determine whether certain coastal wa-terways are "inland waterways" and therefore encom-passed by a prior VA interpretation of a regulation that interprets the Agent Orange Act's reference to "the Re-public of Vietnam." Pet. App. 6a-7a, 11a (brackets and citations omitted). The Waterways Provision is "not binding on private parties or the agency." *Id.* at 12a. Any veteran dissatisfied with a VA adjudicator's deci-sion involving the Waterways Provision may appeal to the Board, which must conduct "*de novo* review" of the claim, *Henderson ex rel. Henderson* v. *Shinseki*, 562 U.S. 428, 431 (2011), and may not rely on any Manual provision without "independently reviewing the matter" and "provid[ing] a reasoned explanation" for its conclu-sion, *Overton* v. *Wilkie*, 30 Vet. App. 257, 264 (2018).

Petitioner does not suggest that the Waterways Provisions must be published in the Federal Register under Section 552(a)(1)(A)-(C). Nor does he contend that the Waterways Provision falls within Section 552(a)(1)(D)'s requirement that agencies publish in the Federal Register "substantive rules of general applicability adopted as authorized by law," or (at least in this Court) within Section 552(a)(1)(D)'s requirement that agencies publish in the Federal Register "statements of general policy * * * formulated and adopted by the agency." 5 U.S.C. 552(a)(1)(D). Petitioner instead argues (Pet. Br. 20) that the Waterways Provision is subject to pre-enforcement review because it is an "interpretation[] of general applicability formulated and adopted by the agency." 5 U.S.C. 552(a)(1)(D). The court of appeals correctly rejected that assertion. The text, structure, purpose, and history of the VJRA and FOIA all confirm that petitioner cannot obtain pre-enforcement review of nonbinding guidance contained in an agency manual that merely clarifies an existing interpretation.

### 1. *Section 552(a)(1)(D) does not encompass the Waterways Provision*

Section 552(a)(1)(D)'s directive that agencies publish in the Federal Register "interpretations of general applicability formulated and adopted by the agency," 5 U.S.C. 552(a)(1)(D), must be read in conjunction with Section 552(a)(2), which also addresses agency interpretations. Section 552(a)(2)(B) requires an agency to "make available for public inspection in an electronic format * * * interpretations which have been adopted by the agency and are not published in the Federal Register." 5 U.S.C. 552(a)(2)(B). FOIA thus distinguishes between interpretations "of general applicability formulated and adopted by the agency," 5 U.S.C. 552(a)(1)(D),

and interpretations "adopted by the agency" that "are not published in the Federal Register," 5 U.S.C. 552(a)(2)(B). The two categories of "interpretations" described in those provisions must be distinct, since interpretations in the first category are required to be published in the Federal Register, while the second category is defined in part by reference to the *absence* of Federal Register publication.

Courts have accordingly long read Sections 552(a)(1)(D) and 552(a)(2)(B) in tandem, see, *e.g.*, *Capuano* v. *National Transp. Safety Bd.*, 843 F.2d 56, 57-58 (1st Cir. 1988) (Breyer, J.), and concluded that they "can only mean that interpretations of general applicability are to be published in the Federal Register while all other interpretations adopted by an agency" need not, *Anderson* v. *Butz*, 550 F.2d 459, 463 (9th Cir. 1977) (citation omitted). Respected commentators have taken the same view. See, *e.g.*, Kenneth Culp Davis, *Administrative Law Treatise* § 3A.7, at 125 (Supp. 1970) (Davis); 15 *Federal Procedure* § 38.26 (2011); 1 James T. O'Reilly, *Federal Information Disclosure* § 6.3 (2017). Petitioner appears to agree that interpretations that "fit within Section 552(a)(2)(B)" cannot also "fit within" Section 552(a)(1)(D). Pet. Br. 23.[8]

That distinction is critical here. Although the VJRA authorizes pre-enforcement review of an "action of the Secretary to which section 552(a)(1) * * * refers," it

---

[8] There has been extensive discussion in this litigation about whether Sections 552(a)(1)(D) and 552(a)(2)(C) are mutually exclusive. See Pet. Br. 35-38; Pet. 16-22; Pet. App. 25a (Dyk, J., dissenting in part and concurring in the judgment); Pet. App. 32a (Taranto, J., concurring in the denial of rehearing en banc). Whatever the merits of that debate, it does not affect the fact that Sections 552(a)(1)(D) and 552(a)(2)(B) are mutually exclusive.

does not mention Section 552(a)(2). 38 U.S.C. 502. Congress thus authorized pre-enforcement review of "interpretations of general applicability formulated and adopted by the agency," 5 U.S.C. 552(a)(1)(D), but not of "interpretations * * * adopted by the agency," 5 U.S.C. 552(a)(2)(B). See *Disabled Am. Veterans* v. *Secretary of Veterans Affairs*, 859 F.3d 1072, 1077-1078 (Fed. Cir. 2017); see also *Cyan, Inc.* v. *Beaver Cnty. Emps. Ret. Fund*, 138 S. Ct. 1061, 1070 (2018) ("[W]hen Congress wants to refer only to a particular subsection or paragraph, it says so.") (brackets and citation omitted).

Although the need to distinguish between those terms presents a "troublesome problem," Davis § 3A.7, at 125, at least two textual differences shed light on their respective meanings. First, Section 552(a)(1)(D) describes an interpretation "of general applicability," while Section 552(a)(2)(B) does not. 5 U.S.C. 552(a)(1)(D). Second, Section 552(a)(1)(D) is subject to the proviso that, "[e]xcept to the extent that a person has actual and timely notice of the terms thereof, a person may not in any manner be required to resort to, or be adversely affected by, a matter required to be published in the Federal Register and not so published." 5 U.S.C. 552(a)(1). Section 552(a)(2)(B) is not subject to that limitation.

a. Relying on dictionary definitions of "'general'" and "'applicable,'" petitioner contends that any "interpretation of a legal provision that governs an entire category or class of people to which that provision is relevant, and not just specific individuals or particular fact patterns," is an interpretation "'of general applicability.'" Pet. Br. 21; see *id.* at 22-32 (relying on other sources distinguishing between "'interpretations of general applicability'" and "case-specific" or "fact-specific"

interpretations) (citation omitted). That argument lacks merit. Relevance to more than one person or fact pattern is a *necessary*, but not a *sufficient*, condition for an interpretation to be one "of general applicability." 5 U.S.C. 552(a)(1)(D).

