No. 20-1321

IN THE

# United States Court of Appeals for the Federal Circuit

NATIONAL ORGANIZATION OF VETERANS'
ADVOCATES, INC.,

*Petitioner,*

*v.*

SECRETARY OF VETERANS AFFAIRS,

*Respondent.*

On Initial Hearing En Banc of
Petition for Review Pursuant to 38 U.S.C. § 502

## BRIEF OF MILITARY-VETERANS ADVOCACY INC.
## AS AMICUS CURIAE IN SUPPORT OF PETITIONER

John B. Wells
MILITARY-VETERANS ADVOCACY INC.
P.O. Box 5235
Slidell, LA 70469-5235

Melanie L. Bostwick
James Anglin Flynn
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
1152 15th Street NW
Washington, DC 20005
(202) 339-8400

Jeffrey T. Quilici
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
300 W. 6th Street, Suite 1850
Austin, TX 78701

*Counsel for Amicus Curiae*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

**Case Number**  20-1321

**Short Case Caption**  National Organization of Veterans' Advocates, Inc. v. Secretary of Veterans Affairs

**Filing Party/Entity**  Military-Veterans Advocacy Inc.

---

**Instructions:** Complete each section of the form.  In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.  **Please enter only one item per box; attach additional pages as needed and check the relevant box**.  Counsel must immediately file an amended Certificate of Interest if information changes.  Fed. Cir. R. 47.4(b).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 07/13/2020

Signature:  /s/ Melanie L. Bostwick

Name:  Melanie L. Bostwick

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. |
| ☐ None/Not Applicable | ☑ None/Not Applicable | ☑ None/Not Applicable |
| Military-Veterans Advocacy Inc. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐   Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑   None/Not Applicable          ☐   Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☐   None/Not Applicable          ☐   Additional pages attached

| Military-Veterans Advocacy Inc. v. Secretary of Veterans Affairs, No. 20-1537 | | |
|---|---|---|
|  |  |  |
|  |  |  |

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑   None/Not Applicable          ☐   Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ................................................ i

TABLE OF AUTHORITIES .................................................. vi

STATEMENT OF INTEREST ................................................ 1

INTRODUCTION .................................................................. 2

ARGUMENT ........................................................................ 4

I. *DAV*'s Limitation on This Court's Jurisdiction Contravenes the Purpose and Policy of § 502. ...................... 4

    A. Section 502 requires the exercise of this Court's jurisdiction because 5 U.S.C. § 552(a)(1)(D) refers to the Knee Rules. ............................ 4

    B. *DAV*'s holding failed to engage with the statutory text and should be overruled. ........................................ 7

    C. Section 502 should be interpreted in favor of preenforcement review. ................................................. 10

    D. Preenforcement review is a vital tool in the just administration of veterans' benefits. .......................... 14

II. Even Were Final Agency Action Required—Which It Is Not—Revisions to the M21-1 Manual Constitute Final Agency Action. ...................................................................... 20

    A. Agency actions made reviewable by statute need not be final. .................................................................. 21

    B. Regardless, the Knee Rules constitute final agency action. ............................................................. 24

III. Federal Circuit Rule 15(f)(1) Improperly Restricts the Time for Review and Squarely Conflicts with the Statutory Six-Year Limitation Period. ................................ 27

    A. 28 U.S.C. § 2401 sets a six-year limitations period that governs this Court's jurisdiction. .......................... 28

  B. Rule 15(f)(1) exceeds this Court's rulemaking
    power because it directly conflicts with § 2401(a)
    and Congress's underlying policy.................................31

CONCLUSION .........................................................................35

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Appalachian Power Co. v. EPA*,
208 F.3d 1015 (Fed. Cir. 2000) ........................................... 25

*Ashford Univ., LLC v. Sec'y of Veterans Affairs*,
951 F.3d 1332 (Fed. Cir. 2020) ...................................... 21, 23

*Azar v. Allina Health Servs.*,
139 S. Ct. 1804 (2019) ......................................................... 5

*Bennett v. Spear*,
520 U.S. 154 (1997) ........................................................... 25

*Block v. Sec'y of Veterans Affairs*,
641 F.3d 1313 (Fed. Cir. 2011) ........................................... 29

*Brown v. Gardner*,
513 U.S. 115 (1994) ........................................................... 17

*Brown v. Sec'y of Veterans Affairs*,
No. 95-7067, 1997 WL 488930 (Fed. Cir. Aug. 22, 1997) .................. 31

*Cal. Cmtys. Against Toxics v. EPA*,
934 F.3d 627 (D.C. Cir. 2019) ............................................. 27

*Cherokee Nation v. United States*,
124 F.3d 1413 (Fed. Cir. 1997) ........................................... 12

*Chiafalo v. Washington*,
No. 19-465, 2020 WL 3633779 (U.S. July 6, 2020) ........................ 22

*City of Chicago v. Envtl. Def. Fund*,
511 U.S. 328 (1994) ........................................................... 24

*Conn. Nat'l Bank v. Germain*,
503 U.S. 249 (1992) ........................................................... 22

*Cook v. Snyder,*
28 Vet. App. 330 (2017)................................................................ 18, 20

*Dep't of the Air Force v. Rose,*
425 U.S. 352 (1976) ......................................................................... 6

*Disabled Am. Veterans v. Sec'y of Veterans Affairs,*
327 F.3d 1339 (Fed. Cir. 2003) .................................................... 17, 18

*Disabled Am. Veterans v. Sec'y of Veterans Affairs,*
859 F.3d 1072 (Fed. Cir. 2017) ............................................ 4, 7, 8, 11

*Ebanks v. Shulkin,*
877 F.3d 1037 (Fed. Cir. 2017) ........................................................ 16

*Food Mktg. Inst. v. Argus Leader Media,*
139 S. Ct. 2356 (2019) ...................................................................... 6

*FPC v. Metropolitan Edison Co.,*
304 U.S. 375 (1938) ......................................................................... 23

*Friends of Tims Ford v. Tenn. Valley Auth.,*
585 F.3d 955 (6th Cir. 2009) ............................................................ 30

*Gardner v. Brown,*
5 F.3d 1456 (Fed. Cir. 1993) ...................................................... 13, 17

*Gray v. Sec'y of Veterans Affairs,*
875 F.3d 1102 (Fed. Cir. 2017) .................................. 7, 8, 9, 15, 21, 25

*Gray v. Sec'y of Veterans Affairs,*
884 F.3d 1379 (Fed. Cir. 2018) ..................................................... 8, 14

*Hamer v. Neighborhood Hous. Servs. of Chicago,*
138 S. Ct. 13 (2017) ........................................................................ 32

*Henderson v. Shinseki,*
562 U.S. 428 (2011) .................................................................... 13, 33

*Hicks v. Small,*
69 F.3d 967 (9th Cir. 1995) ............................................................. 11

*Hodge v. West,*
    155 F.3d 1356 (Fed. Cir. 1998) .......................................................... 19

*HP Inc. v. MPHJ Tech. Invs., LLC,*
    817 F.3d 1339 (Fed. Cir. 2016) .......................................................... 12