As an initial matter, petitioner's construction of "general" in Section 552(a)(1)(D) as simply the opposite of "specific" cannot be squared with other words in the same provision. 5 U.S.C. 552(a)(1)(D). Immediately before its reference to "interpretations of general applicability," Section 552(a)(1)(D) describes "statements of general policy." *Ibid.* "[I]dentical words and phrases within the same statute should normally be given the same meaning," *Hall* v. *United States*, 566 U.S. 506, 519 (2012) (citation omitted), and that common-sense understanding applies with particular force to "the same word, *in the same statutory provision*," *United States* v. *Santos*, 553 U.S. 507, 522 (2008) (opinion of Scalia, J.). But if "general" means simply broader than one person or case, the word would be superfluous in Section 552(a)(1)(D)'s reference to "statements of general policy," because a "policy" necessarily extends to more than one person or case. 5 U.S.C. 552(a)(1)(D); see, *e.g.*, *Merriam Webster's Collegiate Dictionary* 901 (1996) (defining "policy" as "a high-level overall plan embracing the general goals and acceptable procedures especially of a governmental body").

Petitioner's expansive conception of the "interpretations of general applicability" that agencies must publish in the Federal Register also contradicts decades of FOIA case law and administrative practice. 5 U.S.C. 552(a)(1)(D). As then-Judge Breyer explained for the First Circuit more than 30 years ago, courts that have considered nonbinding instructions in agency manuals

of the kind at issue here have "unanimously held that publication in the Federal Register under § 552(a)(1) is not required." *Capuano*, 843 F.2d at 58; see, *e.g.*, *Notaro* v. *Luther*, 800 F.2d 290, 291 (2d Cir. 1986) (per curiam) (holding that the United States Parole Commission did not need to publish a nonbinding "training aid" considered in adjudicating a prisoner's parole request).

This Court, moreover, has repeatedly considered agency interpretations contained in nonbinding agency manuals that were not published in the Federal Register. See, *e.g.*, *Washington State Dep't of Soc. & Health Servs.* v. *Guardianship Estate of Keffeler*, 537 U.S. 371, 385 (2003) (addressing "administrative interpretations" in the Program Operations Manual System (POMS) of the Social Security Administration (SSA)); *Shalala* v. *Guernsey Mem'l Hosp.*, 514 U.S. 87, 90-91 (1995) (similar with respect to Medicare Provider Reimbursement Manual); *Schweiker* v. *Hansen*, 450 U.S. 785, 789 (1981) (per curiam) (similar with respect to precursor to the POMS, a "13-volume handbook for internal use by thousands of SSA employees" that did "not bind the SSA"). Manuals like these are filled with nonbinding interpretations that assist agency employees in processing claims brought by a broad swath of the public. "Clearly it is in the public interest for an agency with over 80,000 employees, making more than 1,250,000 disability determinations alone a year  * * *  to issue housekeeping instructions to its employees in the interest of uniform, fair and efficient administration." *Hansen* v. *Harris*, 619 F.2d 942, 956 (2d Cir. 1980) (Friendly, J., dissenting), rev'd, 450 U.S. 785 (1981). Under petitioner's approach, however, all of those interpretations would appear to constitute "interpretations of general applicability" that must be published in the Federal Register.

5 U.S.C. 552(a)(1)(D). Petitioner recognizes that Section 552(a)(1)(D) cannot be read to require agencies to publish so many materials as to "bloat the Federal Register to the point of bursting." Pet. Br. 22. His proposed reading, however, would have just that effect.[9]

b. As noted above, the "interpretations of general applicability formulated and adopted by the agency" that are described in Section 552(a)(1)(D) are distinct from the "interpretations adopted by the agency" described in Section 552(a)(2)(B). Interpretations in the former category must be of "general applicability," and they are subject to the proviso that a person lacking actual notice "may not * * * be required to resort to, or be adversely affected by," a matter that the agency has unlawfully failed to publish. 5 U.S.C. 552(a)(1). Both those distinctions shed light on the publication requirement in Section 552(a)(1)(D), and both indicate that this requirement applies only to interpretations that have some binding effect on either the agency or the public. *Ibid.*; see *Morton* v. *Ruiz*, 415 U.S. 199, 232-236 (1974).

i. As initially enacted, Section 3(a) of the APA required agencies to publish in the Federal Register "substantive rules adopted as authorized by law and statements of general policy or interpretations formulated and adopted by the agency for the guidance of the public, but not rules addressed to and served upon named persons in accordance with law." APA § 3(a), 60 Stat. 238. The APA further provided that "[n]o person shall

---

[9] Petitioner suggests that requiring Federal Register publication of the Waterways Provision "faithfully serves Congress's goal of 'the guidance of the public.'" Pet. Br. 22 (quoting 5 U.S.C. 552(a)(1)). But that goal is equally, if not better, served by making the Waterways Provision available online on the same VA website that veterans use to submit their disability-compensation claims.

in any manner be required to resort to organization or procedure not so published." *Ibid.* The Senate Report accompanying the APA explained that Section 3(a) "forbids secrecy of rules binding or applicable to the public, or of delegations of authority." S. Rep. No. 752, 79th Cong., 1st Sess. 12 (1945); see H.R. Rep. No. 1980, 79th Cong., 2d Sess. 22 (1946) (similar). The understanding that only "binding" agency interpretations must be published in the Federal Register followed directly from the Federal Register Act, ch. 417, 49 Stat. 500 (1935), which required publication of documents that the President determined to "have general applicability and legal effect." § 5(a)(2), 49 Stat. 501.