*Instituto de Educacion Universal Corp. v. U.S. Dep't of Educ.,*
    209 F.3d 18 (1st Cir. 2000) ................................................................. 30

*Iowa League of Cities v. EPA,*
    711 F.3d 844 (8th Cir. 2013) ....................................................... 22, 27

*Jackson v. Brown,*
    55 F.3d 589 (Fed. Cir. 1995) .............................................................. 31

*Lujan v. Nat'l Wildlife Fed'n,*
    497 U.S. 871 (1990) ............................................................................. 23

*Martin v. O'Rourke,*
    891 F.3d 1338 (Fed. Cir. 2018) ..................................................... 15, 16

*Mathis v. Shulkin,*
    137 S. Ct. 1994 (2017) ........................................................................ 19

*Milner v. Dep't of the Navy,*
    562 U.S. 562 (2011) ............................................................................... 5

*Mims v. Arrow Fin. Servs., LLC,*
    565 U.S. 368 (2012) ............................................................................. 32

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
    460 U.S. 1 (1983) ................................................................................. 12

*Nagahi v. INS,*
    219 F.3d 1166 (10th Cir. 2000) .......................................................... 30

*Nat'l Org. of Veterans' Advocates, Inc. v. Sec'y of Veterans*
    *Affairs,*
    330 F.3d 1345 (Fed. Cir. 2003) ............................................... 10, 12, 27

*Nguyen v. United States,*
    824 F.2d 697 (9th Cir. 1987) ................................................................ 6

*Nyeholt v. Sec'y of Veterans Affairs,*
298 F.3d 1350 (Fed. Cir. 2002) .......................................... 13

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.,*
467 F.3d 1355 (Fed. Cir. 2006) .......................................... 31

*Perez-Guzman v. Lynch,*
835 F.3d 1066 (9th Cir. 2016) ........................................... 29

*Polanco v. DEA,*
158 F.3d 647 (2d Cir. 1998) ............................................. 30

*Preminger v. Sec'y of Veterans Affairs,*
517 F.3d 1299 (Fed. Cir. 2008) .......................................... 29

*Preminger v. Sec'y of Veterans Affairs,*
632 F.3d 1345 (Fed. Cir. 2011) .......................................... 31

*Prestidge v. United States,*
611 F. App'x 979 (Fed. Cir. 2015) ....................................... 11

*Procopio v. Sec'y of Veterans Affairs,*
943 F.3d 1376 (Fed. Cir. 2019) ....................................... 9, 10

*Procopio v. Wilkie,*
913 F.3d 1371 (Fed. Cir. 2019) .......................................... 14

*Ross v. Blake,*
136 S. Ct. 1850 (2016) .................................................. 21

*Rotkiske v. Klemm,*
140 S. Ct. 355 (2019) ................................................... 32

*Sai Kwan Wong v. Doar,*
571 F.3d 247 (2d Cir. 2009) ............................................. 30

*Schiller v. Tower Semiconductor Ltd.,*
449 F.3d 286 (2d Cir. 2006) ............................................. 30

*Shinseki v. Sanders,*
556 U.S. 396 (2009) ................................................. 33, 34

*Sierra Club v. Slater,*
  120 F.3d 623 (6th Cir. 1997) ................................................... 30

*Smith v. Marsh,*
  787 F.2d 510 (10th Cir. 1986) ................................................ 30

*Smith v. Shinseki,*
  647 F.3d 1380 (Fed. Cir. 2011) ....................................... 20, 26

*Thomas v. Principi,*
  394 F.3d 970 (D.C. Cir. 2005) ................................................. 11

*U.S. Army Corps of Eng'rs v. Hawkes Co.,*
  136 S. Ct. 1807 (2016) .......................................... 25, 26, 27

*Valero Energy Corp. v. EPA,*
  927 F.3d 532 (D.C. Cir. 2019) ............................................... 26

*Willy v. Coastal Corp.,*
  503 U.S. 131 (1992) .............................................................. 31

*Wind River Min. Corp. v. United States,*
  946 F.2d 710 (9th Cir. 1991) ................................................. 29

**Statutes**

5 U.S.C. § 552 ............................................................................ 6

5 U.S.C. § 552(a)(1) ............................... 4, 7, 8, 9, 10, 12, 13, 21, 23, 24

5 U.S.C. § 552(a)(1)(D) ........................................ 4, 5, 10, 24

5 U.S.C. § 552(a)(2) ............................................... 7, 8, 9, 10, 12

5 U.S.C. § 552(a)(2)(B) ........................................................... 9

5 U.S.C. § 553 .......................................................... 4, 21

5 U.S.C. § 702 ........................................................................ 28

5 U.S.C. § 703 ........................................................................ 28

5 U.S.C. § 704 ............................................. 3, 21, 22, 24, 27

26 U.S.C. § 6511......................................................................33

28 U.S.C. § 2071(a)..................................................................31

28 U.S.C. § 2342......................................................................33

28 U.S.C. § 2344......................................................................33

28 U.S.C. § 2401(a) ..............................................28, 29, 30, 31, 32

28 U.S.C. § 2409a(g) ...............................................................33

38 U.S.C. § 502....................................................................*passim*

Veterans' Judicial Review Act, Pub. L. No. 100-687, sec.
102(a)(1), § 223(c), 102 Stat. 4105 (1988)...........................................11

## Rules and Regulations

1 C.F.R. § 1.1.........................................................................6

38 C.F.R. § 4.71a.....................................................................5

Fed. Cir. R. 15(f)(1).................................................27, 33, 34, 35

Fed. Cir. R. 47.12(a) (2019) .....................................................27

## Other Authorities

Amicus Curiae Br. of Disabled Am. Vets., *Brown v. Sec'y of
Veterans Affairs*, No. 95-7067, 1996 WL 33453789 (Fed.
Cir. Sept. 3, 1996) ...............................................................30

Black's Law Dictionary (5th ed. 1979)..............................................5

Black's Law Dictionary (9th ed. 2009)..............................................5

Br. for Respondent, *Gray v. Wilkie*, No. 17-1679 (U.S. Jan.
16, 2019) ...........................................................................20

Br. for Respondent, *Procopio v. Sec'y of Veterans Affairs*, No.
19-2184 (Fed. Cir. Aug. 30, 2019), ECF No. 30 ...............................10

H.R. Rep. No. 100-963 (1988) .................................................... 11

Quil Lawrence, *Benefits for Navy Victims of Agent Orange –*
*Just 50 Years Later*, NPR (Jan. 30, 2019) ......................................... 15

Thomas Novelly, *SC Navy Vets with Agent Orange Illnesses*
*Almost Had Benefits*, Post & Courier (Jul. 28, 2019) ........................ 16

Oxford English Dictionary (2d ed. 1989) .................................................. 5

Pet. For Review, *Military-Veterans Advocacy, Inc. v. Wilkie*,
No. 20-1537 (Fed. Cir. Feb. 18, 2020) .................................................. 19