The *Attorney General's Manual on the Administrative Procedure Act* (1947) (*APA Manual*)—a resource this Court "ha[s] often found persuasive," *Norton* v. *Southern Utah Wilderness All.*, 542 U.S. 55, 63 (2004)— similarly indicates that Section 3(a) applied paradigmatically to binding regulations. The *APA Manual* summarized Section 3(a) as pertinent to "'substantive rules,'" adding that "[s]tatements of general policy and interpretations need be published only if they are formulated and adopted by the agency for the guidance of the public," a matter that the APA "leaves each agency free to determine for itself." *APA Manual* 22; see Randy S. Springer, *Gatekeeping and the* Federal Register: *An Analysis of the Publication Requirement of Section 552(a)(1)(D) of the Administrative Procedure Act*, 41 Admin. L. Rev. 533, 536 (1989) ("The legislative history of the APA emphasizes that the essential function of the *Federal Register* is to provide notice of government regulations."). Courts interpreting the original APA accordingly described Section 3(a) as applicable to rules "which the public is required to obey or with

which it is to avoid conflict." *Airport Comm'n of For-syth Cnty.* v. *Civil Aeronautics Bd.*, 300 F.2d 185, 188 (4th Cir. 1962); see, *e.g.*, *United States* v. *449 Cases, Containing Tomato Paste*, 212 F.2d 567, 578 (2d Cir. 1954) (Frank, J., dissenting) (explaining that Section 3(a) required publication of "binding standards").

ii. Section 552(a) took its current form with the enactment of FOIA in 1966. Act of July 4, 1966; Pub. L. No. 89-487, 80 Stat. 250; see Act of June 5, 1967, Pub. L. No. 90-23, 81 Stat. 54 (codifying FOIA in 5 U.S.C. 552). Among other changes, FOIA separated the "interpretations of general applicability formulated and adopted by the agency" that must be published in the Federal Register under 5 U.S.C. 552(a)(1)(D) from the "interpretations * * * adopted by the agency" that must only be made available under 5 U.S.C. 552(a)(2)(B). FOIA also "imposed" a "new sanction * * * for failure to publish" the required materials in the Federal Register, S. Rep. No. 813, 89th Cong., 1st Sess. 6 (1965)—the proviso that "a person may not in any manner be required to resort to, or be adversely affected by, a matter required to be published in the Federal Register and not so published," 5 U.S.C. 552(a)(1); see *Ruiz*, 415 U.S. at 233 & n.27. The *Attorney General's Memorandum on the Public Information Section of the Administrative Procedure Act* (1967) (*FOIA Memorandum*)—on which this Court has relied in construing Section 552, see, *e.g.*, *National Archives & Records Admin.* v. *Favish*, 541 U.S. 157, 169 (2004)—explains that Congress enacted that new sanction to deprive noncompliant agency "rules, statements of policy, and interpretations" of general applicability of their "'force and effect,'" *FOIA Memorandum* 10-13 (citation omitted). That reference to "force

and effect" reflects the same understanding that underlies the Federal Register Act and the initial APA —that only binding agency materials, such as regulations, would constitute interpretations of general applicability subject to the publication requirement.

Accordingly, in the decades since FOIA's enactment, courts have consistently held that Section 552(a)(1)(D)'s "requirement for publication attaches only to matters which if not published would adversely affect a member of the public." *New York* v. *Lyng*, 829 F.2d 346, 354 (2d Cir. 1987) (quoting *Hogg* v. *United States*, 428 F.2d 274, 280 (6th Cir. 1970), cert. denied, 401 U.S. 910 (1971)); see *ibid.* (collecting cases from other courts of appeals adopting the same rule); see *Cathedral Candle Co.* v. *United States Int'l Trade Comm'n*, 400 F.3d 1352, 1370 (Fed. Cir. 2005) (same); *Federal Procedure* § 38:26 (same); Colleen R. Courtade, Annotation, *What Rules, Statements, and Interpretations Adopted by Federal Agencies Must be Published*, 77 A.L.R. Fed. 572 (1986 & Supp. 2018-2019) (same). That will be true only of interpretations that are "binding on" the agency or on persons who interact with it. Pet. App. 12a.

This Court's decision in *Morton* v. *Ruiz*, *supra*, is instructive. Relying on Section 552(a)(1)(D) and the "sanction" for an agency's failure to publish material that "'adversely affect[s]'" a member of the public, the Court in *Ruiz* concluded that the Bureau of Indian Affairs (BIA) could not enforce a provision of a staff manual that had a "substantive" effect on Indians seeking benefits. 415 U.S. at 233, 235. The Court explained that BIA's failure to treat the manual provision "as a legislative-type rule" that must be published under Section 552(a)(1)(D) rendered it "ineffective" and deprived it of "binding effect." *Id.* at 236; see *id.* at 235 (noting the

government's argument that the provision would be "endowed with the force of law" only if it was "published in the Federal Register"). The Court's analysis underscores that Section 552(a)(1)(D) is best read to require, at a minimum, that an "interpretation[] of general applicability formulated and adopted by the agency" have a "binding effect" on the agency or interested members of the public. Pet. App. 12a.

iii. Under that approach, the Waterways Provision falls outside Section 552(a)(1)(D) because it does not bind VA or any benefits claimant. The provision appears only in an internal manual that "conveys guidance to VA adjudicators," Pet. App. 11a (brackets and citation omitted), who use that guidance to "gather[] information necessary to determine whether" VA's separate "regulatory test" is satisfied, *Haas* v. *Peake*, 525 F.3d 1168, 1196 (Fed. Cir. 2008). Although the Manual is binding on frontline adjudicators, any veteran who is dissatisfied with the adjudicator's decision may appeal to the Board and obtain de novo review. 38 U.S.C. 7104(a); see *Henderson*, 562 U.S. at 431.