Robert L. Rabin, *Preclusion of Judicial Review in the*
*Processing of Claims for Veterans Benefits*, 27 Stan. L.
Rev. 905 (1975) ...................................................................................... 11

S. Rep. No. 89-813 (1965) ...................................................................... 6

Stephen I. Vladeck, *The Increasingly "Unflagging*
*Obligation,"* 42 Tulsa L. Rev. 553 (2007) ........................................... 12

Webster's Third New International Dictionary (1961) ............................ 5

Nikki Wentling, *A Bittersweet Victory: Veteran Behind Blue*
*Water Case Sees Its Resolution After 13 Years*, Stars &
Stripes (June 20, 2019) ......................................................................... 15

# STATEMENT OF INTEREST[1]

Military-Veterans Advocacy Inc. (MVA) is a non-profit organization that litigates and advocates on behalf of servicemembers and veterans.  Established in 2012 in Slidell, Louisiana, MVA educates and trains servicemembers and veterans concerning rights and benefits, represents veterans contesting the improper denial of benefits, and advocates for legislation to protect and expand servicemembers' and veterans' rights and benefits.

The reviewability of Department of Veterans Affairs (VA) rules is essential to the fair administration of veterans' benefits. Preenforcement review allows veterans and advocacy organizations to challenge unlawful VA rules long before they are applied against individual veterans in the long and arduous claim and appeals process. Because NOVA's petition raises important questions about the availability of that review, MVA has a strong interest in this case. MVA and its affiliated organization—Blue Water Navy Vietnam

---

[1] No party's counsel authored this brief in whole or in part. No party, party's counsel, or any person other than amicus or its counsel contributed money intended to fund preparing or submitting this brief. It is filed pursuant to the Court's authorization.  May 6 Order 2, ECF No. 50.

Veterans Association, Inc.—have previously litigated related reviewability issues in this Court, the D.C. Circuit, and the Supreme Court, and MVA is presently challenging yet another set of Manual rules in a case pending before this Court.

## INTRODUCTION

Congress has provided for preenforcement judicial review of VA rules, consistent with its policy goals of ensuring a just and efficient veterans-benefits system—and mindful of the shortcomings plaguing the administration of individual veterans' benefits cases. This case concerns two obstacles this Court has erected to that review, one by precedent and one by rule. Neither is grounded in the text of the statutes that govern this Court's review. Both have widespread, harmful consequences for the veterans this system is intended to serve, and it is time for this Court to leave these obstacles behind.

First, this Court has interpreted 38 U.S.C. § 502—which provides for preenforcement review—to foreclose such review when VA publishes its rules in an agency manual. The Court's precedent diverges from the plain meaning of the relevant statutes, and it does so in a way that disfavors veterans and fails to resolve the problem Congress set out to

address. As MVA explains below, the harsh realities of VA rulemaking and adjudication are further compelling reasons for this Court to faithfully apply § 502 and allow review here. Moreover, if the VA seeks to thwart review by arguing that the challenged Knee Rules are not "final agency action" under 5 U.S.C. § 704, the Court should reject its argument. Although the Knee Rules are unquestionably final, that is not a prerequisite for reviewing agency action made reviewable under the plain text of the statute.

Second, although Congress has allowed a six-year period for challenges under § 502, this Court's local rules shorten that time to 60 days. This Court lacks the authority to truncate a statute of limitations. Among the Court's many subject-matter areas, its singling out of veterans alone for this restriction is as perplexing as it is unlawful. The petition is timely under the governing statute, and that should be the end of the matter.

Congress has provided for review of this petition and others like it. To the extent this Court's rules and rulings stand in the way, it has the power and the responsibility sitting en banc to remove those obstacles.

# ARGUMENT

## I. *DAV*'s Limitation on This Court's Jurisdiction Contravenes the Purpose and Policy of § 502.

The threshold question for this Court is whether two rules (the Knee Rules) promulgated in the VA Adjudication Procedures Manual M21-1 are subject to preenforcement review pursuant to 38 U.S.C. § 502. In *Disabled American Veterans v. Secretary of Veterans Affairs* (*DAV*), this Court concluded that such rules are not subject to § 502 review, despite the plain text of the statute and the pro-veteran purpose and policy behind it. *See* 859 F.3d 1072 (Fed. Cir. 2017). This en banc Court should overrule *DAV* and exercise the jurisdiction squarely conferred on it by Congress.

### A. Section 502 requires the exercise of this Court's jurisdiction because 5 U.S.C. § 552(a)(1)(D) refers to the Knee Rules.

Congress vested this Court with jurisdiction to review any "action of the Secretary to which [5 U.S.C. § 552(a)(1) or § 553] refers." 38 U.S.C. § 502. Section 552(a)(1) refers to, among other things, "substantive rules of general applicability," "statements of general policy," and "interpretations of general applicability" adopted by the agency. 5 U.S.C. § 552(a)(1)(D). This Court has jurisdiction over

NOVA's petition at least because the Knee Rules are "interpretations of general applicability" under § 552(a)(1)(D).

What is an interpretation of general applicability?  Start with the ordinary meaning of the text.  *Milner v. Dep't of the Navy*, 562 U.S. 562, 569 (2011).  The plain meaning of this statutory phrase is both clear and clearly applicable.  "Interpretation" is well understood to mean "[t]he process of determining what … the law or a legal document means."  Black's Law Dictionary 894 (9th ed. 2009).  Thus, "interpretive rules" under the Administrative Procedure Act (APA) convey "the agency's construction of the statutes and rules which it administers."  *Azar v. Allina Health Servs.*, 139 S. Ct. 1804, 1811 (2019).  In the Knee Rules, VA has construed the Diagnostic Codes in 38 C.F.R. § 4.71a, a regulation that the agency issued and administers.  The Knee Rules are, therefore, interpretations—no matter where they are published.

"General applicability" is equally straightforward.  "General" means "relating … to a whole class" and contrasts with "particular" or "specific," and "applicable" means "capable of being applied" or "having relevance."  6 Oxford English Dictionary 430 (2d ed. 1989); Black's Law Dictionary 614 (5th ed. 1979); Webster's Third New International

Dictionary 105 (1961).  Indeed, in drafting the statute, Congress signaled that the phrase "of general applicability" was interchangeable with "not … addressed to and served upon named persons."  *Nguyen v. United States*, 824 F.2d 697, 700 (9th Cir. 1987) (quoting S. Rep. No. 89-813, at 6 (1965)); *see also* 1 C.F.R. § 1.1 (defining "general applicability" as "relevant or applicable to the general public, members of a class, or persons in a locality, as distinguished from named individuals or organizations.").  The Knee Rules apply to any veterans with knee replacements or instability, rather than to particular individuals.  The Rules, therefore, are generally applicable.

The statutory phrase really is that simple.  The Freedom of Information Act—codified at § 552—primarily uses straightforward language rather than legislative terms of art, consistent with its public-oriented purpose.  *See, e.g.*, *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2364 (2019); *Dep't of the Air Force v. Rose*, 425 U.S. 352, 360-61 (1976).