In conducting that review, the Board is "not bound by Department manuals, circulars, or similar administrative issues." 38 C.F.R. 19.5. Rather, the Board is "bound in its decisions" only "by the regulations of the Department, instructions of the Secretary, and the precedent opinions of the chief legal officer of the Department." 38 U.S.C. 7104(c). And even when the Board's position ultimately accords with the interpretation in the Manual, "[t]he Board may not simply rely on the nonbinding [Manual] position without analysis," but instead "must provide adequate reasons or bases for" its decision. *Overton*, 30 Vet. App. at 259.

The Board's decisions illustrate the nonbinding character of the Manual. According to a database search conducted by VA, the Board has cited the Manual in less than five percent of its decisions over the past three years. In many of the cases in which it has cited the Manual, the Board has emphasized that it is nonbinding. And in a number of cases, the Board has expressly *rejected* interpretations contained in the Manual. For example, the Board rejected guidance in the Manual instructing that a veteran's submission of medical records constitutes submission of a claim for purposes of determining when a veteran is entitled to disability compensation. See *Title Redacted*, Bd. Vet. App. No. 18122784, 2018 WL _____ (July 31, 2018) (rejecting Manual IV.ii.2.C).[10] In explaining its decision, the Board contrasted the nonbinding provisions in the Manual with "the generally applicable rules" in the relevant statutes and VA regulations, and it concluded that the interpretation in the Manual was "not persuasive" and therefore "not for application" to its decision. *Ibid.* In another case, the Board rejected a Manual provision instructing that a veteran's death should be presumed to be connected with his service if a service-connected disability is shown on a death certificate. See *Title Redacted*, Bd. Vet. App. No. 1633157, 2016 WL 5850298, at *7 (Aug. 22, 2016) (rejecting Manual IV.iii.2.A.1.B). The Board noted that it had "considered" the Manual provision and a related VA letter but did "not find them controlling," given that "the most probative evidence indicates that [a particular veteran's] service-connected disabilities did not cause or contribute to his death." *Ibid.*

---

[10] The decision is available at https://www.va.gov/vetapp18/files7/18122784.txt.

Although the Board's rejections of Manual provisions made it more difficult for the veterans in those cases to obtain benefits, that is not always the case. In a number of decisions, the Board has rejected Manual provisions in favor of interpretations more advantageous to veterans. For example, the Board rejected the Manual's interpretation of the term "original claim" for purposes of determining the effective date of disability-benefits compensation under the Fully Developed Claim program, thereby allowing a veteran to receive additional benefits. *Title Redacted*, Bd. Vet. App. No. 18102879, 2018 BVA Lexis 83337 (May 16, 2018) (rejecting Manual III.i.3.B.4.a). The Board cited the Federal Circuit's decision in this case as a basis for departing from the Manual's interpretation. *Ibid.* In other cases, the Board has departed from interpretations in the Manual to, *inter alia*, award benefits based on a more generous interpretation of "moderate" or "marked" limitations on movement, *Title Redacted*, Bd. Vet. App. No. 1800365, 2018 WL 1195436 (Jan. 4, 2018) (rejecting Manual III.iv.4.A.4.o); adopt a more forgiving standard for determining a veteran's competency, *Title Redacted*, Bd. Vet. App. No. 1427401, 2014 WL 3959707 (June 17, 2014) (rejecting Manual III.iv.8.A.4.a); and allow for easier verification of the dependent status of a veteran's spouse, *Title Redacted*, Bd. Vet. App. No. 1639810, 2016 BVA Lexis 46159 (Sept. 30, 2016) (rejecting multiple Manual provisions).

The Board's willingness to reject Manual interpretations across a broad category of cases underscores that the Manual is not binding on the Board either in theory or in practice. Contra Pet. Br. 41-43. And because the Board renders the "agency's final decision" on disability-benefits claims, *Henderson*, 562 U.S. at 431; see 38 U.S.C.

7104, its independent interpretation is the only one that can "adversely affect[]" a member of the public, 5 U.S.C. 552(a)(1). The Waterways Provision of the Manual is accordingly not subject to the Federal Register publication requirement of Section 552(a)(1) and thus not subject to pre-enforcement review under the VJRA, 38 U.S.C. 502.

c. Petitioner suggests (Pet. Br. 38-39) that limiting the term "interpretations of general applicability" to binding interpretations would nullify the inclusion of such interpretations in Section 552(a)(1)(D) because "*[n]o* interpretive rule—whether generally applicable or not—truly binds all final agency decisionmakers." Pet. Br. 39. That is not correct. Although an interpretive rule is not legally binding "on regulated parties," *National Mining Ass'n* v. *McCarthy*, 758 F.3d 243, 251-253 (D.C. Cir. 2014) (Kavanaugh, J.); see *Perez* v. *Mortgage Bankers Ass'n*, 135 S. Ct. 1199, 1206 (2015), an agency can direct its own personnel to follow particular interpretations. Indeed, as noted above, Congress directed that the Board "shall be bound" not only "by the regulations of the Department," but also by the "instructions of the Secretary, and the precedent opinions of the chief legal officer of the Department." 38 U.S.C. 7104(c).

A precedential opinion of the VA General Counsel is the prototypical example of an interpretation that binds the agency, falls within Section 552(a)(1)(D), and therefore can be challenged in a pre-enforcement action in the Federal Circuit under 38 U.S.C. 502. Indeed, a number of the Federal Circuit's decisions exercising pre-enforcement review under the VJRA have involved precedential General Counsel opinions. See, *e.g.*, *Snyder* v. *Secretary of Veterans Affairs*, 858 F.3d 1410, 1412-

1413 (Fed. Cir. 2017) (explaining that a precedential General Counsel opinion is reviewable under Section 502 as "a formal agency action that is binding on the Board"); *Splane* v. *West*, 216 F.3d 1058, 1062, 1064, (Fed. Cir. 2000) (explaining that a precedential General Counsel opinion "binding on the Board by statute" but not binding "outside the agency" is reviewable under Section 502); see also Pet. App. 12a (observing that the Federal Circuit has found particular VA interpretations to be encompassed by Section 552(a)(1) "precisely because they had a binding effect on parties or entities other than internal VA adjudicators").