Note, however, what these definitions do not include.  They do not ask whether a rule is binding or whether a rule is published in the

Federal Register.  Instead, § 552(a)(1) encompasses the Knee Rules

because they interpret and because they apply generally.

**B.**    ***DAV*'s holding failed to engage with the statutory text and should be overruled.**

Tellingly, in reaching the contrary conclusion with respect to other

Manual rules, the *DAV* panel failed to engage with the statutory text.

*See* 859 F.3d at 1075.  It accepted that the rules were "interpretations

adopted by the agency."  *Id.* at 1078.  All that remained was to

determine whether they were "of general applicability," but the Court

declined to conduct that inquiry.  *Id.*[2]

Instead, the panel formulated a rule unmoored from the statutory

text: "Where, as here, manual provisions are interpretations adopted by

the agency, not published in the Federal Register, not binding on the

Board itself, and contained within an administrative staff manual, they

fall within § 552(a)(2)—not § 552(a)(1)."  859 F.3d at 1078.  The Court

offered no reasons why this published-and-binding test is relevant to

_____

[2]  *DAV* could be read as turning on petitioner's "fail[ure] to articulate why" § 552(a)(1) applies.  *See id.*  But this Court instead has applied *DAV* as a categorical bar to § 502 review of Manual rules.  *See Gray v. Sec'y of Veterans Affairs* (*Gray I*), 875 F.3d 1102, 1108 (Fed. Cir. 2017), *vacated as moot*, 139 S. Ct. 2764 (2019).  If *DAV*'s holding is indeed more limited, this Court should say so.

the § 502 analysis. *See Gray v. Sec'y of Veterans Affairs* (*Gray II*), 884 F.3d 1379, 1382 (Fed. Cir. 2018) (Taranto, J., concurring in the denial of rehearing en banc) ("[W]e lack thorough analysis of whether and why [these] characteristics … , or other characteristics, should or should not matter under a proper legal interpretation.").

The panel also failed to acknowledge the circularity of the test it invented. Section 552(a)(1) is the very statute that prescribes what materials an agency must publish in the Federal Register. *DAV*'s rule therefore would require agencies to publish a document in the Federal Register only if the agency has already published it in the Federal Register. In addition to being nonsensical, such a rule gives agencies carte blanche to avoid review by shirking their publication duties. *Gray I*, 875 F.3d at 1113 (Dyk, J., dissenting in part and concurring in the judgment).

*DAV* was correct insofar as it held that this Court cannot review a rule just *because* it is in the Manual. But it went further, holding that § 502's "express exclusion of agency actions subject to § 552(a)(2) renders the [Manual] beyond our § 502 jurisdiction." 859 F.3d at 1075. Section 502 never mentions § 552(a)(2), much less expressly excludes it.

As a result, *DAV*'s requirement that a challenger demonstrate that a rule "more readily fall[s]" under § 552(a)(1) than under § 552(a)(2) is unsupported by text or precedent. Section 502 does not withdraw jurisdiction to review generally applicable interpretive rules just because they happen to be promulgated in a manual. Numerous agency statements that fall within subsection (a)(1) *also* fall within subsection (a)(2), and nothing in § 502 supports examining whether a rule falls more readily within one or the other. *See Gray I*, 875 F.3d at 1115 (op. of Dyk, J.).

Nor can a false dichotomy between § 552(a)(1) and § 552(a)(2) be squared with this Court's recent decision in *Procopio v. Secretary of Veterans Affairs* (*Procopio II*), 943 F.3d 1376 (Fed. Cir. 2019). There, a panel determined that it had § 502 jurisdiction over a challenge to a memorandum of the Secretary staying pending disability-compensation claims. *Id.* at 1377. The Secretary's memorandum was indisputably a "statement[] of … interpretation[] which ha[s] been adopted by the agency and [is] not published in the Federal Register," bringing it within the scope of § 552(a)(2)(B). Nevertheless, this Court concluded that the memorandum was a generally applicable interpretation within

the scope of § 552(a)(1)(D).  *Id.* at 1380.  The Court rejected VA's

argument that it should apply *DAV*'s requirement that material within

subsection (a)(2) more readily fall within subsection (a)(1) to be

reviewable.  Br. for Resp. at 22, *Procopio II*, No. 19-2184 (Fed. Cir. Aug.

30, 2019), ECF No. 30.  Nor did it examine whether the rule was

binding on the agency as a whole and whether it was published in the

Federal Register.  Indeed, had the *Procopio II* panel done so, the

Secretary's memorandum would have failed that test.  Instead, the

Court reached the correct conclusion under the straightforward

statutory text.  The full Court should do the same here and dispense

with *DAV*'s atextual approach.

## C.  Section 502 should be interpreted in favor of preenforcement review.

"[T]he Supreme Court has recognized that in certain instances,

Congress has specifically instructed the courts to review agency rules

preenforcement."  *Nat'l Org. of Veterans' Advocates, Inc. v. Sec'y of

Veterans Affairs* (*NOVA*), 330 F.3d 1345, 1347 (Fed. Cir. 2003).  Section

502 is a prime example of such an instruction.  *Id.*  To the extent there

is any doubt after the textual analysis, the policy and purpose of § 502

counsel in favor of permitting preenforcement review here.

The context in which § 502 was enacted supports that conclusion. The provision now codified at § 502 originated in the Veterans' Judicial Review Act (VJRA), Pub. L. No. 100-687, sec. 102(a)(1), § 223(c), 102 Stat. 4105, 4106 (1988). In the VJRA, Congress for the first time applied longstanding principles of administrative law and judicial review to VA, which had previously enjoyed a "splendid isolation as the single federal administrative agency whose major functions [we]re explicitly insulated from judicial review." H.R. Rep. No. 100-963, at 10 (1988) (quoting Robert L. Rabin, *Preclusion of Judicial Review in the Processing of Claims for Veterans Benefits*, 27 Stan. L. Rev. 905, 905 (1975)). The Act provided for preenforcement review of VA rules as well as postenforcement review of individual veterans' claims. 102 Stat. at 4106, 4113-22. The VJRA has been widely understood as "an elaborate, special remedial scheme." *Prestidge v. United States*, 611 F. App'x 979, 982 (Fed. Cir. 2015); *accord Thomas v. Principi*, 394 F.3d 970, 975 (D.C. Cir. 2005); *Hicks v. Small*, 69 F.3d 967, 969 (9th Cir. 1995).

To be sure, this Court's "jurisdiction to review VA actions pursuant to § 502 is limited," and petitioners bear the burden of establishing that jurisdiction. *DAV*, 859 F.3d at 1075. But that burden

does not operate in isolation.  In *DAV*, as here, the petitioner identified a statute whose plain language confers jurisdiction on this Court.  Once jurisdiction is conferred, federal courts have a "virtually unflagging obligation … to exercise the jurisdiction given them."  *Cherokee Nation v. United States*, 124 F.3d 1413, 1418 (Fed. Cir. 1997) (alteration in original) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 15 (1983)); *see also* Stephen I. Vladeck, *The Increasingly "Unflagging Obligation*," 42 Tulsa L. Rev. 553, 553 (2007).