The VJRA's legislative history reflects the same understanding. The House Report describes the VJRA as authorizing pre-enforcement "review [of] VA policy as expressed in VA regulations and interpretations by the General Counsel." H.R. Rep. No. 963, 100th Cong., 2d Sess. Pt. 1, at 26 (1988) (VJRA House Report). The Senate Report likewise characterizes the pre-enforcement review provision as a way to "submit the VA's institutional decisions—i.e., regulations—to court review." S. Rep. No. 418, 100th Cong., 2d Sess. 112 (1988) (VJRA Senate Report).

As the court of appeals correctly explained, VA's decision to provide guidance to agency adjudicators about the meaning of "inland waterways" through an amendment to the Manual, rather than through a more formal mechanism such as a precedential General Counsel opinion, "comes at a price." Pet. App. 13a (quoting *Mortgage Bankers*, 135 S. Ct. at 1204). A precedential General Counsel opinion (or a substantive rule) would have been directly reviewable in the Federal Circuit under Section 502, but it also would have bound the Board.

Because VA choose to proceed instead through a revision to the Manual, review of VA's interpretation must occur through an appeal from an individual determination, but the Board in resolving that appeal will not be bound by the interpretation in the Manual. Pet. App. 13a-14a; see also *id.* at 14a (noting that "agencies' 'interpretations contained in . . . agency manuals . . . do not warrant'" deference under *Chevron U.S.A. Inc.* v. *Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984)) (quoting *Christensen* v. *Harris Cnty.*, 529 U.S. 576, 587 (2000) (citations omitted)).

### 2. *The broader structure of FOIA reinforces the conclusion that the Waterways Provision does not fall within Section 552(a)(1)(D)*

In interpreting a statute, "a word is given more precise content by the neighboring words with which it is associated." *United States* v. *Williams*, 553 U.S. 285, 294 (2008); see, *e.g.*, *Freeman* v. *Quicken Loans, Inc.*, 566 U.S. 624, 634-635 (2012). The Manual provision at issue here is a far better fit with the neighboring words of Section 552(a)(2) than with those of Section 552(a)(1).

As detailed above, Section 552(a)(1) identifies various categories of materials that agencies must "publish in the Federal Register for the guidance of the public." 5 U.S.C. 552(a)(1); see 5 U.S.C. 552(a)(1)(A)-(E); pp. 8-9, *supra.* In addition to "interpretations of general applicability formulated and adopted by the agency," 5 U.S.C. 552(a)(1)(D), materials subject to Section 552(a)(1)'s publication requirement include "descriptions of [the agency's] central and field organization"; "statements of the general course and method by which [the agency's] functions are channeled and determined, including the nature and requirements of all formal and

informal procedures available"; and "rules of procedure, descriptions of forms available or the places at which forms may be obtained, and instructions as to the scope and contents of all papers, reports, or examinations," 5 U.S.C. 552(a)(1)(A)-(C). Those requirements are characterized by their broad sweep and applicability to the agency as a whole. Section 552(a)(1)(D) also requires publication of "substantive rules of general applicability adopted as authorized by law," 5 U.S.C. 552(a)(1)(D), which bind the whole agency and have the "force and effect of law," *Mortgage Bankers*, 135 S. Ct. at 1203 (citation omitted).

By contrast, Section 552(a)(2), in enumerating the materials agencies must "make available for public inspection in an electronic format," describes materials that are characterized by their narrow applicability and have at most a limited binding effect. 5 U.S.C. 552(a)(2). In addition to "interpretations which have been adopted by the agency and are not published in the Federal Register," 5 U.S.C. 552(a)(2)(B), Section 552(a)(2) requires electronic access to "final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases," and "administrative staff manuals and instructions to staff that affect a member of the public," 5 U.S.C. 552(a)(2)(A) and (C). As a matter of VA practice, final opinions and orders in the adjudication of cases are always nonprecedential and therefore have no binding effect beyond the individual veteran's case. 38 C.F.R. 20.1303. Concurring and dissenting opinions of course have no binding effect even in the case in which they are issued. And VA administrative staff manuals and staff instructions likewise do not bind the agency. 38 C.F.R. 19.5.

As an interpretation of an interpretation of a regulation that implements a statute, and that does not bind the agency in any adjudication, the Waterways Provision is far more similar to the agency materials that Section 552(a)(2) designates for electronic access than to those that Section 552(a)(1) designates for Federal Register publication. The structure of the statute thus underscores that the Waterways Provision is a "interpretation[] which ha[s] been adopted by the agency," 5 U.S.C. 552(a)(2)(B), rather than an "interpretation[] of general applicability formulated and adopted by the agency" under 5 U.S.C. 552(a)(1)(D). See, *e.g.*, *NLRB* v. *Sears, Roebuck & Co.*, 421 U.S. 132, 153 (1975) (reading FOIA provision in light of "the other provisions of the Act").

Finally, VA's decision to make the interpretation at issue here available online in its adjudication manual, rather than publishing it in the Federal Register, reflects the agency's own judgment that the interpretation is not generally applicable and subject to Section 552(a)(1)(D). Cf. *American Mining Cong.* v. *Mine Safety & Health Admin.*, 995 F.2d 1106, 1109 (D.C. Cir. 1993) (explaining that a rule the agency chooses not to publish in the Code of Federal Regulations is less likely to be a legislative rule); *Brock* v. *Cathedral Bluffs Shale Oil Co.*, 796 F.2d 533, 539 (D.C. Cir. 1986) (Scalia, J.) (similar). To be sure, VA cannot insulate from pre-enforcement review an interpretation described in Section 552(a)(1)(D) simply by placing it in the Manual and declining to publish it in the Federal Register. See Pet. App. 12a. But Congress's decision to include "administrative staff manuals and instructions to staff that affect a member of the public" in Section 552(a)(2) rather than Section 552(a)(1) still has interpretive significance. 5 U.S.C. 552(a)(2)(C). Although the court below did not

treat Sections 552(a)(1) and 552(a)(2)(C) as mutually exclusive, it correctly viewed "[t]he differences in language between" the two as "inform[ing] how to read each provision." Pet. App. 32a (Taranto, J., concurring in the denial of rehearing en banc).