If there were any doubt that the plain meaning of § 552(a)(1) applies, Congress's expressed policy and the canons of interpretation support finding it applicable here.

First, of course, is Congress's "declar[ation] [of] its preference for preenforcement review" of VA rules.  *NOVA*, 330 F.3d at 1347.  That declaration makes explicit and mandatory the usual "strong presumption" that agency actions are reviewable.  *HP Inc. v. MPHJ Tech. Invs., LLC*, 817 F.3d 1339, 1347 (Fed. Cir. 2016).  A mere negative implication from another provision (like § 552(a)(2)) is not the kind of "clear and convincing evidence of jurisdictional restriction" necessary to

overcome the presumption. *Nyeholt v. Sec'y of Veterans Affairs*, 298 F.3d 1350, 1353 (Fed. Cir. 2002).

Second, as noted above, the VJRA is a remedial statute that should be interpreted broadly in light of the problem it was meant to solve: the previous insulation of VA decisions from judicial review. *See, e.g.*, *Gardner v. Brown*, 5 F.3d 1456, 1463-64 (Fed. Cir. 1993), *aff'd*, 513 U.S. 115 (1994). In particular, § 502 was enacted in order to apply traditional APA review to VA rulemaking. But *DAV*, as it has come to be applied, rewards VA's persistent attempts to reinsulate its rules from review by promulgating them in the Manual.

Third, the pro-veteran canon weighs in favor of § 502 review here. The canon applies not just to substantive benefits provisions but also to procedural provisions, including those enacted as part of the VJRA. *See Henderson v. Shinseki*, 562 U.S. 428, 441 (2011).

Finally, to the extent VA contends §§ 502 or 552(a)(1) are ambiguous, that ambiguity should be resolved in favor of review. For example, VA has argued that the Knee Rules are not "of general applicability" because they are not binding on the Board of Veterans' Appeals. Resp. Pet. 10-11, ECF No. 45. That strained interpretation

should be rejected. The plain meaning of "applicable"—*capable* of being applied—is hardly ambiguous. Even if the Board is not required to apply Manual provisions, no one suggests it is *incapable* of doing so. Accepting VA's interpretation of "applicable" would turn that word's plain meaning on its head.

### D. Preenforcement review is a vital tool in the just administration of veterans' benefits.

VA may argue that this Court should refrain from reviewing Manual rules until they arise in an individual veteran's appeal from the Court of Appeals for Veterans Claims. *See* Resp. Pet. 8. VA may even cite this Court's en banc decision in *Procopio I* as an example, suggesting that preenforcement review in *Gray* was unnecessary because *Procopio I* followed soon thereafter. *Cf. Gray II*, 884 F.3d at 1381 (Taranto, J., concurring in the denial of rehearing en banc).

This Court should not be misled. Eight months passed from *Procopio I*'s original panel submission to its final resolution by the en banc Court in January 2019. *See Procopio v. Wilkie* (*Procopio I*), 913 F.3d 1371 (Fed. Cir. 2019) (en banc). Supposing a similar timeline had played out in *Gray*, the en banc Court would have resolved the issue a full year earlier, in January *2018*. Whether measured in the one year's

delay resulting from this Court's refusal to conduct preenforcement review, the twenty-eight years' delay in arriving at the proper interpretation of the Agent Orange Act, or the five decades' delay in achieving a just outcome for the affected veterans, justice delayed was justice denied.[3]  *See Gray I*, 875 F.3d at 1109 (recognizing this "urgency" and the "costs … impose[d] on … veterans" by *DAV*'s holding); Nikki Wentling, *A Bittersweet Victory: Veteran Behind Blue Water Case Sees Its Resolution After 13 Years*, Stars & Stripes (June 20, 2019); Quil Lawrence, *Benefits for Navy Victims of Agent Orange – Just 50 Years Later*, NPR (Jan. 30, 2019).  And in a system where 96% of cases go unappealed, *see Gray I*, 875 F.3d at 1114 (op. of Dyk, J.), even a year of delay will yield a host of unjust denials for veterans who will get no relief from a much-delayed postenforcement review.

This Court is well acquainted with the delays inherent in the individual-benefits appeal system, as well as the stakes for the veterans involved.  *See, e.g.*, *Martin v. O'Rourke*, 891 F.3d 1338, 1341-42 (Fed. Cir. 2018) (documenting five-year timeline from Notice of Disagreement

---

[3] Even still, VA continues to arbitrarily deny Blue Water benefits to affected veterans by relying on Manual rules.  *See infra* § I.D.4.

to Board decision).  For example, if a veteran exercises her statutory right to a Board hearing, she can anticipate another *three years* of waiting.  *Ebanks v. Shulkin*, 877 F.3d 1037, 1038 (Fed. Cir. 2017).  These delays affect not just the timeliness but the *availability* of benefits for veterans and their families.  *Martin*, 891 F.3d at 1350 (Moore, J., concurring).  Veterans have died and will continue to die while VA and the courts review their claims.  *See id.*; Thomas Novelly, *SC Navy Vets with Agent Orange Illnesses Almost Had Benefits*, Post & Courier (Jul. 28, 2019) ("If you were 18 then, you're roughly 65 now, … like they say 'delay, deny until they die.'").  They cannot so easily wait for postenforcement review of generally applicable rules which, but for their inclusion in the Manual, would be subject to preenforcement review under § 502.

The injustice caused by denying preenforcement review is only heightened by VA's astonishingly poor track record at reasonably and fairly interpreting the laws it is tasked with administering.  Consider just a few examples:

**1.**  For 60 years, VA denied benefits to veterans injured during VA-administered medical services unless the veteran could establish

that the injury resulted from negligence or accident. *Brown v. Gardner*, 513 U.S. 115, 116-17, 122 (1994). That requirement had no textual basis; not a single word in the statute plausibly supported it. On the contrary, the Supreme Court ruled that VA's interpretation "fl[ew] against the plain language of the statutory text." *Id.* at 122. VA sought *Chevron* deference for its misinterpretation, in part because it was so longstanding—an argument the Supreme Court described as "suffer[ing] from … factual embarrassment." *Id.* This Court, in reaching the same conclusion, remarked that "[m]any VA regulations have aged nicely simply because Congress took so long to provide judicial review." *Gardner*, 5 F.3d at 1463.

**2.** In 2003, this Court invalidated a regulation providing that, after receiving a certain notice from the Board, veterans "shall have not less than 30 days to respond." *Disabled Am. Veterans v. Sec'y of Veterans Affairs*, 327 F.3d 1339, 1342 (Fed. Cir. 2003). The statute, however, provided veterans a full year to respond. *Id.* at 1348. Although VA claimed it sought only to reduce processing delays, this Court expressed "doubt that Congress authorized VA to accomplish this

purpose by misleading claimants" into believing they had only a month to respond.  *Id.* at 1348-49.