### B. The Waterways Provision Is Not Reviewable As A VA Action To Which 5 U.S.C. 553 "Refers"

The VJRA authorizes direct Federal Circuit review of any VA action "to which section 552(a)(1) or 553 of title 5 (or both) refers." 38 U.S.C. 502. Section 553(b) of Title 5, which prescribes the contents that an agency must include in a notice of proposed rulemaking, states that those requirements "do[] not apply" to, *inter alia*, "interpretative rules." 5 U.S.C. 553(b)(A); see *Mortgage Bankers*, 135 S. Ct. at 1206 (describing Section 553's "exemption of interpretive rules from the notice-and-comment process"). Petitioner argues in the alternative (Br. 43-48) that the Waterways Provision is reviewable under the VJRA because it is an interpretive rule, and Section 553 "refers" to "interptetative rules" in the language that *excludes* them from notice-and-comment requirements. That argument is both forfeited and wrong.

1. Petitioner did not properly preserve this argument below or in this Court. The Federal Circuit stated that "[t]he parties agree that § 553 is not at issue in this proceeding." Pet. App. 8a. The petition for a writ of certiorari did not mention that statement, let alone contest it. The Court therefore should decline to consider petitioner's current argument. See, *e.g.*, *Chandris, Inc.* v. *Latsis*, 515 U.S. 347, 353 n.* (1995) (refusing to consider argument because "petitioners did not raise the issue in the petition for certiorari").

Petitioner likewise failed to preserve his current Section 553 argument below. In his opening brief to the Federal Circuit, petitioner argued that the Waterways Provision was inconsistent with Section 553, and therefore invalid, because VA had not promulgated it through notice-and-comment rulemaking. Pet. C.A. Second Corrected Br. 26-29. That argument rested on the premise that the Waterways Provision is *actually subject* to Section 553's notice-and-comment requirements. With respect to the Federal Circuit's jurisdiction, petitioner stated that "[b]oth APA provisions set forth at 5 U.S.C. § 552(a)(1)(D) and § 553(b) are implicated by [VA's] Final Rule." *Id.* at 2. After the government's responsive brief argued that the court of appeals lacked jurisdiction under Section 502, Gov't C.A. Br. in Opp. 29-35, petitioner contended in his reply brief that the court had Section 502 jurisdiction based on Section 552(a)(1)(D), without citing Section 553, Pet. C.A. Reply Br. 11-14. Because petitioner appeared to have abandoned any jurisdictional argument based on Section 553, the Federal Circuit understandably concluded that the VJRA's cross-reference to Section 553 was not at issue in this case. See Pet. App. 8a.

Petitioner contends that he "has consistently invoked Section 502's cross-reference to Section 553 as a basis for jurisdiction." Pet. Br. 47. But quite apart from petitioner's failure to cite Section 553 in his Federal Circuit reply brief, the Section 553 argument that petitioner advances in this Court is fundamentally different from any jurisdictional theory suggested in his opening brief below. In his Federal Circuit opening brief, petitioner argued that the Waterways Provision is an action to which Section 553's notice-and-comment require-

ments *actually apply*. If that were correct, the Waterways Provision would unquestionably be an action to which Section 553 "refers." In this Court, by contrast, petitioner argues that Section 553 "refers" to the Waterways Provision (and actions like it) only by *exempting* such actions from notice-and-comment requirements. Petitioner first made *that* argument in his petition for rehearing below, Pet. C.A. Reh'g Br. 15-16, but courts do not generally consider issues raised for the first time in rehearing petitions. See, *e.g.*, *United States* v. *Levy*, 379 F.3d 1241, 1242 (11th Cir. 2004) (per curiam) (collecting cases), vacated and remanded on other grounds, 545 U.S. 1101 (2005).

2. In any event, petitioner's current argument lacks merit. "An action of the Secretary to which section 552(a)(1) or 553 of title 5 (or both) refers," 38 U.S.C. 502, is one that is *encompassed by* Section 552(a)(1) or Section 553, *i.e.*, an action to which one or both of those provisions apply. Adjacent language in Section 553 reinforces that conclusion. In addition to exempting interpretive rules from notice-and-comment rulemaking requirements, Section 553 states that those requirements do not apply to such matters as "a military or foreign affairs function of the United States." 5 U.S.C. 553(a). On petitioner's approach, a litigant could bring a pre-enforcement challenge to VA's action on "a military or foreign affairs function of the United States," on the theory that Section 553 "refers" to such actions by excluding them from its coverage. *Ibid.* Petitioner invokes the interpretive principle "that provisions for benefits to members of the Armed Services are to be construed in the beneficiaries' favor." Pet. Br. 45 (quoting *Henderson*, 562 U.S. at 441). But that principle applies only when a statute is genuinely ambiguous, see,

*e.g.*, *Nielson* v. *Shinseki*, 607 F.3d 802, 808 n.4 (Fed. Cir. 2010); *Sears* v. *Principi*, 349 F.3d 1326, 1331-1332 (Fed. Cir. 2003), cert. denied, 541 U.S. 960 (2004), and there is no genuine ambiguity here.