**3.**  More recently, VA sought *Chevron* deference for its position that a veteran who received one Board hearing and appealed is not entitled to another hearing on remand.  *Cook v. Snyder*, 28 Vet. App. 330, 335-36 (2017), *aff'd sub nom. Cook v. Wilkie*, 908 F.3d 813 (Fed. Cir. 2018).  In *Cook*, at least the statute was genuinely ambiguous.  *Id.* at 338-39.  But the courts identified a glaring problem with the Secretary's interpretation: it was not an interpretation at all.  First, the regulation's language suffered from the same ambiguity as the statute. *Id.* at 339.  Second, even if the regulation had resolved the statute's ambiguity, it could not possibly have been an interpretation *of the statute*, because the regulation *predated* the statute.  *Id.* at 339-40. Deference was therefore unwarranted, to say the least.  *See id.*

**4.**  Even after *Procopio I* and passage of the related Blue Water Navy Vietnam Veterans Act of 2019, VA continues to unreasonably withhold the presumption of service connection from veterans exposed to toxic herbicide.  Relying on rules promulgated in the Manual, VA is denying benefits to veterans based on arbitrary qualifications like

whether they were assigned duties on a base's perimeter and whether they served in territorial airspace as opposed to territorial waters. MVA is challenging these arbitrary rules in a companion to this case. *See* Pet. Review 8-11, *Military-Veterans Advocacy, Inc. v. Wilkie*, No. 20-1537 (Fed. Cir.) (stayed pending resolution of this case).

VA is a unique agency. That is, in part, by design. This Court has "long recognized that the character of the veterans' benefits statutes is strongly and uniquely pro-claimant," and "Congress itself has recognized and preserved the unique character and structure of the veterans' benefits system," including its "non-adversarial" nature. *Hodge v. West*, 155 F.3d 1356, 1362 (Fed. Cir. 1998).

But VA stands out for another reason: its consistent attempts to curtail the statutory rights of veterans within that very system. VA has repeatedly "manufacture[d] for itself" procedures with "no basis in the relevant statutes" that "do[] nothing to assist, and much to impair, the interests of those the law says the agency is supposed to serve." *Mathis v. Shulkin*, 137 S. Ct. 1994, 1995 (2017) (Gorsuch, J., dissenting from denial of certiorari). VA then seeks judicial deference for its interpretations, even when such deference is logically absurd. *See, e.g.,*

*Cook*, 28 Vet. App. at 339-40. And it seeks to insulate those interpretations from *any* judicial review by promulgating them in a manual that it contends is unreviewable yet somehow worthy of *Auer* deference. *See, e.g.*, *Smith v. Shinseki*, 647 F.3d 1380, 1385 (Fed. Cir. 2011).

This is not the system that Congress envisioned or enacted. Instead, it entrusted this Court with an unflagging obligation to review VA rules of general applicability—and to do so promptly upon petition. The alternative is to leave it to individual veterans to pursue review in a system where, if they are lucky and willing to forgo their statutory right to a hearing, they might prevail half a decade later. These veterans deserve a better recourse, and § 502's clear language provides one.

## II. Even Were Final Agency Action Required—Which It Is Not—Revisions to the M21-1 Manual Constitute Final Agency Action.

The government may belatedly argue, as it has done in other cases, that review is precluded here because revisions to the Manual do not constitute "final agency action." *See, e.g.*, Brief for Respondent at 44-48, *Gray v. Wilkie*, No. 17-1679 (U.S. Jan. 16, 2019). In the

government's view—and that of a recent panel of this Court—§ 502 incorporates from 5 U.S.C. § 704 a requirement that agency action be "final" for any APA review to occur. *See Ashford Univ., LLC v. Sec'y of Veterans Affairs*, 951 F.3d 1332, 1343-44 (Fed. Cir. 2020).

That position is incorrect for two reasons. First, under the plain text of §§ 502 and 704, agency actions made reviewable *by statute* need not be final. Second, revisions to the Manual (like the Knee Rules) qualify as final in any case. *See, e.g.*, *Gray I*, 875 F.3d at 1111-12 (op. of Dyk, J.) (Manual provisions, like the guidance in *Appalachian Power*, are "'final agency action, reflecting a settled agency position which has legal consequences' for the parties").

## A. Agency actions made reviewable by statute need not be final.

Again, the statutory analysis begins, as it must, with the text of the statute. *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). And the text of § 502 contains no finality requirement. Rather, it makes any "action of the Secretary to which section 552(a)(1) or 553 … refers" reviewable "in accordance with chapter 7" of the APA. For its part, the APA makes two separate categories of agency action reviewable: "[a]gency action

made reviewable by statute" and "*final* agency action for which there is no other adequate remedy in a court."  5 U.S.C. § 704 (emphasis added).

The text couldn't be clearer.  By using the word "final" in connection with only the second category, Congress imposed a finality requirement only on that residual set of actions.  *See, e.g.*, *Iowa League of Cities v. EPA*, 711 F.3d 844, 863 n.12 (8th Cir. 2013) ("The word 'final' modifies the second use of 'agency action,' but not the first. … [W]e decline to conjure up a finality requirement … where none is located in the text of the APA.").  Neither the government nor this Court is free to revise Congress's legislative decision; they must instead "presume that a legislature says in a statute what it means and means in a statute what it says there. … When the words of a statute are unambiguous … judicial inquiry is complete." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) (internal quotation marks omitted); *see also Chiafalo v. Washington*, No. 19-465, 2020 WL 3633779, at *7 (U.S. July 6, 2020) (declining to cabin broad text based on drafters' supposed expectations because "the Framers did not reduce their thoughts [on the question presented] to the printed page").

Binding Supreme Court precedent confirms this commonsense result. When "review is sought *not pursuant to specific authorization in the substantive statute*, but only under the general review provisions of the APA, the 'agency action' in question must be 'final agency action.'" *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990) (emphasis added). But when Congress enacts specific statutory authorization, its judgment that agency action is reviewable must control. In this way, Congress can and does authorize review of "broad regulations … even before the concrete effects normally required for APA review are felt." *Id.* at 891. Section 502 authorizes precisely that by incorporating the broad categories of agency action outlined in § 552(a)(1).

Nevertheless, a panel of this Court mistakenly concluded otherwise. *See Ashford*, 951 F.3d at 1343-44. *Ashford* recognized that the text of the statute does not require finality. *Id.* at 1343. But it purported to find that requirement in two Supreme Court cases and legislative history. *Ashford*'s reliance on *Lujan* is misplaced; there, the Supreme Court recognized that Congress can authorize review of non-final agency action as noted above, but it had not done so in that particular case. 497 U.S. at 894. Similarly, *FPC v. Metropolitan Edison*

*Co.* construed the text of a particular authorizing statute—not § 704 in general—to require finality. 304 U.S. 375, 383-84 (1938). Unlike those examples, § 502 expressly authorizes review of *all* actions listed in § 552(a)(1), including patently non-final actions such as "rules of procedure" and "statements of general policy." Nor can legislative history override the clear meaning of the text. *E.g.*, *City of Chicago v. Envtl. Def. Fund*, 511 U.S. 328, 337 (1994) ("[I]t is the statute, and not the Committee Report, which is the authoritative expression of the law, and the statute prominently *omits* [the relevant term]." (emphasis in original)).