### C. The Waterways Provision Is Not Reviewable Under Section 502 Because It Is Not Final Agency Action

1. Even if the Waterways Provision constituted an "action of the Secretary to which section 552(a)(1) or 553 of title 5 (or both) refers," and was therefore "subject to judicial review" under the VJRA, 38 U.S.C. 502, petitioner's current challenge still could not go forward. After authorizing judicial review of the specified categories of VA actions, the VJRA provides that "[s]uch review shall be in accordance with chapter 7 of title 5"—that is, the judicial-review provisions of the APA. *Ibid.*; see 5 U.S.C. 701-706. Those provisions authorize judicial review of "final agency action," while stating that "[a] preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action." 5 U.S.C. 704. Because the Waterways Provision is not a "final agency action" that would be subject to pre-enforcement review under the APA, the VJRA does not authorize petitioner's current request for pre-enforcement review under the VJRA.

a. Under the APA, an agency determination is "final" if (1) the action "mark[s] the 'consummation' of the agency's decisionmaking process," and (2) the action is one from which "'rights or obligations have been determined'" or from which "'legal consequences will flow.'" *Bennett* v. *Spear*, 520 U.S. 154, 177-178 (1997) (citations omitted); see, *e.g.*, *United States Army Corps of Eng'rs* v. *Hawkes Co.*, 136 S. Ct. 1807, 1813 (2016). The Waterways Provision does not satisfy either requirement. As

explained above, the Waterways Provision—like other provisions of the Manual—is not binding on the Board, which renders the "agency's final decision" on disability benefits claims, *Henderson*, 562 U.S. at 431, and which must conduct de novo review of any appeal from an adverse adjudication in the regional office without giving controlling weight to an interpretation in the Manual. See Pet. App. 11a-12a; *Overton*, 30 Vet. App. at 259. Accordingly, reference to the Manual does not mark the consummation of the agency's decision making process, and no "rights," "obligations," or "legal consequences" result from the Waterways Provision itself. *Bennett*, 520 U.S. at 178 (citation omitted). Such legally binding consequences can flow only from the agency's adjudication of an individual claim in a given case. See, *e.g.*, *Reno* v. *Catholic Soc. Servs., Inc.*, 509 U.S. 43, 58 (1993) (explaining that a regulation related to the provision of government benefit could be challenged only when applied to the claimant); *Lujan* v. *National Wildlife Fed'n*, 497 U.S. 871, 894 (1990) (similarly requiring a "case-by-case approach").

b. Enforcing the "final agency action" requirement of the APA judicial-review provisions is consistent with both the text and purpose of 38 U.S.C. 502. To be sure, Section 502 establishes a mechanism for judicial review of VA actions that is distinct from the VJRA provisions that govern review of individual benefits determinations. To that extent, Section 502 is properly characterized as authorizing "pre-enforcement review." But because the VJRA requires such review to be conducted "in accordance with" the APA, *ibid.*, it cannot properly be read to authorize *immediate* review of *every* VA action to which 5 U.S.C. 552(a)(1) or 553 refers.

Section 552(a)(1)(A) of Title 5, for example, requires an agency to publish in the Federal Register "descriptions of its central and field organization." 5 U.S.C. 552(a)(1)(A). Section 552(a)(1)(B) requires an agency to publish "statements of the general course and method by which its functions are channeled and determined." 5 U.S.C. 552(a)(1)(B). The VJRA cannot sensibly be read to allow freestanding challenges to VA communications of that character in the absence of any concrete effect on individual "rights or obligations" or other "legal consequences." *Bennett*, 520 U.S. at 178 (citation omitted). Reading Section 502's cross-reference as incorporating the APA's "final agency action" requirement avoids that unlikely result.

Enforcing the "final agency action" requirement would leave room for litigants to challenge a significant category of binding agency actions under Section 502. "[S]ubstantive rules of general applicability," 5 U.S.C. 552(a)(1)(D), are generally final and subject to direct challenge. See, *e.g.*, *Abbott Labs.* v. *Gardner*, 387 U.S. 136, 150-151 (1967). And although many "statements of general policy or interpretations of general applicability formulated and adopted by the agency," 5 U.S.C. 552(a)(1)(D), may be nonbinding and therefore nonfinal, see, *e.g.*, *Association of Flight Attendants-CWA* v. *Huerta*, 785 F.3d 710, 713 (D.C. Cir. 2015), that is not true of all agency actions that fit into that category. As explained above, precedential opinions of the VA General Counsel are binding on the Board by statute, 38 U.S.C. 7104(c), so they are properly considered "interpretations of general applicability formulated and adopted by the agency" under 5 U.S.C. 552(a)(1)(D) and therefore subject to pre-enforcement review under the VJRA, 38 U.S.C. 502. See *Snyder*, 858 F.3d at 1412-

1413; *Splane*, 216 F.3d at 1062; see also, *e.g.*, *Whitman* v. *American Trucking Ass'ns*, 531 U.S. 457, 478-479 (2001) (concluding that agency "interpretation" in a pre-amble to a rule was "final agency action" because it was "conclusive").

Limiting pre-enforcement review under Section 502 to final agency action in accordance with the APA also reflects the fundamental compromise underlying the VJRA. Contrary to petitioner's vision of "expansive" pre-enforcement review (Pet. Br. 2), Congress in the VJRA created a tailored judicial-review scheme that channeled most challenges to VA decisions to the newly established Veterans Court through appeals of individual benefits determinations. The VJRA scheme was "intended to afford the maximum possible deference to the [Board's] expertise as an arbiter of the specialized types of factual issues that arise in the context of claims for VA benefits, while still recognizing and providing for the possibility of error in [the Board's] factual determinations." VJRA Senate Report 60. As noted above, the VJRA House and Senate Reports mention the prospect of pre-enforcement review of "VA policy as expressed in VA regulations and interpretations by the General Counsel," VJRA House Report 26, and "VA's institutional decisions—i.e., regulations," VJRA Senate Report 112, but do not suggest anything resembling the "expansive" judicial review petitioner envisions (Pet. Br. 2). Indeed, the House Report reiterates the "basic administrative principles that a reviewing court ought not to be put in a position where it has no idea of an agency's views on a particular legal question," and that the "the law should encourage agencies to resolve disputes * * * without court intervention, since the agency is in the best position to understand the effect of

a changed position and to make the most informed deci-
sion on the best means of implementing any change in
its position." VJRA House Report 27.