In short, § 704 permits review of even non-final agency actions, so long as that review is authorized by statute. And § 502, in turn, authorizes review of any action listed in § 552(a)(1), not merely any final action listed therein. Because revisions to the Manual are "interpretations of general applicability" expressly listed in § 552(a)(1)(D), they are reviewable.

## B.   Regardless, the Knee Rules constitute final agency action.

Nevertheless, if finality were required, the Manual and its provisions fit the bill. To qualify as "final" under § 704, an agency

action must satisfy two conditions. *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997); *accord U.S. Army Corps of Eng'rs v. Hawkes Co.*, 136 S. Ct. 1807, 1813 (2016). Revisions to the Manual satisfy both.

First, a final agency action "must mark the 'consummation' of the agency's decisionmaking process … it must not be of a merely tentative or interlocutory nature." *Bennett*, 520 U.S. at 177-78. Rules promulgated in the Manual are anything but tentative. They represent VA's considered view and binding guidance to its front-line adjudicators. Upon adoption, such rules immediately dictate the outcome of cases at the regional offices, 96% of which will never be considered further at any level. *See Gray I*, 875 F.3d at 1114 (op. of Dyk, J.).

Second, "the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett*, 520 U.S. at 178. Legal consequences clearly flow from Manual provisions like those at issue here. The Manual directs regional offices to apply the presumption of service connection *only* under defined circumstances. *See Appalachian Power Co. v. EPA*, 208 F.3d 1015, 1023 (Fed. Cir. 2000) (finding legal consequences where a guidance document

"commands … requires … orders [and] dictates" a result and thus gives "marching orders" to another decision-maker).  Veterans who meet the statutory requirements, but fall outside the provisions of the Knee Rules, will be denied benefits because of those Rules.  The agency's views as expressed in the Manual also put a thumb on the interpretive scale at the Board and even in later judicial review, where the government routinely argues that the Manual should receive *Auer* deference.  *See, e.g.*, *Smith*, 647 F.3d at 1385.

In addition, the D.C. Circuit has repeatedly concluded that "the finality analysis can look to whether the agency action has a practical effect on regulated parties, even if it has no formal legal force."  *Valero Energy Corp. v. EPA*, 927 F.3d 532, 537 (D.C. Cir. 2019).  And practical consequences unquestionably result from Manual provisions.  *See supra* § I.D.

"This conclusion tracks the 'pragmatic' approach [the Supreme Court has] long taken to finality."  *Hawkes*, 136 S. Ct. at 1815.  Since the middle of the last century, it has been clear that an agency order is final for APA purposes even when "the order 'had no authority except to give notice of how [an agency] interpreted' the relevant statute, and

'would have effect only if and when a particular action was brought against a particular [regulated entity].'" *Id.* (quoting cases from 1967 and 1956). So it is unsurprising that, when applying statutes similar to § 502, even other circuits that require finality agree that "interpretive rules can be final." *Cal. Cmtys. Against Toxics v. EPA*, 934 F.3d 627, 635 (D.C. Cir. 2019); *see also Iowa League*, 711 F.3d at 863 n.12.

As a result, the statutory interpretations announced in the Manual are "final agency action" for the purposes of § 704 and thus are reviewable under § 502, even if finality were required.

## III. Federal Circuit Rule 15(f)(1) Improperly Restricts the Time for Review and Squarely Conflicts with the Statutory Six-Year Limitation Period.

*DAV* is not the only improper bar to this Court's review of the Knee Rules. Federal Circuit Rule 15(f)(1) imposes another unlawful hurdle, purporting to bar challenges brought more than 60 days after VA issues a rule.[4] It thwarts not only Congress's "preference for preenforcement review," before the harsh effects of an erroneous VA rule fall on veterans, *NOVA*, 330 F.3d at 1347, but also the six-year

---

[4] On July 1, the Federal Circuit relocated its 60-day limitations period from Fed. Cir. R. 47.12(a), where it resided at the time of NOVA's petition, to Fed. Cir. R. 15(f)(1).

limitations period Congress expressly established, 28 U.S.C. § 2401(a). Despite this clear conflict, this Court has applied its judicially created rule rather than the plain text of the statute. The full Court should overturn those holdings.

## A. 28 U.S.C. § 2401 sets a six-year limitations period that governs this Court's jurisdiction.

Although § 502 establishes the right to review of VA rulemaking decisions in this Court, it does not establish a limitations period. But Congress has established a default six-year limitations period that applies to all "civil action[s] … against the United States" in the absence of a more specific statutory limit. 28 U.S.C. § 2401(a).

Review of a VA rulemaking is unquestionably a "civil action … against the United States." Section 502 specifies that this Court's review of the VA's actions "shall be in accordance with chapter 7 of title 5" of the U.S. Code—the judicial-review provisions of the APA. 38 U.S.C. § 502. Those provisions provide a right of review for persons "adversely affected or aggrieved by agency action" through an action naming "the United States, the agency by its official title, or the appropriate officer." 5 U.S.C. §§ 702-703. This action plainly falls within the ambit of § 2401(a).

That is enough to decide this issue. Indeed, this Court has specifically acknowledged that "the statute of limitations in section 2401 applies to actions under section 502." *Preminger v. Sec'y of Veterans Affairs*, 517 F.3d 1299, 1307 (Fed. Cir. 2008); *see also, e.g.*, *Block v. Sec'y of Veterans Affairs*, 641 F.3d 1313, 1317 (Fed. Cir. 2011). And, unsurprisingly, every circuit to consider the question in connection with APA review of other agencies has concluded that § 2401(a)'s six-year limitation period governs judicial review of agency action where no more specific statutory limit applies. For example, the Ninth Circuit concluded nearly three decades ago—and has maintained ever since— that "the general statute of limitations for actions against the government [§2401(a)] applies to APA actions." *Wind River Min. Corp. v. United States*, 946 F.2d 710, 713 (9th Cir. 1991) (reversing district court's dismissal of claims as time-barred); *see also Perez-Guzman v. Lynch*, 835 F.3d 1066, 1077 (9th Cir. 2016) (under *Wind River*, both procedural and substantive challenges to agency action are subject to §2401(a)). A few years later, the Sixth Circuit similarly held it "beyond question that the six-year statute of limitations of section 2401(a) applies to actions brought pursuant to the APA." *Sierra Club v. Slater*,

120 F.3d 623, 631 (6th Cir. 1997). The same rule is equally well established in every circuit that has taken up the issue. *See, e.g.*, *Sai Kwan Wong v. Doar*, 571 F.3d 247, 263 & n.15 (2d Cir. 2009) (citing *Schiller v. Tower Semiconductor Ltd.*, 449 F.3d 286, 293 n.7 (2d Cir. 2006) and *Polanco v. DEA*, 158 F.3d 647, 652 (2d Cir. 1998)); *Friends of Tims Ford v. Tenn. Valley Auth.*, 585 F.3d 955, 964 (6th Cir. 2009) (citing *Slater*, 120 F.3d at 631); *Nagahi v. INS*, 219 F.3d 1166, 1171 (10th Cir. 2000) (applying §2401(a) because more restrictive time limit in immigration regulations was "beyond the authority delegated to the INS" and citing *Smith v. Marsh*, 787 F.2d 510, 512 (10th Cir. 1986)); *Instituto de Educacion Universal Corp. v. U.S. Dep't of Educ.*, 209 F.3d 18, 21 (1st Cir. 2000); *see also* Amicus Curiae Br. of Disabled Am. Vets., *Brown v. Sec'y of Veterans Affairs*, No. 95-7067, 1996 WL 33453789, at *6 (Fed. Cir. Sept. 3, 1996) (collecting additional cases).