Petitioner's sweeping reading of Section 502 would
fundamentally alter the balance that has prevailed for
the past 30 years under the VJRA. Under his proposed
construction, countless provisions of the Manual would
constitute "interpretations of general applicability
formulated and adopted by the agency," 5 U.S.C.
552(a)(1)(D), subject to pre-enforcement review under
38 U.S.C. 502. But see Pet. App. 34a (Taranto, J., con-
curring in the denial of rehearing en banc) (observing
that "[f]ew challenges to Manual pronouncements have
been brought through § 502."). That destabilizing re-
sult would conflict with the history and purpose of the
VJRA, and with the settled principle of administrative
law that interpretive rules are generally not reviewable
before their application in particular cases. See
*Huerta*, 785 F.3d at 717.

2. Although petitioner's current facial challenge to
the Waterways Provision is not judicially cognizable,
petitioner has alternative avenues for contesting the in-
terpretation that the Provision reflects. He may peti-
tion VA to conduct a rulemaking, see 5 U.S.C. 553(e),
and to adopt his preferred construction of the phrase
"in the Republic of Vietnam" as used in the Agent Or-
ange Act, 38 U.S.C. 1116(a)(1)(A). If VA denies his pe-
tition, he may seek direct review of that denial in the
Federal Circuit. Pet. App. 13a & n.1; see *Preminger* v.
*Secretary of Veterans Affairs*, 632 F.3d 1345, 1352 (Fed.
Cir. 2011) (per curiam).

Petitioner can also argue, in his pending appeal from
VA's denial of disability benefits, that he served "in the

Republic of Vietnam" as that term is properly understood, and that the interpretation reflected in the Waterways Provision should be rejected. At the joint request of petitioner and VA, that appeal has been stayed in the Veterans Court for nearly two years while this litigation proceeds. The Federal Circuit also recently confirmed the availability of class-action review before the Veterans Court, which could offer another vehicle for petitioner to challenge VA's interpretation. See *Monk* v. *Shulkin*, 855 F.3d 1312 (Fed. Cir. 2017). Litigants before the Veterans Court seeking faster review of VA interpretations may petition that court to certify certain controlling legal questions to the Federal Circuit. See 38 U.S.C. 7292(b). And litigants who object to what they perceive as unreasonable delay may petition the Veterans Court to "compel action of the Secretary unlawfully withheld or unreasonably delayed." 38 U.S.C. 7261(a)(2); see *Blue Water Navy Viet. Veterans Ass'n* v. *McDonald*, 830 F.3d 570, 578 (D.C. Cir. 2016) (describing this option).

In seeking to overturn VA's adverse benefits determination, moreover, petitioner may benefit from the efforts of other veterans. As Judge Taranto explained below in his concurrence from the denial of rehearing en banc, other individual benefits adjudications that are currently pending before the Federal Circuit raise related questions about the proper understanding of the phrase "in the Republic of Vietnam" under the Agent Orange Act. Pet. App. 33a-34a. The Federal Circuit recently granted en banc review and heard oral argument in one such case, *Procopio* v. *Wilkie*, No. 17-1821 (argued Dec. 7, 2018), in which the veteran contends that the "Republic of Vietnam" necessarily includes the

territorial seas off the coast. Appellant Br. at 19-29, *Procopio*, *supra* (No. 17-1821). If the Federal Circuit adopts that position, petitioner will qualify for the presumption of exposure to Agent Orange, and he will have no need to pursue his pre-enforcement challenge.

3. In support of his proposed construction of the VJRA, petitioner suggests that Congress enacted the pre-enforcement review provision of the VJRA "because VA gets it wrong so often." Pet. Br. 50; see *id.* at 49 & n.14 (citing cases in which courts have ruled against VA). As an initial matter, every one of the cases petitioner cites was decided *after* enactment of the VJRA and thus could not have informed Congress's purpose. In enacting the VJRA, moreover, Congress lauded VA as "one of the most generous benefactory agencies in the world," VJRA House Report 25, and explained that the new legislation was "not based on a belief that the current preclusion of judicial review of [Board] decisions results in wide-spread injustices; to the contrary, there is little evidence that most claimants are not satisfied with the resolution of their claims for VA benefits," VJRA Senate Report 30.

Petitioner is of course correct that courts have invalidated some VA actions. But courts—including this Court—have also upheld many VA actions. See, *e.g.*, *Shinseki* v. *Sanders*, 556 U.S. 396, 399 (2009); *Veterans Justice Grp., LLC* v. *Secretary of Veterans Affairs*, 818 F.3d 1336 (Fed. Cir. 2016); *Service Women's Action Network* v. *Secretary of Veterans Affairs*, 815 F.3d 1369 (Fed. Cir. 2016); *Haas*, 525 F.3d at 1173-1175. Petitioner also laments (Pet. Br. 1-2, 50-52) the slow pace of the VA adjudication process. VA shares that dissatisfaction, and

the agency is working to improve its efficiency in processing the record-high number of claims it now receives. See p. 5, *supra*.

Ultimately, the question in this case is not whether petitioner can obtain review of his disagreement with VA over the scope of the Agent Orange Act, but only which court provides that review at which stage in the process. Both the VJRA's creation of an appeals mechanism through the Board and the Veterans Court (with pre-enforcement review available as a limited exception for final interpretations that bind the entire agency), and the well-established principle of administrative law that nonbinding and nonfinal agency interpretations are generally not reviewable before enforcement, strongly indicate that the Waterways Provision is reviewable only through the usual process.

## CONCLUSION

The judgment of the court of appeals should be affirmed.

Respectfully submitted.

NOEL J. FRANCISCO
*Solicitor General*
JOSEPH H. HUNT
*Assistant Attorney General*
MALCOLM L. STEWART
*Deputy Solicitor General*
CHRISTOPHER G. MICHEL
*Assistant to the Solicitor General*
ROBERT E. KIRSCHMAN, JR.
MARTIN F. HOCKEY, JR.
ERIC P. BRUSKIN
*Attorneys*

JAMES M. BYRNE
*General Counsel*
BRIAN D. GRIFFIN
BRANDON A. JONAS
*Attorneys*
*Department of Veterans Affairs*

JANUARY 2019