But since *Preminger*, this Court has done nothing to clear up the confusion for veterans and their advocates and to provide them the full rights that Congress conferred on those seeking to challenge VA's actions. The Court should do so now.

**B. Rule 15(f)(1) exceeds this Court's rulemaking power because it directly conflicts with § 2401(a) and Congress's underlying policy.**

Despite the judicial consensus that § 2401(a) generally applies to petitions for review of agency action, this Court has invoked its local rules to impose a 60-day limitation on § 502 review petitions—inexplicably cutting the statutory review period by more than 97%. *See, e.g.*, *Preminger v. Sec'y of Veterans Affairs*, 632 F.3d 1345 (Fed. Cir. 2011); *Jackson v. Brown*, 55 F.3d 589, 592 (Fed. Cir. 1995). The Court recognized this conflict more than two decades ago, *see Brown v. Sec'y of Veterans Affairs*, No. 95-7067, 1997 WL 488930, at *2 (Fed. Cir. Aug. 22, 1997), but has done nothing to resolve it. Only one resolution is possible, because giving a local rule priority over an Act of Congress is unlawful and thwarts not only Congress's command but also meritorious petitions for review like the one filed by NOVA here.

This Court's rules cannot conflict with federal statutes. *See* 28 U.S.C. § 2071(a) (local rules "shall be consistent with Acts of Congress"); *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1365 (Fed. Cir. 2006). In particular, no local rule can "restrict the jurisdiction conferred by a statute." *Willy v. Coastal Corp.*, 503 U.S.

131, 135 (1992). Neither may this Court refuse to exercise jurisdiction granted by Congress. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 376 (2012) ("Federal courts … 'have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given.'" (citation omitted)).

Where Congress has put a class of cases within the jurisdiction of this Court—as § 502 does—and established a statute of limitations governing *when* those cases may be brought—as § 2401(a) does—this Court must hear a case timely brought within that limit. *See, e.g.*, *Hamer v. Neighborhood Hous. Servs. of Chicago*, 138 S. Ct. 13, 21 (2017) (limitations period is "mandatory and jurisdictional" when "imposed by Congress"). No local rule can relieve it of that responsibility. "The length of a limitations period reflects a value judgment concerning the point at which the interests in favor of protecting valid claims are outweighed by the interests in prohibiting the prosecution of stale ones. It is Congress, not this Court, that balances those interests." *Rotkiske v. Klemm*, 140 S. Ct. 355, 361 (2019) (citation omitted).

Of course, Congress can set a shorter time period if it chooses. And Congress knows precisely how to do so; it has enacted numerous

statutes changing the limitation period for review of various agency actions to something other than six years. *See, e.g.*, 28 U.S.C. §§ 2342, 2344 (60-day limit for seven specific categories of agency review); 26 U.S.C. § 6511 (three- and two-year limit for taxpayer refund claims); 28 U.S.C. § 2409a(g) (twelve-year limit for Quiet Title Act suits). But it has not done so for this Court's review under § 502.

Congress has, however, been very clear about the interests that review protects. Because "[a] veteran, after all, has performed an especially important service for the Nation, often at the risk of his or her own life … Congress has made clear that the VA is not an ordinary agency." *Shinseki v. Sanders*, 556 U.S. 396, 412 (2009). Rather, the VA system is "unusually protective" of veterans. *Henderson*, 562 U.S. at 437. To honor Congress's clear intent, courts "have long applied the canon that provisions for benefits to members of the Armed Services are to be construed in the beneficiaries' favor." *Id.* at 441 (overturning this Court's "rigid" enforcement of a 120-day limitation period that was not "intended to carry … harsh consequences").

Rule 15(f)(1) turns that pro-veteran system on its head. Individual veterans are not in the habit of monitoring VA rulemaking

for rules that might someday affect them.  Nor are they likely to have attorneys on watch for such developments; because "the [VA's] adjudicatory process is not truly adversarial … the veteran is often unrepresented during the claims proceedings," much less before it begins.  *Sanders*, 556 U.S. at 412.  As a result, veterans are highly unlikely to detect new adverse rules from the VA in time to exercise their rights under § 502.  And veterans' organizations like Petitioner NOVA and amicus MVA have limited resources and must themselves often rely on pro bono representation through outside firms.  Rule 15(f)(1) severely hampers that process: sixty days is simply too short a time to assess the effects of a new regulation, triage potential challenges, obtain outside counsel, and file a petition.  As a result, the VA system that should be uniquely protective of veterans instead leaves them out in the cold.

Rule 15(f)(1) allows VA to manipulate the procedural timeline to its advantage and at veterans' expense.  For example, consider a rulemaking petition recently brought by MVA concerning Agent Orange exposure on Guam and other Pacific islands.  VA's denial of that petition was dated May 12, 2020, but not postmarked for another seven

days and not delivered for another three.  That delay further shortens the time to petition this Court by as much as 16%.  VA's internal delays are a fact of life for veterans and their advocates.  Rather than allow veterans the time Congress afforded them, this Court's rule compounds the problem of those delays, magnifying their consequences and asking veterans to bear the burden.

Rule 15(f)(1) lies outside this Court's rulemaking power and is at odds with the overarching policy governing veterans law.  The Court should eliminate the rule and recognize the statutory limitations period established by Congress.

## CONCLUSION

The Court should hold that it has jurisdiction to review the Knee Rules under § 502.

July 13, 2020

Respectfully submitted,

*/s/ Melanie L. Bostwick*

John B. Wells
MILITARY-VETERANS ADVOCACY INC.
P.O. Box 5235
Slidell, LA  70469-5235

Melanie L. Bostwick
James Anglin Flynn
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
1152 15th Street NW
Washington, DC  20005
(202) 339-8400

Jeffrey T. Quilici
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
300 W. 6th Street, Suite 1850
Austin, TX 78701

*Counsel for Amicus Curiae*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5), because this brief contains 7000 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Century Schoolbook 14-point font.

ORRICK, HERRINGTON & SUTCLIFFE LLP

*/s/ Melanie L. Bostwick*

Melanie L. Bostwick
*Counsel for Amicus Curiae*